**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

DUNKIN' DONUTS FRANCHISED                    :
  RESTAURANTS LLC,
BASKIN-ROBBINS FRANCHISED                    :
  SHOPS LLC,
DD IP HOLDER LLC and                         :
BR IP HOLDER LLC,
                                             :

          Plaintiffs,

                                             : Case No. 08-CV-00217 (RWS)

      v.                                  :

INNER CITY DOUGH, INC.,
SOUTH BRONX INNER CITY DOUGH, INC.,          :
TRIPLE J 3 DONUTS, INC.,
URBAN CITY DOUGH, INC. and                   :
NANCY DAVIS,
                                             :

          Defendants.

                                             :
-------------------------------------------------------------X

## COMPLAINT

    Plaintiffs DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, BASKIN-

ROBBINS FRANCHISED SHOPS LLC, DD IP HOLDER LLC and BR IP HOLDER LLC, by

their attorneys, O'ROURKE & DEGEN, PLLC, as and for their complaint, allege as follows:

## INTRODUCTION

    1.    Plaintiffs Dunkin' Donuts Franchised Restaurants LLC and Baskin-Robbins

Franchised Shops LLC are the franchisors of Dunkin' Donuts and Baskin-Robbins franchises and

the licensees of the Dunkin' Donuts and Baskin-Robbins trademarks.  Plaintiffs DD IP Holder

LLC and BR IP Holder LLC are the holders of the Dunkin' Donuts and Baskin-Robbins

trademarks.

2.     Defendants are the owners and operators of two combination Dunkin' Donuts and Baskin-Robbins restaurants and three Dunkin' Donuts shops located in New York City.

3.     Plaintiffs terminated Defendants' Franchise Agreements, based upon their failure to cure defaults in payments.

4.     Defendants continue to use the names, trademarks and service marks of "Dunkin' Donuts" and "Baskin-Robbins" without authorization to do so, and have not removed the signs and other indicia that the sites were Dunkin' Donuts and Baskin-Robbins shops.

## THE PARTIES

5.     Plaintiff DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, successor in interest to Dunkin' Donuts Incorporated, is a foreign limited liability company, duly organized and existing by virtue of the laws of the State of Delaware, with its principal place of business in Canton, Massachusetts, and authorized to do business in the State of New York.

6.     Plaintiff BASKIN-ROBBINS FRANCHISED SHOPS LLC, successor in interest to Baskin-Robbins USA, Co., is a foreign limited liability company, duly organized and existing by virtue of the laws of the State of Delaware, with its principal place of business in Canton, Massachusetts, and authorized to do business in the State of New York.

7.     Plaintiff DD IP HOLDER LLC is a foreign limited liability company, duly organized and existing by virtue of the laws of the State of Delaware, with its principal place of business in Canton, Massachusetts.

8.     Plaintiff BR IP HOLDER LLC is a foreign limited liability company, duly organized and existing by virtue of the laws of the State of Delaware, with its principal place of business in Canton, Massachusetts.

2

9.      Upon information and belief, Defendant INNER CITY DOUGH, INC. is a domestic corporation duly organized and existing by virtue of the laws of the State of New York, with a place of business in the County of Queens, State of New York.

10.      Upon information and belief, Defendant SOUTH BRONX INNER CITY DOUGH, INC. is a domestic corporation duly organized and existing by virtue of the laws of the State of New York, with a place of business in the County of Bronx, State of New York.

11.      Upon information and belief, Defendant TRIPLE J 3 DONUTS, INC. is a domestic corporation duly organized and existing by virtue of the laws of the State of New York, with a place of business in the County of New York, State of New York.

12.      Upon information and belief, Defendant URBAN CITY DOUGH, INC. is a domestic corporation duly organized and existing by virtue of the laws of the State of New York, with a place of business in the County of New York, State of New York.

13.      Upon information and belief, Defendant NANCY DAVIS is a resident of the State of New Jersey with a place of business in the County of New York, State of New York.

## JURISDICTION AND VENUE

14.      This Court has jurisdiction over this action pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121, and 28 U.S.C. §§ 1331, 1332, 1338 & 1367(A).  The amount in controversy exceeds $75,000, exclusive of interest and costs.

15.      Venue in the Southern District of New York is based upon 28 U.S.C. § 1391(b).

## DUNKIN' DONUTS TRADEMARKS, SERVICE MARKS AND PROPRIETARY MARKS

16.      DD IP Holder LLC owns the trademark, service mark and trade name "Dunkin'

3

Donuts," which is registered on the Principal Register of the United States Patent Office, to identify for the public the source of goods and services marketed under its name, as well as related marks.

17.    Dunkin' Donuts Franchised Restaurants LLC ("Dunkin' Donuts") has the license to use and to license others to use the Dunkin' Donuts marks and trade name and since approximately 1950 it and its predecessors in interest have used them continuously to identify its doughnut shops and the doughnuts, pastries, coffee and other products associated with those shops.

18.    DD IP Holder LLC owns numerous federal registrations for the mark Dunkin' Donuts and related marks.  Among these registrations are Registration Nos. 2,748,147, 1,148,165 and 1,159,354.  Each of these registrations is in full force and effect and is incontestable pursuant to 15 U.S.C. § 1065.

19.    The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

20.    The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

21.    The Dunkin' Donuts marks have been widely advertised and promoted by Dunkin' Donuts over the years.  Over the past 35 years Dunkin' Donuts and its franchisees spent more than $1,500,000,000 on advertising and promoting the Dunkin Donuts marks.  Dunkin' Donuts spent approximately $167,000,000 in fiscal year 2005 alone on advertising and promotion.

22.    Dunkin' Donuts and its franchisees currently operate approximately 5,600 units in the United States and 2,000 outside the United States.  Dunkin' Donuts shops feature Dunkin'

Donuts distinctive trade dress, including pink and orange color scheme, signage, menu boards, product selection and names, interior design and doughnut cases. In the more than fifty years since the Dunkin' Donuts System began, hundreds of millions of customers have been served in Dunkin' Donuts shops.

23.    As a result of the extensive sales, advertising and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with the products and services offered by Dunkin' Donuts and its franchisees. The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts and DD IP Holder LLC, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

## BASKIN-ROBBINS TRADEMARKS, SERVICE MARKS AND PROPRIETARY MARKS

24.    BR IP Holder LLC owns the trademark, service mark and trade name "Baskin-Robbins," which is registered on the Principal Register of the United States Patent Office, to identify for the public the source of goods and services marketed under its name, as well as related marks.

25.    Baskin-Robbins Franchised Shops LLC ("Baskin-Robbins") has the license to use and to license others to use the Baskin-Robbins marks and trade name and since approximately 1947 it and its predecessors in interest have used them continuously to identify its ice cream stores and the ice cream and other products associated with those stores.

26.    BR IP Holder LLC owns numerous federal registrations for the mark Baskin-Robbins and related marks. Among these registrations are Registration Nos. 3,124,983,

3,124,982 and 3,035,845.  Each of these registrations is in full force and effect and is incontestable pursuant to 15 U.S.C. § 1065.

27.    The Baskin-Robbins trademarks and trade name are distinctive and famous and have acquired secondary meaning.

28.    The Baskin-Robbins trademarks and trade name are utilized in interstate commerce.

29.    The Baskin-Robbins marks have been widely advertised and promoted by Baskin-Robbins over the years.  As a result, the Baskin-Robbins marks have become famous throughout the United States.

30.    Baskin-Robbins and its franchisees currently operate approximately 2,500 stores in the United States and approximately 3,000 stores outside of the United States.  In the more than fifty-five years since the Baskin-Robbins System began, millions of consumers have been served in Baskin-Robbins stores.

31.    As a result of the extensive sales, advertising and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with the products and services offered by Baskin-Robbins and its franchisees.  The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

### THE FRANCHISE AGREEMENTS

32.    On March 4, 2005 Dunkin' Donuts, Baskin-Robbins and Defendant Inner City

6

Dough, Inc. entered into a Franchise Agreement (collectively with any amendments the "Jamaica Franchise Agreement").

33.    The Jamaica Franchise Agreement authorized Defendant to operate a restaurant (the "Jamaica Franchise") utilizing the Dunkin' Donuts and Baskin-Robbins Systems at 134-50 Guy R. Brewer Boulevard, Jamaica, New York (the "Jamaica Premises").

34.    On March 4, 2005 Dunkin' Donuts and Defendant South Bronx Inner City Dough, Inc. entered into a Franchise Agreement (collectively with any amendments the "Jerome Avenue Franchise Agreement").

35.    The Jerome Avenue Franchise Agreement authorized Defendant to operate a restaurant (the "Jerome Avenue Franchise") utilizing the Dunkin' Donuts System at 3414 Jerome Avenue, Bronx, New York (the "Jerome Avenue Premises").

36.    On July 11, 2005 Dunkin' Donuts and Defendant South Bronx Inner City Dough, Inc. entered into a Franchise Agreement (collectively with any amendments the "St. Nicholas Avenue Franchise Agreement").

37.    The St. Nicholas Avenue Franchise Agreement authorized Defendant to operate a restaurant (the "St. Nicholas Avenue Franchise") utilizing the Dunkin' Donuts System at 1206 St. Nicholas Avenue, New York, New York (the "St. Nicholas Avenue Premises").

38.    On July 27, 2004 Dunkin' Donuts, Baskin-Robbins and Defendant Triple J 3, Inc. entered into a Franchise Agreement (collectively with any amendments the "Broadway Franchise Agreement").

39.    The Broadway Franchise Agreement authorized Defendant to operate a restaurant (the "Broadway Franchise") utilizing the Dunkin' Donuts and Baskin-Robbins Systems at 3455-

57 Broadway, New York New York (the "Broadway Premises").

40.     On June 24, 2005 Dunkin' Donuts and Defendant Urban City Dough, Inc. entered into a Franchise Agreement (collectively with any amendments the "Rockefeller Plaza Franchise Agreement").

41.     The Rockefeller Plaza Franchise Agreement authorized Defendant to operate a restaurant (the "Rockefeller Plaza Franchise") utilizing the Dunkin' Donuts System at 30 Rockefeller Plaza, New York, New York (the "Rockefeller Plaza Premises").

## THE PROMISSORY NOTE

42.     On or about May 31, 2007 Defendants Triple J 3 Donuts, Inc., South Bronx Inner City Dough, Inc., Inner City Dough, Inc. and Nancy Davis executed a promissory note (the "Note").

43.     Pursuant to the Note, Defendants agreed to pay Plaintiff the sum of $95,753.93 with interest thereon at the rate of 10% per annum as of April 15, 2007, in a single payment of $98,604.08 on August 1, 2007 or the closing of the sale of the Jerome Avenue Franchise, whichever first occurs.

44.     Upon their failure to cure a default, Defendants agreed to pay collection costs, reasonable attorney's fees and interest as of the date of default on the unpaid amount at the rate of 18% per annum.

## THE GUARANTEES

45.     At the time that the Jamaica Franchise Agreement, Jerome Avenue Franchise Agreement, St. Nicholas Avenue Franchise Agreement, Broadway Franchise Agreement and Rockefeller Plaza Franchise Agreement (collectively the "Franchise Agreements) were executed,

8

Defendant Nancy Davis signed personal guarantees (collectively the "Guarantees") by which she unconditionally guaranteed to Dunkin' Donuts and Baskin-Robbins that the corporate Defendants will fully and promptly pay and discharge all their present and future obligations to Dunkin' Donuts and Baskin-Robbins under the Franchise Agreements.

## THE CROSS-GUARANTEES

46.     The Franchise Agreements provide that each Franchisee is jointly and severally liable for the monetary obligations under any other Franchise Agreement with a common partner, member or shareholder (the "Cross Guarantees").

47.     Upon information and belief, at all times mentioned herein Nancy Davis was and is a shareholder and president of all five corporate Defendants.

## THE DEFAULT NOTICES

48.     On October 3, 2007, pursuant to the Jamaica Franchise Agreement, Plaintiffs sent Defendant Inner City Dough, Inc. a Notice to Cure (the "Jamaica Notice to Cure") by overnight carrier to the Jamaica Premises and to Nancy Davis at 16 Great Hall Road, Mahwah, New Jersey 07430 and 21 Main Street, Suite 201, Hackensack, New Jersey 07601.

49.     The Jamaica Notice to Cure demanded that Defendant cure defaults in paying franchise fees, advertising fees, and other charges.

50.     Upon information and belief, on October 4, 2007 Defendant received the Jamaica Notice to Cure.

51.     More than fifteen (15) days passed after Defendant received the Jamaica Notice to Cure without the defaults having been cured.

52.     On October 3, 2007, pursuant to the Jerome Avenue Franchise Agreement,

9

Plaintiffs sent Defendant South Bronx Inner City Dough, Inc. a Notice to Cure (the "Jerome Avenue Notice to Cure") by overnight carrier to the Jerome Avenue Premises and to Nancy Davis at 16 Great Hall Road, Mahwah, New Jersey 07430 and 21 Main Street, Suite 201, Hackensack, New Jersey 07601.

53.     The Jerome Avenue Notice to Cure demanded that Defendant cure defaults in paying franchise fees, advertising fees, and other charges.

54.     Upon information and belief, on October 4, 2007 Defendant received the Jerome Avenue Notice to Cure.

55.     More than fifteen (15) days passed after Defendant received the Jerome Avenue Notice to Cure without the defaults having been cured.

56.     On October 3, 2007, pursuant to the St. Nicholas Avenue Franchise Agreement, Plaintiffs sent Defendant South Bronx Inner City Dough, Inc. a Notice to Cure (the "St. Nicholas Avenue Notice to Cure") by overnight carrier to the St. Nicholas Avenue Premises and to Nancy Davis at 16 Great Hall Road, Mahwah, New Jersey 07430 and 21 Main Street, Suite 201, Hackensack, New Jersey 07601.

57.     The St. Nicholas Avenue Notice to Cure demanded that Defendant cure defaults in paying franchise fees, advertising fees, and other charges.

58.     Upon information and belief, on October 4, 2007 Defendant received the St. Nicholas Avenue Notice to Cure.

59.     More than fifteen (15) days passed after Defendant received the St. Nicholas Avenue Notice to Cure without the defaults having been cured.

60.     On October 3, 2007, pursuant to the Broadway Franchise Agreement, Plaintiffs

10

sent Defendant Triple J 3 Donuts, Inc. a Notice to Cure (the "Broadway Notice to Cure") by

overnight carrier to the Broadway Premises and to Nancy Davis at 16 Great Hall Road, Mahwah,

New Jersey 07430 and 21 Main Street, Suite 201, Hackensack, New Jersey 07601.

61.    The Broadway Notice to Cure demanded that Defendant cure defaults in paying

franchise fees, advertising fees, and other charges.

62.    Upon information and belief, on October 4, 2007 Defendant received the

Broadway Notice to Cure.

63.    More than fifteen (15) days passed after Defendant received the Broadway Notice

to Cure without the defaults having been cured.

64.    On October 3, 2007, pursuant to the Note, Plaintiffs sent Defendant Nancy Davis

a Notice of Default (the "Notice of Default") by overnight carrier to 21 Main Street, Suite 201,

Hackensack, New Jersey 07601.

65.    The Notice of Default demanded that Defendants Nancy Davis, Triple J 3 Donuts,

Inc., South Bronx Inner City Dough, Inc. and Inner City Dough, Inc. pay the balance due on the

Note.

66.    Upon information and belief, on October 4, 2007 Defendants received the Notice

of Default.

67.    More than ten (10) days passed after Defendants received the Notice of Default

without the defaults having been cured.

## PERTINENT PROVISIONS OF THE FRANCHISE AGREEMENTS

68.    Pursuant to paragraph 9.0.4 of the Franchise Agreements, "FRANCHISEE shall

be in default under this Agreement:  . . . If any other franchise agreement between

11

FRANCHISEE and FRANCHISOR or any affiliated entity is terminated by reason of
FRANCHISEE's default thereunder."

69.    Defendants Inner City Dough, Inc., South Bronx Inner City Dough, Inc., Triple J
3 Donuts, Inc. and Urban City Dough, Inc. are affiliated entities, as that term is defined by the
Franchise Agreements.

70.    Pursuant to paragraph 9.1.4 of the Franchise Agreements, "No cure period shall
be available if FRANCHISEE is in default under any paragraph designated 9.0.1 through 9.0.4
above; or if FRANCHISEE abandons the Unit."

## TERMINATION OF FRANCHISE AGREEMENTS

71.    On January 2, 2008, pursuant to the Jamaica Franchise Agreement, Plaintiffs sent
Defendant Inner City Dough, Inc. a Notice of Termination (the "Jamaica Notice of
Termination") by overnight carrier to the Jamaica Premises and to Nancy Davis at 16 Great Hall
Road, Mahwah, New Jersey 07430 and 21 Main Street, Suite 201, Hackensack, New Jersey
07601.

72.    Upon information and belief, on or about January 3, 2008 Defendant received the
Jamaica Notice of Termination.

73.    The Jamaica Notice of Termination terminated the Jamaica Franchise Agreement,
effective immediately, based upon the failure to cure the defaults listed in the Jamaica Notice to
Cure.

74.    On January 2, 2008, pursuant to the Jerome Avenue Franchise Agreement,
Plaintiffs sent Defendant South Bronx Inner City Dough, Inc. a Notice of Termination (the
"Jerome Avenue Notice of Termination") by overnight carrier to the Jerome Avenue Premises
and to Nancy Davis at 16 Great Hall Road, Mahwah, New Jersey 07430 and 21 Main Street,

Suite 201, Hackensack, New Jersey 07601.

75.     Upon information and belief, on or about January 3, 2008 Defendant received the Jerome Avenue Notice of Termination.

76.     The Jerome Avenue Notice of Termination terminated the Jerome Avenue Franchise Agreement, effective immediately, based upon the failure to cure the defaults listed in the Jerome Avenue Notice to Cure.

77.     On January 2, 2008, pursuant to the St. Nicholas Avenue Franchise Agreement, Plaintiffs sent Defendant South Bronx Inner City Dough, Inc. a Notice of Termination (the "St. Nicholas Avenue Notice of Termination") by overnight carrier to the St. Nicholas Avenue Premises and to Nancy Davis at 16 Great Hall Road, Mahwah, New Jersey 07430 and 21 Main Street, Suite 201, Hackensack, New Jersey 07601.

78.     Upon information and belief, on or about January 3, 2008 Defendant received the St. Nicholas Avenue Notice of Termination.

79.     The St. Nicholas Avenue Notice of Termination terminated the St. Nicholas Avenue Franchise Agreement, effective immediately, based upon the failure to cure the defaults listed in the St. Nicholas Avenue Notice to Cure.

80.     On January 2, 2008, pursuant to the Broadway Franchise Agreement, Plaintiffs sent Defendant Triple J 3 Donuts, Inc. a Notice of Termination (the "Broadway Notice of Termination") by overnight carrier to the Broadway Premises and to Nancy Davis at 16 Great Hall Road, Mahwah, New Jersey 07430 and 21 Main Street, Suite 201, Hackensack, New Jersey 07601.

81.     Upon information and belief, on or about January 3, 2008 Defendant received the

13

Broadway Notice of Termination.

82.    The Broadway Notice of Termination terminated the Broadway Franchise

Agreement, effective immediately, based upon the failure to cure the defaults listed in the

Broadway Notice to Cure.

83.    On January 2, 2008, pursuant to the Rockefeller Plaza Franchise Agreement,

Plaintiffs sent Defendant Urban City Dough, Inc. a Notice of Termination (the "Rockefeller

Plaza Notice of Termination") by overnight carrier to the Broadway Premises and to Nancy

Davis at 16 Great Hall Road, Mahwah, New Jersey 07430 and 21 Main Street, Suite 201,

Hackensack, New Jersey 07601.

84.    Upon information and belief, on or about January 3, 2008 Defendant received the

Rockefeller Plaza Notice of Termination.

85.    The Rockefeller Plaza Notice of Termination terminated the Rockefeller Plaza

Franchise Agreement, effective immediately, based upon the termination of the Franchise

Agreements of the affiliated entities (Inner City Dough, Inc., South Bronx Inner City Dough, Inc.

and Triple J 3 Donuts, Inc.) of Defendant for their failure to cure the defaults listed in the

Jamaica, Jerome Avenue, St. Nicholas Avenue and Broadway Notices to Cure.

**<u>OBLIGATIONS FOLLOWING TERMINATION OF THE FRANCHISE AGREEMENTS</u>**

86.    In the Franchise Agreements Defendants agreed that they would not do or

perform, directly or indirectly, any act injurious or prejudicial to the goodwill associated with

Plaintiffs' proprietary marks and the Dunkin' Donuts and Baskin-Robbins Systems.

87.    The Franchise Agreements also contain acknowledgments and agreements by

Defendants that they will not use Plaintiffs' names, proprietary marks or any methods associated

14

with the names "Dunkin' Donuts" and "Baskin-Robbins" after the Franchise Agreements have been terminated.

## OBLIGATIONS TO PAY PLAINTIFFS' ATTORNEY'S FEES AND COSTS

88.    The Franchise Agreements further provide that if they are terminated by reason of the failure of Defendants to cure a default, following notice, then Defendants shall pay all damages, costs and expenses, including attorney's fees, incurred by Plaintiffs as a result thereof.

89.    Defendants agreed that should they fail to timely remit monies due under the Franchise Agreements, they would pay Plaintiffs' collection costs, reasonable attorney's fees, and interest on the unpaid amounts.

90.    Plaintiffs are incurring costs and expenses, including attorneys' fees, as a result of Defendants' breach of the Franchise Agreements and the Note.

### COUNT 1
### Breach of Contract - Jamaica Franchise Agreement
### (termination and injunction)

91.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 90 of the complaint as if fully set forth herein.

92.    The failure of Defendant Inner City Dough, Inc. to timely cure the monetary and sales reporting defaults set forth in the Jamaica Notice to Cure constitutes a breach of its obligations under the Jamaica Franchise Agreement.

93.    The breach of the Jamaica Franchise Agreement constitutes grounds for terminating the Jamaica Franchise Agreement.

94.    Dunkin' Donuts and Baskin-Robbins terminated the Jamaica Franchise Agreement and demanded that Defendant comply with its post-termination provisions.

95.    Defendant has refused to cease using the Dunkin' Donuts and Baskin-Robbins trademarks, trade names and trade dress and has failed to comply with the post-termination provisions of the Jamaica Franchise Agreement.

96.    As a result of Defendant's actions, Dunkin' Donuts and Baskin-Robbins are suffering and continue to suffer irreparable harm and have incurred and continue to incur monetary damages in an amount yet to be determined.

## COUNT 2
### Breach of Contract - Jerome Avenue Franchise Agreement
### (termination and injunction)

97.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 96 of the complaint as if fully set forth herein.

98.    The failure of Defendant South Bronx Inner City Dough, Inc. to timely cure the monetary and sales reporting defaults set forth in the Jerome Avenue Notice to Cure constitutes a breach of its obligations under the Jerome Avenue Franchise Agreement.

99.    The breach of the Jerome Avenue Franchise Agreement constitutes grounds for terminating the Jerome Avenue Franchise Agreement.

100.    Dunkin' Donuts terminated the Jerome Avenue Franchise Agreement and demanded that Defendant comply with its post-termination provisions.

101.    Defendant has refused to cease using the Dunkin' Donuts trademarks, trade names and trade dress and has failed to comply with the post-termination provisions of the Jerome Avenue Franchise Agreement.

102.    As a result of Defendant's actions, Dunkin' Donuts is suffering and continues to suffer irreparable harm and has incurred and continues to incur monetary damages in an amount

16

yet to be determined.

## COUNT 3
### Breach of Contract - St. Nicholas Avenue Franchise Agreement
### (termination and injunction)

103.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 102 of the complaint as if fully set forth herein.

104.    The failure of Defendant South Bronx Inner City Dough, Inc. to timely cure the monetary and sales reporting defaults set forth in the St. Nicholas Avenue Notice to Cure constitutes a breach of its obligations under the St. Nicholas Avenue Franchise Agreement.

105.    The breach of the St. Nicholas Avenue Franchise Agreement constitutes grounds for terminating the St. Nicholas Avenue Franchise Agreement.

106.    Dunkin' Donuts terminated the St. Nicholas Avenue Franchise Agreement and demanded that Defendant comply with its post-termination provisions.

107.    Defendant has refused to cease using the Dunkin' Donuts trademarks, trade names and trade dress and has failed to comply with the post-termination provisions of the St. Nicholas Avenue Franchise Agreement.

108.    As a result of Defendant's actions, Dunkin' Donuts is suffering and continues to suffer irreparable harm and has incurred and continues to incur monetary damages in an amount yet to be determined.

## COUNT 4
### Breach of Contract - Broadway Franchise Agreement
### (termination and injunction)

109.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 108 of the complaint as if fully set forth herein.

17

110.    The failure of Defendant Triple J 3 Donuts, Inc. to timely cure the monetary and sales reporting defaults set forth in the Broadway Notice to Cure constitutes a breach of its obligations under the Broadway Franchise Agreement.

111.    The breach of the Broadway Franchise Agreement constitutes grounds for terminating the Broadway Franchise Agreement.

112.    Dunkin' Donuts and Baskin-Robbins terminated the Broadway Franchise Agreement and demanded that Defendant comply with its post-termination provisions.

113.    Defendant has refused to cease using the Dunkin' Donuts and Baskin-Robbins trademarks, trade names and trade dress and has failed to comply with the post-termination provisions of the Broadway Franchise Agreement.

114.    As a result of Defendant's actions, Dunkin' Donuts and Baskin-Robbins are suffering and continue to suffer irreparable harm and have incurred and continue to incur monetary damages in an amount yet to be determined.

**COUNT 5**
**Breach of Contract - Rockefeller Plaza Franchise Agreement**
**(termination and injunction)**

115.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 114 of the complaint as if fully set forth herein.

116.    Defendant Urban City Dough, Inc. is in default under the Rockefeller Plaza Franchise Agreement by reason of the termination of the Jamaica, Jerome Avenue, St. Nicholas Avenue and Broadway Franchise Agreements.

117.    This default cannot be cured as a matter of law.

118.    The termination of the Jamaica, Jerome Avenue, St. Nicholas Avenue and

18

Broadway Franchise Agreements constitutes grounds for terminating the Rockefeller Plaza Franchise Agreement.

119.    Defendant has refused to cease using the Dunkin' Donuts trademarks, trade names and trade dress and has failed to comply with the post-termination provisions of the Rockefeller Plaza Franchise Agreement.

120.    As a result of Defendant's actions, Dunkin' Donuts is suffering and continues to suffer irreparable harm and has incurred and continues to incur monetary damages in an amount yet to be determined.

**COUNT 6**
**Breach of Contract - Jamaica Franchise Agreement**
**(receivables)**

121.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 120 of the complaint as if fully set forth herein.

122.    Defendant Inner City Dough, Inc. has failed to pay Dunkin' Donuts and Baskin-Robbins franchise fees, advertising fees, late charges, attorney's fees and costs due under the Jamaica Franchise Agreement, although due demand has been made for the same.

123.    As a result of Defendant's actions, Dunkin' Donuts and Baskin-Robbins are entitled to a judgment in an amount yet to be determined for all monies now due and which hereafter become due under the Jamaica Franchise Agreement, plus interest, attorney's fees and costs.

**COUNT 7**
**Breach of Contract - Jerome Avenue Franchise Agreement**
**(receivables)**

124.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through

123 of the complaint as if fully set forth herein.

125.     Defendant South Bronx Inner City Dough, Inc. has failed to pay Dunkin' Donuts franchise fees, advertising fees, late charges, attorney's fees and costs due under the Jerome Avenue Franchise Agreement, although due demand has been made for the same.

126.     As a result of Defendant's actions, Dunkin' Donuts is entitled to a judgment in an amount yet to be determined for all monies now due and which hereafter become due under the Jerome Avenue Franchise Agreement, plus interest, attorney's fees and costs.

## COUNT 8
### Breach of Contract - St. Nicholas Avenue Franchise Agreement
### (receivables)

127.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 126 of the complaint as if fully set forth herein.

128.     Defendant South Bronx Inner City Dough, Inc. has failed to pay Dunkin' Donuts franchise fees, advertising fees, late charges, attorney's fees and costs due under the St. Nicholas Avenue Franchise Agreement, although due demand has been made for the same.

129.     As a result of Defendant's actions, Dunkin' Donuts is entitled to a judgment in an amount yet to be determined for all monies now due and which hereafter become due under the St. Nicholas Avenue Franchise Agreement, plus interest, attorney's fees and costs.

## COUNT 9
### Breach of Contract - Broadway Franchise Agreement
### (receivables)

130.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 129 of the complaint as if fully set forth herein.

131.     Defendant Triple J 3 Donuts, Inc. has failed to pay Dunkin' Donuts and Baskin-

Robbins franchise fees, advertising fees, late charges, attorney's fees and costs due under the Broadway Franchise Agreement, although due demand has been made for the same.

132.     As a result of Defendant's actions, Dunkin' Donuts and Baskin-Robbins are entitled to a judgment in an amount yet to be determined for all monies now due and which hereafter become due under the Broadway Franchise Agreement, plus interest, attorney's fees and costs.

**COUNT 10**
**Breach of Contract - Rockefeller Plaza Franchise Agreement**
**(receivables)**

133.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 132 of the complaint as if fully set forth herein.

134.     Defendant Urban City Dough, Inc. has failed to pay Dunkin' Donuts franchise fees, advertising fees, late charges, attorney's fees and costs due under the Rockefeller Plaza Franchise Agreement.

135.     As a result of Defendant's actions, Dunkin' Donuts is entitled to a judgment in an amount yet to be determined for all monies now due and which hereafter become due under the Rockefeller Plaza Franchise Agreement, plus interest, attorney's fees and costs.

**COUNT 11**
**Breach of Contract - the Note**

136.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 135 of the complaint as if fully set forth herein.

137.     Defendants Triple J 3 Donuts, Inc., South Bronx Inner City Dough, Inc., Inner City Dough, Inc. and Nancy Davis have failed to pay the monies due under the Note, although

due demand has been made for the same.

138.    As a result, Defendants owe Dunkin' Donuts and Baskin-Robbins the sum of $98,604.08 plus interest at the rate of 18% per annum as of August 1, 2007, attorney's fees and costs.

## COUNT 12
### Breach of Contract - Guarantees

139.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 138 of the complaint as if fully set forth herein.

140.    Defendant Nancy Davis has failed to pay the monies due under the Guarantees.

141.    As a result, Defendant owes Plaintiffs a sum to be determined at trial, plus interest, attorney's fees and costs.

## COUNT 13
### (Breach of Contract - Cross Guarantees)

142.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 117 of the complaint as if fully set forth herein.

143.    Defendants Inner City Dough, Inc., South Bronx Inner City Dough, Inc., Triple J 3 Donuts, Inc. and Urban City Dough, Inc. have failed to pay the monies due under the Cross Guarantees.

144.    As a result, Defendants owe Dunkin' Donuts and Baskin-Robbins a sum to be determined at trial, plus interest, attorney's fees and costs.

## COUNT 14
### Trademark Infringement - Dunkin' Donuts

145.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through

22

144 of the complaint as if fully set forth herein.

146.     The use in commerce by Defendants of the Dunkin' Donuts trade name and trademarks without the consent of Dunkin' Donuts is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin' Donuts.

147.     Such continued use of the Dunkin' Donuts trade name and trademarks infringes upon Dunkin' Donuts' exclusive rights in the Dunkin' Donuts trademarks under § 32 of the Lanham Act (15 U.S.C. § 1114) and applicable state law.

148.     Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

149.     As a result of Defendants' infringement of the Dunkin' Donuts trade name and trademarks, Dunkin' Donuts is suffering and continues to suffer substantial and irreparable harm to the goodwill associated with the Dunkin' Donuts trade name and trademarks and has incurred and continues to incur monetary damages in an amount yet to be determined.

### COUNT 15
### (Trademark Infringement - Baskin-Robbins)

150.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 149 of the complaint as if fully set forth herein.

151.     The use in commerce by Defendants of the Baskin-Robbins trade name and trademarks without the consent of Baskin-Robbins is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Baskin-Robbins.

152.    Such continued use of the Baskin-Robbins trade name and trademarks infringes upon Baskin-Robbins' exclusive rights in the Baskin-Robbins trademarks under § 32 of the Lanham Act (15 U.S.C. § 1114) and applicable state law.

153.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

154.    As a result of Defendants' infringement of the Baskin-Robbins trade name and trademarks, Baskin-Robbins is suffering and continues to suffer substantial and irreparable harm to the goodwill associated with the Baskin-Robbins trade name and trademarks and has incurred and is continuing to incur monetary damages in an amount yet to be determined.

**COUNT 16**
**Unfair Competition - Dunkin' Donuts**

155.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 154 of the complaint as if fully set forth herein.

156.    The use in commerce by Defendants of the Dunkin' Donuts trade name and trademarks without Dunkin' Donuts' consent is likely to cause confusion, or to cause mistake, or to deceive the public as to the origin, sponsorship, or approval of its goods, services or commercial activities.

157.    Such continued unauthorized use of the Dunkin' Donuts trade name and trademarks violates § 43 of the Lanham Act (15 U.S.C. § 1125(a)) and applicable state law.

158.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

159.    As a result of Defendants' unfair competition, Dunkin' Donuts is suffering and

24

continues to suffer substantial and irreparable harm to the goodwill associated with the Dunkin' Donuts trade name and trademarks and has incurred and continues to incur monetary damages in an amount yet to be determined.

## COUNT 17
### Unfair Competition - Baskin-Robbins

160.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 159 of the complaint as if fully set forth herein.

161.    The use in commerce by Defendants of the Baskin-Robbins trade name and trademarks without Baskin-Robbins' consent is likely to cause confusion, or to cause mistake, or to deceive the public as to the origin, sponsorship, or approval of its goods, services or commercial activities.

162.    Such continued unauthorized use of the Baskin-Robbins trade name and trademarks violates § 43 of the Lanham Act (15 U.S.C. § 1125(a)) and applicable state law.

163.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

164.    As a result of Defendants' unfair competition, Baskin-Robbins is suffering and continues to suffer substantial and irreparable harm to the goodwill associated with the Baskin-Robbins trade name and trademarks and has incurred and continues to incur monetary damages in an amount yet to be determined.

## COUNT 18
### Trademark Dilution - Dunkin' Donuts

165.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 164 of the complaint as if fully set forth herein.

166.    Defendants' commercial use in commerce of the Dunkin' Donuts trademarks and trade name outside the scope of their Franchise Agreements and without the consent of Dunkin' Donuts causes dilution of the distinctive quality of the Dunkin' Donuts trademarks and trade name.  Such unauthorized use of the Dunkin' Donuts trademark and trade name violates § 43 of the Lanham Act (15 U.S.C. § 1125(c)) and applicable state law.

167.    As a result of Defendants' actions, Dunkin' Donuts is suffering and continues to suffer irreparable harm, and has incurred and continues to incur monetary damages in an amount yet to be determined.

## COUNT 19
### Trademark Dilution - Baskin-Robbins

168.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 167 of the complaint as if fully set forth herein.

169.    Defendants' commercial use in commerce of the Baskin-Robbins trademarks and trade name outside the scope of their Franchise Agreements and without the consent of Baskin-Robbins causes dilution of the distinctive quality of the Baskin-Robbins trademarks and trade name.  Such unauthorized use of the Baskin-Robbins trademark and trade name violates § 43 of the Lanham Act (15 U.S.C. § 1125(c)) and applicable state law.

170.    As a result of Defendants' actions, Baskin-Robbins is suffering and continues to suffer irreparable harm, and has incurred and continues to incur monetary damages in an amount yet to be determined.

## COUNT 20
### Trade Dress Infringement - Dunkin' Donuts

171.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through

170 of the complaint as if fully set forth herein.

172.    Defendants' shops are identified by signs, exterior appearance, and other items on which the words "Dunkin' Donuts" appear in the same "frankfurter" lettering style and in the same distinctive pink and orange color scheme as Dunkin' Donuts uses for the doughnut shops operated by Dunkin' Donuts licensees.

173.    Defendants' use of the trade dress that is identical or confusingly similar to Dunkin' Donuts' trade dress constitutes a false designation of the origin of their shops which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of Defendants' shops with the Dunkin' Donuts shops operated by Dunkin' Donuts licensees.

174.    Defendants' adoption of the Dunkin' Donuts trade dress violates § 43 of the Lanham Act (15 U.S.C. § 1125) and applicable state law.

175.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

176.    As a result of Defendants' infringement of Dunkin' Donuts' trade dress, Dunkin' Donuts has suffered and continues to suffer irreparable injury and has incurred and continues to incur monetary damages in an amount that has yet to be determined.

## COUNT 21
### Trade Dress Infringement - Baskin-Robbins

177.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 176 of the complaint as if fully set forth herein.

178.    Defendants' stores are identified by signs, exterior appearance, and other items on

which the words "Baskin-Robbins" and "Baskin-Robbins 31" appear in the same lettering style and in the same distinctive pink color scheme as Baskin-Robbins uses for the ice cream stores operated by Baskin-Robbins licensees.

179.    Defendants' use of the trade dress that is identical or confusingly similar to Baskin-Robbins' trade dress constitutes a false designation of the origin of their stores which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of Defendants' stores with the Baskin-Robbins stores operated by Baskin-Robbins licensees.

180.    Defendants' adoption of the Baskin-Robbins trade dress violates § 43 of the Lanham Act (15 U.S.C. § 1125) and applicable state law.

181.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

182.    As a result of Defendants' infringement of Baskin-Robbins' trade dress, Baskin-Robbins has suffered and continues to suffer irreparable injury and has incurred and continues to incur monetary damages in an amount that has yet to be determined.

WHEREFORE, Plaintiffs pray that this Court:

A.    Enter a judgment declaring that the Franchise Agreements are terminated *nunc pro tunc*; and

B.    Enter an injunctive order enjoining Defendants, their employees, agents, servants, or persons acting on their behalf from using the trademarks, trade name and trade dress of Dunkin' Donuts and from holding themselves out to the public as, and from operating as, Dunkin' Donuts franchisees, and requiring them to remove all signs, logos, names and other

28

indicia that their shops are or were Dunkin' Donuts shops; and

    C.  Enter an injunctive order enjoining Defendants, their employees, agents, servants, or persons acting on their behalf from using the trademarks, trade name and trade dress of Baskin-Robbins and from holding themselves out to the public as, and from operating as, Baskin-Robbins franchisees, and requiring them to remove all signs, logos, names and other indicia that their stores are or were Baskin-Robbins stores; and

    D.  Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements and directing Defendants to comply with their post-termination obligations thereunder *nunc pro tunc*; and

    E.  Enter a judgment in favor of Plaintiffs and against Defendants for the damages incurred by Plaintiffs as a result of Defendants' breaches of the Franchise Agreements; and

    F.  Enter a judgment in favor of Plaintiffs and against Defendants in the amount of $98,604.08 plus interest at the rate of 18% per annum as of August 1, 2007, attorney's fees and costs;

    G.  Award Plaintiffs prejudgment interest against Defendants in accordance with § 35 of the Lanham Act (15 U.S.C. § 1117); and

    H.  Award Plaintiffs such exemplary and punitive damages against Defendants as are deemed appropriate because of the wilful, intentional and malicious nature of Defendants' conduct; and

    I.  Award Plaintiffs judgment against Defendants for their costs and attorney's fees incurred in connection with this action pursuant to the Franchise Agreements, the

Note, and § 35 of the Lanham Act (15 U.S.C. § 1117); and

    J.  Award Plaintiffs such other and further relief as this Court may deem just

and proper.

Dated: January 10, 2008

            Respectfully submitted,


            /s/ Ronald D. Degen
           **RONALD D. DEGEN** (RD 7808)
           SCOTT G. GOLDFINGER (SG 9219)
           KRISTIN M. LASHER (KL 0614)
           O'ROURKE & DEGEN, PLLC
           Attorneys for Plaintiffs
           225 Broadway, Suite 715
           New York, New York 10007
           Tel: (212) 227-4530
           Fax: (212) 385-9813
           E-mail:  rdegen@odlegal.com