**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

DUNKIN' DONUTS FRANCHISED                    :
RESTAURANTS LLC,
a Delaware Limited Liability Company,        :
DUNKIN' DONUTS FRANCHISING LLC,
a Delaware Limited Liability Company,        :
DD IP Holder LLC,
a Delaware Limited Liability Company,        :
BASKIN-ROBBINS FRANCHISED SHOPS LLC,
 a Delaware Limited Liability Company,       :
BASKIN-ROBBINS FRANCHISING LLC,
a Delaware Limited Liability Company,        :
BR IP Holder LLC,
 a Delaware Limited Liability Company, and   :
DB REAL ESTATES ASSETS I LLC,
 a Delaware Limited Liability Company,       :

                    Plaintiffs,              :
          v.                                         Case No. 08-CV-00217 (RWS)
                                             :
INNER CITY DOUGH, INC.,
a New York Corporation,                      :
SOUTH BRONX INNER CITY DOUGH, INC.,
a New York corporation,                      :
TRIPLE J 3 DONUTS, INC.,
a New York corporation,                      :
URBAN CITY DOUGH, INC.,
a New York corporation,                      :
NANCY DAVIS,
a resident of New Jersey,                    :
DB DONUTS, INC.,
a New York corporation,                      :
DB DONUTS II, INC.,
a New York corporation,                      :
DB DONUTS IV, INC.,
a New York corporation,                      :
DB DONUTS VI, INC.,
a New York corporation, and                  :
DJENANE BARTHOLOMEW,
a resident of New Jersey,                    :

                    Defendants.              :
-------------------------------------------------------------x

## FIRST AMENDED COMPLAINT

This is an action for breach of contract, trademark infringement, trade dress infringement, trademark dilution, and unfair competition. Defendants were owners and operators of Dunkin' Donuts and Baskin-Robbins shops in the New York Metropolitan area. Plaintiffs terminated Defendants' Franchise Agreements based upon certain defaults of Defendants, including the violation of the obey all laws provision in their Franchise Agreements. Despite receiving a Notice of Default and Termination, Defendants continue to use the names, trademarks, and service marks of Dunkin' Donuts and Baskin-Robbins without their authorization and in breach of the post-termination provisions of the Franchise Agreements. Plaintiffs seek monetary, injunctive, and other relief for the reasons set forth below.

## PARTIES

1.      Plaintiff Dunkin' Donuts Franchised Restaurants LLC, successor-in-interest to Dunkin' Donuts LLC and Dunkin' Donuts Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. All Dunkin' Donuts Franchise Agreements dated prior to May 26, 2006, have been assigned to Dunkin' Donuts Franchised Restaurants LLC. Dunkin' Donuts Franchised Restaurants LLC is engaged in the business of franchising independent businesspersons to operate Dunkin' Donuts shops throughout the United States. Dunkin' Donuts franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of donuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

2.     Plaintiff Dunkin' Donuts Franchising LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  All Dunkin' Donuts Franchise Agreements dated on or after May 26, 2006, are in the name of Dunkin' Donuts Franchising LLC.  Dunkin' Donuts Franchising LLC is engaged in the business of franchising independent businesspersons to operate Dunkin' Donuts shops throughout the United States.  Dunkin' Donuts franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of donuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

3.     Plaintiff DD IP Holder LLC, successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks.  Unless otherwise specified, Dunkin' Donuts Franchised Restaurants LLC, Dunkin' Donuts Franchising LLC, and DD IP Holder LLC are collectively referred to hereinafter as "Dunkin' Donuts."

4.     Plaintiff Baskin-Robbins Franchised Shops LLC, successor-in-interest to Baskin-Robbins USA LLC and Baskin-Robbins USA, Co., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  All Baskin-Robbins Franchise Agreements dated prior to May 26, 2006, have been assigned to Baskin-Robbins Franchised Shops LLC.  Baskin-Robbins Franchised Shops is engaged in the business of franchising independent businesspersons to operate Baskin-Robbins shops throughout the United

States.  Baskin-Robbins franchisees are licensed to use the trade names, service marks, and trademarks of Baskin-Robbins and to operate under the Baskin-Robbins System, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

5.      Plaintiff Baskin-Robbins Franchising LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  All Baskin-Robbins Franchise Agreements dated on or after May 26, 2006, are in the name of Baskin-Robbins Franchising LLC.  Baskin-Robbins Franchising LLC is engaged in the business of franchising independent businesspersons to operate Baskin-Robbins shops throughout the United States.  Baskin-Robbins franchisees are licensed to use the trade names, service marks, and trademarks of Baskin-Robbins and to operate under the Baskin-Robbins System, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

6.      Plaintiff BR IP Holder LLC, successor-in-interest to Baskin-Robbins Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins," and related marks.  Unless otherwise specified, Baskin-Robbins Franchised Shops LLC, Baskin-Robbins Franchising LLC, and BR IP Holder LLC are collectively referred hereinafter as  "Baskin-Robbins."

7.      Plaintiff DB Real Estate Assets I LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  DB Real Estate

Assets is a wholly-owned subsidiary of Dunkin' Donuts and is engaged in the business of leasing properties to Dunkin' Donuts franchisees to enable Dunkin' Donuts to franchise independent businesspersons to operate Dunkin' Donuts shops at those locations.

8.     Dunkin' Donuts and Baskin-Robbins operate as separate corporations, but they pursue or permit joint development of units in selected markets, which are commonly referred to as "combo" shops.

9.     Upon information and belief, Defendant Inner City Dough, Inc. is a New York corporation with its principal place of business in Jamaica, New York.  Defendant Inner City Dough was the owner of a Dunkin' Donuts and Baskin-Robbins shop located at 134-50 Guy R. Brewer Boulevard, Jamaica, New York (the "Jamaica Shop"), pursuant to a Franchise Agreement dated March 4, 2005 (the "Jamaica Franchise Agreement").

10.     Upon information and belief, Defendant South Bronx Inner City Dough, Inc. is a New York corporation with its principal place of business in New York, New York.  Defendant South Bronx Inner City Dough was the owner and operator of Dunkin' Donuts shops located at: (1) 1206 St. Nicholas Avenue, New York, New York (the "St. Nicholas Avenue Shop"), pursuant to a Franchise Agreement dated July 11, 2005 ("St. Nicholas Avenue Franchise Agreement"); and (2) 3414 Jerome Avenue, Bronx, New York (the "Jerome Avenue Shop"), pursuant to a Franchise Agreement dated March 4, 2005 (the "Jerome Avenue Franchise Agreement").

11.     Upon information and belief, Defendant Triple J 3 Donuts, Inc. is a New York corporation with its principal place of business in New York, New York.  Defendant Triple J 3 Donuts was the owner and operator of a Dunkin' Donuts and  Baskin-Robbins shop located at

3455-57 Broadway, New York, New York (the "Broadway Shop"), pursuant to a Franchise

Agreement dated July 27, 2004 (the "Broadway Franchise Agreement").

12.     Upon information and belief, Defendant Urban City Dough, Inc. is a New York

corporation with its principal place of business in New York, New York.  Defendant Urban City

Dough was the owner and operator of a Dunkin' Donuts shop located at 30 Rockefeller Plaza,

New York, New York (the "Rockefeller Plaza Shop"), pursuant to a Franchise Agreement dated

June 24, 2005 (the "Rockefeller Plaza Franchise Agreement").

13.     Defendant Nancy Davis is a natural person and, upon information and belief, she

is a citizen and resident of the State of New Jersey.  Defendant was a franchisee and signatory to

the Jamaica, St. Nicholas Avenue, Jerome Avenue, Broadway, and Rockefeller Plaza Franchise

Agreements.  She is an officer and/or shareholder of each of the corporate entities identified in

paragraphs 9 through 12 above, and personally guaranteed the obligations of the foregoing

entities pursuant to executed personal guarantees.  Unless otherwise specified, Defendants Inner

City Dough, South Bronx Inner City Dough, Triple J 3 Donuts, Urban City Dough, and Nancy

Davis are collectively referred to hereinafter as the "Davis Defendants."

14.     Upon information and belief, Defendant DB Donuts, Inc. is a New York

corporation with its principal place of business in New York, New York.  Defendant DB Donuts

was the owner and operator of a Dunkin' Donuts shop located at 132 Nassau Street, New York,

New York (the "Nassau Street Shop"), pursuant to a Franchise Agreement dated May 31, 2007

(the "Nassau Street Franchise Agreement").

15.     Upon information and belief, Defendant DB Donuts II, Inc. is a New York

corporation with its principal place of business in New York, New York.  Defendant DB Donuts

II was the owner and operator of a Dunkin' Donuts shop located at 130 Church Street, New

York, New York (the "Church Street Shop"), pursuant to a Franchise Agreement dated May 31, 2007 (the "Church Street Franchise Agreement").

16.    Upon information and belief, Defendant DB Donuts IV, Inc. is a New York corporation with its principal place of business in New York, New York.  Defendant DB Donuts IV was the owner and operator of a Dunkin' Donuts shop located at 973 8th Avenue, New York, New York (the "8th Avenue Shop"), pursuant to a Franchise Agreement dated October 23, 2007 (the "8th Avenue Franchise Agreement").

17.    Upon information and belief, Defendant DB Donuts VI, Inc. is a New York corporation with its principal place of business in Manhattan, New York.  Defendant DB Donuts VI was the owner and operator of a Dunkin' Donuts shop located at 360 W. 31st Street, Manhattan, New York (the "W. 31st Street Shop"), pursuant to a Franchise Agreement dated November 9, 2007 (the "W. 31st Street Franchise Agreement").

18.    Defendant Djenane Bartholomew is a natural person and, upon information and belief, is a citizen and resident of the State of New Jersey.  Defendant was a franchisee and signatory to the Nassau Street, Church Street, 8th Avenue, and W. 31st Street Franchise Agreements.  Defendant Bartholomew is an officer and/or shareholder of each of the corporate entities identified in paragraphs 14 through 17 above, and personally guaranteed the obligations of the foregoing entities pursuant to executed personal guarantees.  Defendant Bartholomew also signed a Store Development Agreement dated June 15, 2007, to build Dunkin' Donuts shops throughout the New York Metropolitan area.  Unless otherwise specified, Defendants DB Donuts, DB Donuts II, DB Donuts IV, DB Donuts VI, and Djenane Bartholomew are collectively referred to hereinafter as the "Bartholomew Defendants."

## JURISDICTION AND VENUE

19.     This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15

U.S.C. §§ 1116 (a) & 1121, and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a).  The amount in

controversy exceeds $75,000, exclusive of interest and costs.

20.     This Court has *in personam* jurisdiction over Defendants because they conduct

business in this district, they are residents of this district, and the events giving rise to Plaintiffs'

claims occurred in this district.

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND FACTS

### The Dunkin' Donuts System

22.     Dunkin' Donuts is the franchisor of the Dunkin' Donuts franchise system.

23.     DD IP Holder LLC is the owner of the trademark, service mark, and trade name

"Dunkin' Donuts," and related marks.  Dunkin' Donuts has the exclusive license to use and

license others to use these marks and trade name and has used them continuously since

approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other

products associated with those shops.

24.     The Dunkin' Donuts trademarks and trade name are distinctive and famous and

have acquired secondary meaning.

25.     The Dunkin' Donuts trademarks and trade name are utilized in interstate

commerce.

26.     The Dunkin' Donuts marks have been widely advertised and promoted by

Dunkin' Donuts over the years.  Over the past 35 years Dunkin' Donuts and its franchisees have

spent more than $1,500,000,000 on advertising and promoting the Dunkin' Donuts marks.

Dunkin' Donuts spent approximately $167,000,000 in fiscal year 2005 alone on advertising and promotion.

27.    Dunkin' Donuts and its franchisees currently operate approximately 5,600 units in the United States and 2,000 outside the United States.  Dunkin' Donuts shops feature Dunkin' Donuts distinctive trade dress, including pink and orange color scheme, signage, menu boards, product selection and names, interior design and doughnut cases.  In the more than fifty years since the Dunkin' Donuts System began, hundreds of millions of customers have been served in Dunkin' Donuts shops.

28.    As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with products and services offered by Dunkin' Donuts and its franchisees.  The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

### The Baskin-Robbins System

29.    Baskin-Robbins is the franchisor of the Baskin-Robbins System.

30.    BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks.  Baskin-Robbins has the exclusive license to use and license others to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

31.     BR IP Holder LLC owns numerous federal registrations for the mark "Baskin-Robbins" or derivations thereof, as well as related marks.  Each of these registrations is in full force and effect, and most of them are incontestable pursuant to 15 U.S.C. § 1065.

32.     The Baskin-Robbins trademarks are utilized in interstate commerce.

33.     The Baskin-Robbins marks have been very widely advertised and promoted by Baskin-Robbins over the years.  As a result, the Baskin-Robbins marks have become famous throughout the United States.

34.     Baskin-Robbins and its franchisees currently operate approximately 2,500 stores in the United States and approximately 3,000 stores outside of the United States.  In the more than fifty-five years since the Baskin-Robbins System began, millions of consumers have been served in Baskin-Robbins stores.

35.     As a result of the extensive sales, advertising, and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with products and services offered by Baskin-Robbins and its franchisees.  The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

**Defendants' Obligations Under the Franchise Agreements**

36.     Under the terms of the Franchise Agreements, Defendants agreed they would use Dunkin' Donuts' and Baskin-Robbins' proprietary marks, including, but not limited to, their trademarks, logos, emblems, trade dress and other indicia of origin, "only in the manner and to the extent specifically licensed" by the Agreements.  Franchise Agreements ¶¶ 7.0 and 7.1.

37.     Defendants agreed that any unauthorized use of the Dunkin' Donuts and Baskin-Robbins proprietary marks during or after the expiration or earlier termination of the Franchise Agreements would constitute an incurable default causing irreparable harm subject to injunctive relief.  Franchise Agreements ¶¶ 7.1, 9.4.2, 9.4.3.

38.     Defendants agreed they would not do or perform, directly or indirectly, any act injurious or prejudicial to the goodwill associated with Dunkin' Donuts' and Baskin-Robbins' proprietary marks and the Dunkin' Donuts and Baskin-Robbins Systems.  Franchise Agreements ¶ 8.0.1.

39.     Defendants agreed that they would not, without Dunkin' Donuts' and Baskin-Robbins' prior written consent, sell, assign, transfer, convey, give away, pledge, mortgage, or otherwise encumber to any person, persons, partnership, association, or corporation, any interest in their Franchise Agreements, or the franchises granted by the Franchise Agreements, or any interest in any corporation, partnership, or LLC which owns any interest in the franchises. Franchise Agreements ¶ 10.1.

40.     Defendants agreed that "[a]ny purported assignment or transfer not having the prior written consent of FRANCHISOR shall be null and void and shall constitute default hereunder."  Franchise Agreements ¶ 10.1.

41.     Under the terms of the Franchise Agreements, Defendants agreed that they would comply with all applicable laws, rules, regulations, ordinances, and orders of public authorities. Franchise Agreements ¶ 5.1.7.

42.     Defendants agreed that it would be a default under the Franchise Agreements if they were convicted of or pled guilty or "nolo contendere" to a felony, crime involving moral turpitude, or any other crime or offense that Plaintiffs believed is injurious to Plaintiffs' Systems,

proprietary marks or the goodwill associated therewith, or if Plaintiffs had proof that Defendants

had committed such a felony, crime or offense.  Franchise Agreements ¶ 9.0.2.

43.    Defendants also agreed not to use the franchised premises for any illegal or

unauthorized purpose.  Franchise Agreements ¶ 9.0.3.

44.    Under the terms of the Franchise Agreements, Defendants agreed as follows:

    a.    To pay Dunkin' Donuts and Baskin-Robbins a franchise fee of 5.9 percent of the gross sales of the business (Franchise Agreements, Contract Data Schedule Item "E" ¶ 4.3);

    b.    To pay Dunkin' Donuts and Baskin-Robbins an advertising fee of 5.0 percent of the gross sales of the business to the Franchise Owners Advertising and Sales Promotion Fund (Franchise Agreements, Contract Data Schedule Item "F" ¶ 4.4);

    c.    To accurately report on an approved form each week gross sales for the preceding calendar week, at which time all fees required to be paid were to be remitted (Franchise Agreements ¶ 5.2.1); and

    d.    To pay interest on unpaid monies due under Section 4 of the Franchise Agreements (Franchise Agreements ¶ 9.3).

45.    The Franchise Agreements each contain a "cross-default" provision, which states

in Paragraph 9.0.4 that "Franchisee shall be in default under this Agreement . . . [i]f any other

franchise agreement between FRANCHISEE and FRANCHISOR or any affiliated entity is

terminated by reason of FRANCHISEE's default thereunder . . . ."  Franchise Agreements ¶

9.0.4.  Thus, the termination of one Franchise Agreement constitutes grounds for the termination

of all of the other Franchise Agreements of an affiliated entity, and of each of them individually.

46.    Under Paragraph 9.1.4 of the Franchise Agreements, no cure period is available if

Defendants are in default under any paragraph designated in 9.0.1 through 9.0.4 or if they

otherwise commit an act of fraud with respect to their obligations under the Agreements.

Franchise Agreements ¶ 9.1.4.  Moreover, as a matter of law, no cure period is available for such defaults.

47.     Defendants agreed that upon the termination of the Franchise Agreements, their rights to use Dunkin' Donuts' and Baskin-Robbins' proprietary marks and System would cease, and that they would promptly pay Plaintiffs any damages, costs, and expenses, including reasonable attorneys' fees, incurred by Plaintiffs as a result of the Defendants' default(s). Franchise Agreements ¶¶ 9.3, 9.4, 9.4.1, 9.4.2.

48.     Defendants agreed that any unauthorized use of Dunkin' Donuts' and Baskin-Robbins' proprietary marks following the effective date of the termination of the Franchise Agreements would result in irreparable harm to Dunkin' Donuts and Baskin-Robbins and would constitute willful trademark infringement.  Franchise Agreements ¶ 9.4.3.

### The Guarantees

49.     At the time that the Jamaica, Jerome Avenue, St. Nicholas Avenue, Broadway, and Rockefeller Plaza Franchise Agreements were executed, Defendant Nancy Davis signed personal guarantees in which she unconditionally and personally guaranteed to Dunkin' Donuts and Baskin-Robbins to fully and promptly pay and discharge the present and future obligations under those Franchise Agreements.

50.     Likewise, at the time that the Nassau Street, Church Street, 8th Avenue, and W. 31st Street Franchise Agreements were executed, Defendant Djenane Bartholomew signed personal guarantees in which Bartholomew unconditionally and personally guaranteed to Dunkin' Donuts and Baskin-Robbins to fully and promptly pay and discharge the present and future obligations under those Franchise Agreements.

**The Promissory Note**

51.     On or about May 31, 2007, Defendants Inner City Dough, South Bronx Inner City Dough, Triple J 3 Donuts, and Nancy Davis executed a promissory note (the "Note").

52.     Pursuant to the Note, Defendants Inner City Dough, South Bronx Inner City Dough, Triple J 3 Donuts, and Nancy Davis agreed to pay Plaintiffs the sum of $95,753.93 with interest thereon at the rate of 10% per annum as of April 15, 2007, in a single payment of $98,604.08 on August 1, 2007, or at the closing of the sale of the Jerome Avenue Franchise, whichever first occurs.

53.     Upon their failure to cure a default, Defendants Inner City Dough, South Bronx Inner City Dough, Triple J 3 Donuts, and Nancy Davis agreed to pay collection costs, reasonable attorneys' fees and interest as of the date of default on the unpaid amount at the rate of 18% per annum.

**The Store Development Agreement**

54.     On or about June 15, 2007, Defendant Djenane Bartholomew signed a Store Development Agreement ("SDA") to develop combination Dunkin' Donuts/Baskin-Robbins units within designated areas in the Metro New York area.  Under the SDA, Defendant Bartholomew agreed that his right to develop the franchises was contingent upon his not being in default of the SDA or any Franchise Agreements he may have with Plaintiffs.  SDA ¶ 8.  By engaging in the breaches of the Franchise Agreements as noted herein, Defendant Bartholomew breached the SDA.

**Leases**

55.     Defendant DB Donuts VI, Inc. became a sublessee of DB Real Estate Assets for the W. 31st Street Shop pursuant to a Sublease Agreement dated November 9, 2007.   The

Sublease provides that DB Real Estate Assets has the right to terminate the Sublease immediately if the corresponding Franchise Agreement for the shop is terminated for any reason. Sublease ¶ 14.7.  Defendant DB Donuts VI, Inc. further agreed that upon the termination of the Sublease it would promptly pay DB Real Estate Assets any damages, costs, and expenses, including reasonable attorneys' fees, incurred by DB Real Estate Assets as a result of the termination.  *Id.* ¶ 9.4.

56.    Pursuant to Riders to Lease Agreement, Dunkin' Donuts has the option and right to assume the leases for the Nassau Street, the Church Street, and the 8th Avenue Shops if the Franchise Agreements for those shops are terminated.

57.    Similarly, pursuant to Riders to Lease Agreement, Dunkin' Donuts has the option and right to assume the leases for the Jamaica, St. Nicholas Avenue, and Jerome Avenue Shops if the Franchise Agreements for those shops are terminated.

## DEFENDANTS' DEFAULTS

**A.    Unauthorized Transfer and Fraudulent Scheme**

58.    Based on a variety of evidence, Plaintiffs recently discovered that on or about September 24, 2005, Defendants Urban City Dough and Nancy Davis transferred their Rockefeller Plaza Franchise Agreement and franchise to Defendant Djenane Bartholomew and Bartholomew Foods IV, Corp.  This transfer occurred without Dunkin' Donuts' prior written consent or knowledge, and in breach of the Rockefeller Plaza Franchise Agreement.

59.    Specifically, Defendants Urban City Dough and Nancy Davis entered into an Asset Purchase Agreement dated September 12, 2005, with Bartholomew Foods IV Corp. and Djenane Bartholomew in which Defendants Urban City Dough and Davis transferred the

Rockefeller Plaza Franchise Agreement and franchise to Bartholomew Foods IV Corp. and Djenane Bartholomew.

60.    The parties also entered into an Assignment and Assumption of Sublease Agreement dated September 12, 2005, in which Defendants Urban City Dough and Nancy Davis transferred and assigned their rights and obligations under the Sublease Agreement with RCPI Landmark Properties, L.L.C. to Bartholomew Foods IV Corp.

61.    Additionally, the parties prepared and signed a fraudulent franchise agreement dated September 24, 2005, that falsely represents that Bartholomew Foods IV Corp. was the franchisee of the Rockefeller Plaza Franchise Agreement.  This fraudulent franchise agreement contains a forged signature of a representative of Dunkin' Donuts.

62.    The transfer took place without Dunkin' Donuts' prior written consent, as required by the Rockefeller Plaza Franchise Agreement.  This transfer was done fraudulently to avoid the payment of applicable transfer fees and to circumvent Plaintiffs' requirements regarding the qualifications and training of franchisees.

63.    Additionally, Defendants Urban City Dough, Nancy Davis, Djenane Bartholomew and Bartholomew Foods IV Corp. conspired and participated in a scheme to commit a fraud on CIT Group/Equipment Financing, Inc. by causing that entity to believe and rely upon Defendants' fraudulent misrepresentation that Bartholomew Foods IV Corp. was the franchisee of the Rockefeller Plaza franchise in granting a loan to Bartholomew Foods IV Corp.

64.    Specifically, on or about April 30, 2007, Defendant Djenane Bartholomew and Bartholomew Foods IV Corp. submitted a loan application to CIT Group/Equipment Financing, Inc. in which they fraudulently misrepresented that  Bartholomew Foods IV Corp. was the duly authorized and approved Dunkin' Donuts franchisee under the Rockefeller Plaza Franchise

Agreement.  The purpose of this loan application was to secure a loan in the approximate amount of $1.6 million.  Upon information and belief and based on this fraudulent misrepresentation, CIT Group/Equipment Financing, Inc. loaned the money to Defendant Djenane Bartholomew and Bartholomew Foods IV Corp.

65.     Upon information and belief, Defendant Djenane Bartholomew and Bartolomew Foods IV Corp. submitted the fraudulent franchise agreement referenced in paragraph 61 above to CIT Group/Equipment Financing, Inc. in their application to that lending institution.

66.     By engaging in this fraudulent scheme, Defendants violated applicable federal law, including but not limited to, 18 U.S.C. §§ 371, 1014, 1341, 1343, 1344, and 2314.

67.     Accordingly, pursuant to the applicable provisions of the Franchise Agreements and based on the breaches and violations described herein, on or about January 23, 2008, Plaintiffs served Defendants Inner City Dough, South Bronx Inner City Dough, Triple J 3 Donuts, Urban City Dough, and Nancy Davis with a Supplemental Notice of Default and Termination.  In addition, on or about that same date, Plaintiffs served Defendants DB Donuts, DB Donuts II, DB Donuts IV, DB Donuts VI, and Djenane Bartholomew with a Notice of Default and Termination.  Additionally, on or about February 5, 2008, Plaintiffs sent Defendant DB Donuts VI with a Supplemental Notice of Default and Termination terminating the Sublease.

68.     The Notices terminated Defendants' Franchise Agreements, Sublease, and SDA, and demanded that Defendants cease using Plaintiffs' trade names and proprietary marks immediately upon the effective date of termination.  In addition, the Notices demanded that Defendants comply with the post-termination obligations set forth in the Franchise Agreements, Sublease, and SDA.

**B.      Nonpayment Default and Termination**

69.      As set forth above, under the Franchise Agreements, Defendants Inner City Dough, South Bronx Inner City Dough, and Triple J 3 Donuts agreed to pay Dunkin' Donuts and Baskin-Robbins franchise fees, advertising fees, and other charges.  Defendants, however, failed to pay franchise and advertising fees to Dunkin' Donuts and Baskin-Robbins as required by the applicable Franchise Agreements.

70.      On October 3, 2007, pursuant to applicable provisions of the Jamaica, Jerome Avenue, St. Nicholas Avenue, and Broadway Franchise Agreements, Plaintiffs sent Defendants Inner City Dough, South Bronx Inner City Dough, and Triple J 3 Donuts Notices to Cure to Defendants' addresses.  The Notices to Cure were also sent to Defendant Nancy Davis at 16 Great Hall Road, Mahwah, New Jersey 07430 and 21 Main Street, Suite 201, Hackensack, New Jersey 07601.  The Notices to Cure demanded that Defendants cure defaults in paying franchise fees, advertising fees, and other charges.

71.      Upon information and belief, on or about October 4, 2007, Defendants received the Notices to Cure.  More than fifteen (15) days passed after Defendants received the Notices to Cure without the defaults having been cured.

72.      On January 2, 2008, pursuant to applicable provisions of the Franchise Agreements, Plaintiffs sent Defendants Inner City Dough, South Bronx Inner City Dough, and Triple J 3 Donuts Notices of Termination by overnight carrier to Defendants' addresses.  In addition, the Notices of Termination were also sent to Defendant Nancy Davis at 16 Great Hall Road, Mahwah, New Jersey 07430 and 21 Main Street, Suite 201, Hackensack, New Jersey 07601.

73.    On January 2, 2008, pursuant to applicable provisions of the Franchise Agreement, Plaintiffs sent Defendant Urban City Dough a Notice of Termination by overnight carrier to Defendant's address.  In addition, the Notice of Termination was also sent to Defendant Nancy Davis at 16 Great Hall Road, Mahwah, New Jersey 07430 and 21 Main Street, Suite 201, Hackensack, New Jersey 07601.  The Notice of Termination terminated the Rockefeller Plaza Franchise Agreement based upon the termination of the Franchise Agreements of the affiliated entities (Defendants Inner City Dough, South Bronx Inner City Dough, and Triple J 3 Donuts) for their failure to cure the monetary and other defaults as noted in the Notices to Cure.

74.    Upon information and belief, on or about January 3, 2008, Defendants received the Notices of Termination.  The Notices of Termination terminated the Franchise Agreements of Defendants Inner City Dough, South Bronx Inner City Dough, Triple J 3 Donuts, and Urban City Dough, effective immediately, based upon the failure of Defendants to cure the defaults listed in the Notices to Cure.

75.    The Notices of Termination demanded that Defendants Inner City Dough, South Bronx Inner City Dough, Triple J 3 Donuts, and Urban City Dough cease using Plaintiffs' trade names and proprietary marks immediately upon the effective date of termination.  In addition, the Notices demanded that Defendants comply with the post-termination obligations of the Franchise Agreements.

**C.    Nonpayment and Default under the Note**

76.    On or about October 3, 2007, Plaintiffs notified and demanded, through a Notice of Default, that Defendants Nancy Davis, Inner City Dough, South Bronx Inner City Dough, and Triple J 3 Donuts pay the balance due on the Note.  This Notice of Default was sent by overnight

carrier to these Defendants' addresses and to Nancy Davis at 21 Main Street, Suite 201, Hackensack, New Jersey 07601.

77.    Upon information and belief, Defendants received this Notice of Default on or about October 4, 2007.  More than ten (10) days passed after Defendants received the Notice of Default without the defaults having been cured.

78.    Defendants Nancy Davis, Inner City Dough, Inc., South Bronx Inner City Dough, Inc., and Triple J 3 Donuts, Inc. are in breach of the Note and owe Plaintiffs $98,604.08, plus interest at the rate of 18% per annum as of August 1, 2007, and attorneys' fees and costs.

## COUNT 1
### (Breach of Franchise Agreements – The Davis Defendants)

79.    The allegations of paragraphs 1 through 78 are hereby incorporated by reference.

80.    The conduct described herein constitutes breaches of the contractual obligations and agreements contained in the Davis Defendants' Franchise Agreements.

81.    These breaches constitute grounds for terminating the Davis Defendants' Franchise Agreements.

82.    As a result of the Davis Defendants' actions, Dunkin' Donuts and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT 2
### (Breach of Franchise Agreements – The Bartholomew Defendants)

83.    The allegations of paragraphs 1 through 82 are hereby incorporated by reference.

84.    The conduct described herein constitutes breaches of the contractual obligations and agreements contained in the Bartholomew Defendants' Franchise Agreements.

85.     These breaches constitute grounds for terminating the Bartholomew Defendants' Franchise Agreements.

86.     As a result of the Bartholomew Defendants' actions, Dunkin' Donuts and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

### COUNT 3
**(Breach of Franchise Agreements – Defendants Inner City Dough,<br>South Bronx Inner City Dough, Triple J 3 Donuts)<br>(Termination and Injunction)**

87.     The allegations of paragraphs 1 through 86 are hereby incorporated by reference.

88.     The failure of Defendants Inner City Dough, South Bronx Inner City Dough, and Triple J 3 Donuts to timely cure the monetary and sales reporting defaults set forth in the Notice to Cure constitute a breach of these Defendants' Franchise Agreements.

89.     The breach by Defendants of their Franchise Agreements constitutes grounds for termination.

90.     Plaintiffs terminated these Defendants' Franchise Agreements and demanded that these Defendants comply with the post-termination provision of their Franchise Agreements.

91.     Defendants Inner City Dough, South Bronx Inner City Dough, and Triple J 3 Donuts have refused to cease using the Dunkin' Donuts and Baskin-Robbins trademarks, trade names and trade dress and have failed to comply with the post-termination provisions of their Franchise Agreements.

92.     As a result of Defendants' actions, Dunkin' Donuts and Baskin-Robbins are suffering and continue to suffer irreparable harm and have incurred and continue to incur monetary damages in an amount yet to be determined.

**COUNT 4**
**(Breach of Franchise Agreement – Defendant Urban City Dough)**
**(Termination and Injunction)**

93.     The allegations of paragraphs 1 through 92 are hereby incorporated by reference.

94.     Defendant Urban City Dough is in default under the Rockefeller Plaza Franchise Agreement by reason of the termination of the Jamaica, Jerome Avenue, St. Nicholas Avenue and Broadway Franchise Agreements.

95.     This default cannot be cured as a matter of law.

96.     The termination of the Jamaica, Jerome Avenue, St. Nicholas Avenue and Broadway Franchise Agreements constitutes grounds for terminating Defendant Urban City Dough's Rockefeller Plaza Franchise Agreement.

97.     Defendant Urban City Dough has refused to cease using the Dunkin' Donuts trademarks, trade names, and trade dress and has failed to comply with the post-termination provisions of its Franchise Agreement.

98.     As a result of Defendant Urban City Dough's actions, Dunkin' Donuts is suffering and continues to suffer irreparable harm and has incurred and continues to incur monetary damages in an amount yet to be determined.

**COUNT 5**
**(Breach of Franchise Agreements – Defendants Inner City Dough,**
**South Bronx Inner City Dough, Triple J 3 Donuts)**
**(Receivables)**

99.     The allegations of paragraphs 1 through 98 are hereby incorporated by reference.

100.     Defendants Inner City Dough, South Bronx Inner City Dough, and Triple J 3 Donuts have failed to pay Plaintiffs' franchise fees, advertising fees, late charges, attorneys' fees and costs due under their Franchise Agreements.

101.    As a result of Defendants' actions, Plaintiffs are entitled to a judgment in an amount yet to be determined for all monies now due and which hereafter become due under the their Franchise Agreements, plus interest, attorneys' fees and costs pursuant to the Franchise Agreements.

## COUNT 6
**(Breach of the Note – Inner City Dough, South Bronx Inner City Dough,
Triple J 3 Donuts, and Nancy Davis)**

102.    The allegations of paragraphs 1 through 101 are hereby incorporated by reference.

103.    Defendants Inner City Dough, South Bronx Inner City Dough, Triple J 3 Donuts, and Nancy Davis have failed to pay the monies due under the Note, although due demand has been made for the same.

104.    As a result, Defendants owe Plaintiffs the sum of $98,604.08 plus interest at the rate of 18% per annum as of August 1, 2007, and attorneys' fees and costs.

## COUNT 7
**(Breach of Guarantees – Defendant Nancy Davis)**

105.    The allegations of paragraphs 1 through 104 are hereby incorporated by reference.

106.    Defendant Nancy Davis has failed to pay the monies due under the Guarantees that she signed for the Jamaica, Jerome Avenue, St. Nicholas Avenue, Broadway, and the Rockefeller Plaza Franchise Agreements.

107.    As a result, Defendant Davis owes Plaintiffs a sum to be determined at trial, plus interest, attorneys' fees and costs.

## COUNT 8
**(Breach Cross Guarantees – Defendants Inner City Dough, South Bronx Inner City Dough,
Triple J 3 Donuts, and Urban City Dough)**

108.    The allegations of paragraphs 1 through 107 are hereby incorporated by reference.

109.     Defendants Inner City Dough, South Bronx Inner City Dough, Triple J 3 Donuts, and Urban City Dough have failed to pay the monies due under the Cross Guarantees.

110.     As a result, Defendants owe Dunkin' Donuts and Baskin-Robbins a sum to be determined at trial, plus interest, attorneys' fees and costs.

## COUNT 9
### (Breach SDA – Defendant Djenane Bartholomew)

111.     The allegations of paragraphs 1 through 110 are hereby incorporated by reference.

112.     The conduct described herein constitutes breaches of the contractual obligations and agreements contained in the SDA.

113.     These breaches constitute grounds for terminating the SDA.

114.     As a result of Defendant Bartholomew's actions, Dunkin' Donuts and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT 10
### (Breach of Lease – Defendant DB Donuts VI)

115.     The allegations of paragraphs 1 through 114 are hereby incorporated by reference.

116.     The conduct described herein constitutes breaches of the contractual obligations and agreements contained in the Lease.

117.     These breaches constitute grounds for terminating the Lease.

118.     As a result of Defendant DB Donuts VI's actions, DB Real Estate Assets I LLC has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT 11
### (Trademark Infringement – The Davis Defendants)

119.     The allegations of paragraphs 1 through 118 are hereby incorporated by reference.

120.    The use in commerce of the Dunkin' Donuts and Baskin-Robbins' trademarks and trade names by the Davis Defendants outside the scope of their Franchise Agreements and without Dunkin' Donuts' and Baskin-Robbins' consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of the Davis Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin' Donuts and Baskin-Robbins.

121.    Such unauthorized use of Dunkin' Donuts' and Baskin-Robbins' trademarks and trade names infringes Dunkin' Donuts' and Baskin-Robbins' exclusive rights in their trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114 and applicable state law.

122.    The acts of the Davis Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

123.    As a result of the actions of the Davis Defendants, Dunkin' Donuts and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT 12
### (Trademark Infringement – The Bartholomew Defendants)

124.    The allegations of paragraphs 1 through 123 are hereby incorporated by reference.

125.    The use in commerce of the Dunkin' Donuts and Baskin-Robbins' trademarks and trade names by the Bartholomew Defendants outside the scope of their Franchise Agreements and without Dunkin' Donuts' and Baskin-Robbins' consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of the Bartholomew Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin' Donuts and Baskin-Robbins.

126.    Such unauthorized use of Dunkin' Donuts' and Baskin-Robbins' trademarks and trade names infringes Dunkin' Donuts' and Baskin-Robbins' exclusive rights in their trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114 and applicable state law.

127.    The acts of the Bartholomew Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

128.    As a result of the actions of the Bartholomew Defendants, Dunkin' Donuts and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

**COUNT 13**
**(Trademark Dilution – The Davis Defendants)**

129.    The allegations of paragraphs 1 through 128 are hereby incorporated by reference.

130.    The Davis Defendants' commercial use in commerce of the Dunkin' Donuts and Baskin-Robbins trademarks and trade name outside the scope of their Franchise Agreements and without the consent of Dunkin' Donuts and Baskin-Robbins causes dilution of the distinctive quality of the Dunkin' Donuts and Baskin-Robbins trademarks and trade name.  Such unauthorized use of the Dunkin' Donuts and Baskin-Robbins trademark and trade name violates § 43 of the Lanham Act (15 U.S.C. § 1125(c)) and applicable state law.

131.    As a result of the Davis Defendants' actions, Dunkin' Donuts and Baskin-Robbins are suffering and continue to suffer irreparable harm, and have incurred and continue to incur monetary damages in an amount yet to be determined.

**COUNT 14**
**(Unfair Competition – The Davis Defendants)**

132.    The allegations of paragraphs 1 through 131 are hereby incorporated by reference.

133.    The use in commerce of Dunkin' Donuts and Baskin-Robbins' trademarks and trade names by the Davis Defendants outside the scope of the Franchise Agreements and without the consent of Dunkin' Donuts and Baskin-Robbins is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person.  Such unauthorized use of Dunkin' Donuts and Baskin-Robbins' trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law.

134.    The acts of the Davis Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

135.    As a result of the actions of the Davis Defendants, Dunkin' Donuts and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT 15
### (Unfair Competition – The Bartolomew Defendants)

136.    The allegations of paragraphs 1 through 135 are hereby incorporated by reference.

137.    The use in commerce of Dunkin' Donuts and Baskin-Robbins' trademarks and trade names by the Bartolomew Defendants outside the scope of the Franchise Agreements and without the consent of Dunkin' Donuts and Baskin-Robbins is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person.  Such unauthorized use of Dunkin' Donuts and Baskin-Robbins' trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law.

138.    The acts of the Bartolomew Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

139.    As a result of the actions of the Bartolomew Defendants, Dunkin' Donuts and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

**COUNT 16**
**(Trade Dress Infringement – The Davis Defendants)**

140.    The allegations of paragraphs 1 through 139 are hereby incorporated by reference.

141.    The shops of the Davis Defendants are identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts" and "Baskin-Robbins" appear in the same lettering style and in the same distinctive color scheme as Dunkin' Donuts and Baskin-Robbins use for the doughnut and ice cream shops operated by Dunkin' Donuts and Baskin-Robbins licensees.

142.    The use by the Davis Defendants of trade dress that is identical to the Dunkin' Donuts and Baskin-Robbins trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of the Davis Defendants' shops, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their shops with the Dunkin' Donuts and Baskin-Robbins shops operated by Dunkin' Donuts and Baskin-Robbins licensees.  Such adoption of Dunkin' Donuts and Baskin-Robbins trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

143.    The acts of the Davis Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

144.    As a result of the actions of the Davis Defendants, Dunkin' Donuts and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT 17
### (Trade Dress Infringement – The Bartolomew Defendants)

145.    The allegations of paragraphs 1 through 144 are hereby incorporated by reference.

146.    The shops of the Bartolomew Defendant are identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts" and "Baskin-Robbins" appear in the same lettering style and in the same distinctive color scheme as Dunkin' Donuts and Baskin-Robbins use for the doughnut and ice cream shops operated by Dunkin' Donuts and Baskin-Robbins licensees.

147.    The use by the Bartolomew Defendants of trade dress that is identical to the Dunkin' Donuts and Baskin-Robbins trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of the Bartolomew Defendants' shops, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their shops with the Dunkin' Donuts and Baskin-Robbins shops operated by Dunkin' Donuts and Baskin-Robbins licensees.  Such adoption of Dunkin' Donuts and Baskin-Robbins trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

148.    The acts of the Bartolomew Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

149.    As a result of the actions of the Bartolomew Defendants, Dunkin' Donuts and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

a.      Enter a declaratory judgment order stating that the conduct of the Davis Defendants violated the terms of their Franchise Agreements and constitutes grounds for terminating their Franchise Agreements;

b.      Enter a declaratory judgment order stating that the conduct of the Bartholomew Defendants violated the terms of their Franchise Agreements, SDA, and Lease, and constitutes grounds for terminating their Franchise Agreements, SDA, and Lease;

c.      Enter a judgment declaring that the Franchise Agreements of the Davis Defendants are terminated *nunc pro tunc*;

d.      Enter a judgment declaring that the Franchise Agreements, SDA, and Lease of the Bartholomew Defendants are terminated *nunc pro tunc*;

e.      Enter a judgment in favor of Plaintiffs for the damages incurred by them as a result of the breaches of the Franchise Agreements, SDA, and Lease by the Bartholomew Defendants;

f.      Enter a judgment in favor of Plaintiffs for the damages incurred by them as a result of the breaches of the Franchise Agreements by the Davis Defendants;

g.      Enter a judgment in favor of Plaintiffs and against Defendants Inner City Dough, South Bronx Inner City Dough, Triple J 3 Donuts, and Nancy Davis in the amount of $98,604.08 plus interest at the rate of 18% per annum as of August 1, 2007, and attorneys' fees and costs.

h.      Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements, SDA, and Lease of the Bartholomew Defendants as of the effective date of the Notice of Default and Termination, or as otherwise provided by applicable law;

       i.      Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements of the Davis Defendants as of the effective date of the Notice of Default and Termination or Supplemental Notice of Default and Termination, or as otherwise provided by applicable law;

       j.      Enjoin Defendants and all those acting in concert with them from infringing upon Dunkin' Donuts' and Baskin-Robbins' trademarks, trade dress, and trade names and from otherwise engaging in unfair competition with Dunkin' Donuts and Baskin-Robbins;

       k.      Enter an injunctive order directing Defendants to comply with their post-termination obligations under any contract with Plaintiffs, including but not limited to the Franchise Agreements, Sublease, Lease Rider, and Lease Option Agreement;

       l.      Award Dunkin' Donuts and Baskin-Robbins judgment against Defendants for the damages they have sustained and the profits Defendants have derived as a result of their actions, and that such damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

       m.      Award Dunkin' Donuts and Baskin-Robbins prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

       n.      Award Plaintiffs such exemplary or punitive damages as are deemed appropriate because of the willful, intentional, and malicious nature of the conduct of Defendants;

       o.      Award Plaintiffs their costs and attorneys' fees incurred in connection with this action pursuant to contract and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

       p.      Award Plaintiffs such other relief as this Court may deem just and proper.

Respectfully submitted,


/s/ Ronald D. Degen_____
Ronald Degen (RD 7808)
Scott Goldfinger (SC 9219)
O'ROURKE & DEGEN, PLLC
225 Broadway, Suite 715
New York, NY 10007
Telephone:     (212) 227-4530
Facsimile:     (212) 385-9813


Robert L. Zisk (RZ 1275)
David E. Worthen (DW 8519)
Iris Figueroa Rosario (IR 7902)
GRAY, PLANT, MOOTY, MOOTY
  & BENNETT, P.A.
2600 Virginia Avenue, N.W., Suite 1111
Washington, DC 20037
Telephone:     (202) 295-2200
Facsimile:     (202) 295-2250

Dated:  February 6, 2008                    *Attorneys for Plaintiffs*