UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
DUNKIN' DONUTS FRANCHISED RESTAURANTS
LLC, a Delaware Limited Liability Company,
DUNKIN' DONUTS FRANCHISING LLC,
a Delaware Limited Liability Company,
DD IP Holder LLC,
a Delaware Limited Liability Company,
BASKIN-ROBBINS FRANCHISED SHOPS LLC,          Case No. 08-CV-00217 (RWS)
a Delaware Limited Liability Company,
BASKIN-ROBBINS FRANCHISING LLC,
a Delaware Limited Liability Company,
BR IP Holder LLC,                              ANSWER with
a Delaware Limited Liability Company, and      AFFIRMATIVE DEFENSES
DB REAL ESTATES ASSETS I LLC,                  and COUNTERCLAIMS
a Delaware Limited Liability Company,

                            Plaintiffs,

          v.

INNER CITY DOUGH, INC.,
a New York Corporation,
SOUTH BRONX INNER CITY DOUGH INC.,
a New York corporation,
TRIPLE J 3 DONUTS, INC.,
a New York corporation,
URBAN CITY DOUGH, INC.,
a New York corporation,
NANCY DAVIS,
a resident of New Jersey,
DB DONUTS, INC.,
a New York corporation,
DB DONUTS II, INC.,
a New York corporation,
DB DONUTS IV, INC.,
a New York corporation,
DB DONUTS VI, INC.,
a New York corporation, and
DJENANE BARTHOLOMEW,
a resident of New Jersey.

                            Defendants.

------------------------------------------------------------------------x

          Defendants,  DB DONUTS, INC., DB DONUTS II, INC., DB DONUTS IV, INC., DB

DONUTS VI, INC., and DJENANE BARTHOLOMEW, by and through their attorneys,

KUSHNICK & ASSOCIATES, P.C., hereby submit the following Answer in response to plaintiffs'

First Amended Complaint:

THE PARTIES

1.    Defendants deny knowledge or information sufficient to form a belief as to the

allegations contained in paragraphs numbered "1", "2", "3", "4", "5", "6", and "7" of plaintiffs' first

amended complaint.

2.    Defendants admit the allegations contained in paragraph numbered "8" of plaintiffs'

first amended complaint.

3.    Defendants deny knowledge or information sufficient to form a belief as to the

allegations contained in paragraphs numbered "9", "10", "11", "12" and "13" of plaintiffs' first

amended complaint and refer to the referenced documents for the exact terms and conditions

therein.

4.    Defendants deny each and every allegation contained in paragraph numbered "14" of

plaintiffs' first amended complaint except admit that DB Donuts, Inc. is a New York corporation

and is the owner and operator of a Dunkin' Donuts shop located at 132 Nassau Street, New

York, NY, pursuant to a Franchise Agreement dated May 31, 2007 (the "Nassau Street

Franchise Agreement").

5.    Defendants deny each and every allegation contained in paragraph numbered "15" of

plaintiffs' first amended complaint except admit that DB Donuts II, Inc.  is a New York

corporation and is the owner and operator of a Dunkin' Donuts shop located at 130 Church

Street, New York, NY, pursuant to a Franchise Agreement dated May 31, 2007 (the "Church

Street Franchise Agreement").

6.    Defendants deny each and every allegation contained in paragraph numbered "16" of

plaintiffs' first amended complaint except admit that DB Donuts IV, Inc. is a New York

corporation and is the owner and operator of a Dunkin' Donuts shop located at 973 8th Avenue,

New York, NY, pursuant to a Franchise Agreement dated October 23, 2007 (the "8th Avenue

Franchise Agreement").

7.  Defendants deny each and every allegation contained in paragraph numbered "17" of

plaintiffs' first amended complaint except admit that DB Donuts VI, Inc. is a New York

corporation and is the owner and operator of a Dunkin' Donuts shop located at 360 W. 31st

Street, Manhattan, NY, pursuant to a Franchise Agreement dated November 9, 2007 (the "W.

31st Street Franchise Agreement").

8.  Defendants deny each and every allegation contained in paragraph numbered "18" of

plaintiffs' first amended complaint except admit that Djenane Bartholomew is a natural person,

is a citizen and resident of the State of New Jersey, and is an officer and/or shareholder of each

of the corporate entities identified in paragraphs numbered 14 through 17 of plaintiffs' first

amended complaint, and refer to the referenced documents for the exact terms and conditions

therein.

<u>JURISDICTION AND VENUE</u>

9.  Defendants admit the allegations contained in paragraphs numbered "19", "20", and

"21" of plaintiffs' first amended complaint.

<u>BACKGROUND FACTS</u>

10.  Defendants admit the allegations contained in paragraphs numbered "22", "24",

"25", "32" and "33" of plaintiffs' first amended complaint.

11.  Defendants deny knowledge or information sufficient to form a belief as to the

allegations contained in paragraphs numbered "23", "26", "27", "28", "29", "30", "31", "34", "35",

"49", "51", "52", and "53" of plaintiffs' first amended complaint.

12.  Defendants deny each and every allegation contained in paragraphs numbered "36", "37", "38", "39", "40", "41", "42", "43", "44", "45", "46", "47", "48", "50", "54", "55", "56" and "57" of plaintiffs' first amended complaint and refer to the referenced documents for exact terms and conditions therein.

13.  Defendants deny each and every allegation contained in paragraphs numbered "58", "59", "60" and "66" of plaintiffs' first amended complaint and refer all questions of law to the court.

14.  Defendants deny each and every allegation contained in paragraphs numbered "61", "62", "63", "64", "65", "74" and "77" of plaintiffs' first amended complaint.

15.  Defendants deny each and every allegation contained in paragraphs numbered "67" and "68" of plaintiffs' first amended complaint and refer to the referenced documents for the exact terms and conditions therein.

16.  Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in paragraphs numbered "69", "70", "71", "72", "76" and "78" of plaintiffs' first amended complaint.

17.  Defendants deny each and every allegation contained in paragraph numbered "73" and "75" of plaintiffs' first amended complaint, refer to the referenced documents for the exact terms and conditions therein, and refer all questions of law to the court.

<u>COUNT I</u>

18.  Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "79" of plaintiffs' first amended complaint above as if more fully set forth herein at length.

19.  Defendants deny each and every allegation contained in paragraphs numbered "80", "81" and "82" of plaintiffs' first amended complaint as to these answering defendants.

4

<u>COUNT 2</u>

20.  Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "83" of plaintiffs' first amended complaint above as if more fully set forth herein at length.

21.  Defendant deny each and every allegation contained in paragraphs numbered "84", "85" and "86" of plaintiffs' first amended complaint.

<u>COUNT 3</u>

22.  Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "87" of plaintiffs' first amended complaint above as if more fully set forth herein at length.

23.  Defendants deny each and every allegation contained in paragraphs numbered "88", "89" and "90" of plaintiffs' first amended complaint as to these answering defendants.

24.  Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph numbered "91" of plaintiffs' first amended complaint.

25.  Defendants deny each and every allegation contained in paragraph numbered "92" of plaintiffs' first amended complaint.

<u>COUNT 4</u>

26.  Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "93" of plaintiffs' first amended complaint above as if more fully set forth herein at length.

27.  Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph numbered "94" of plaintiffs' first amended complaint, and refer to the referenced documents for exact terms and conditions therein.

28.  Defendants deny each and every allegation contained in paragraphs numbered

"95", "96", "97" and "98" of plaintiffs' first amended complaint as to these answering defendants.

<u>COUNT 5</u>

29.  Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "99" of plaintiffs' first amended complaint above as if more fully set forth herein at length.

30.  Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph numbered "100" of plaintiffs' first amended complaint.

31.  Defendants deny each and every allegation contained in paragraph numbered "101" of plaintiffs' first amended complaint as to these answering defendants.

<u>COUNT 6</u>

32.  Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "102" of plaintiffs' first amended complaint above as if more fully set forth herein at length.

33.  Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph numbered "103" of plaintiffs' first amended complaint.

34.  Defendants deny each and every allegation contained in paragraph numbered "104" of plaintiffs' first amended complaint as to these answering defendants.

<u>COUNT 7</u>

35.  Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "105" of plaintiffs' first amended complaint above as if more fully set forth herein at length.

36.  Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in paragraphs numbered "106" and "107" of plaintiffs' first amended complaint.

6

<u>COUNT 8</u>

37.  Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "108" of plaintiffs' first amended complaint above as if more fully set forth herein at length.

38.  Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph numbered "109" of plaintiffs' first amended complaint.

39.  Defendants deny each and every allegation contained in paragraph numbered "110" of plaintiffs' first amended complaint as to these answering defendants.

<u>COUNT 9</u>

40.  Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "111" of plaintiffs' first amended complaint above as if more fully set forth herein at length.

41.  Defendants deny each and every allegation contained in paragraphs numbered "112", "113" and "114" of plaintiffs' first amended complaint.

<u>COUNT 10</u>

42.  Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "115" of plaintiffs' first amended complaint above as if more fully set forth herein at length.

43.  Defendants deny each and every allegation contained in paragraphs numbered "116", "117" and "118" of plaintiffs' first amended complaint.

<u>COUNT 11</u>

44.  Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "119" of plaintiffs' first amended complaint above as if more fully set forth herein at length.

45. Defendants deny each and every allegation contained in paragraphs numbered "120", "121", "122" and "123" of plaintiffs' first amended complaint as to these answering defendants.

<u>COUNT 12</u>

46. Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "124" of plaintiffs' first amended complaint above as if more fully set forth herein at length.

47. Defendants deny each and every allegation contained in paragraphs numbered "125", "126", "127" and "128" of plaintiffs' first amended complaint.

<u>COUNT 13</u>

48. Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "129" of plaintiffs' first amended complaint above as if more fully set forth herein at length.

49. Defendants deny each and every allegation contained in paragraph numbered "130" and "131" of plaintiffs' first amended complaint as to these answering defendants.

<u>COUNT 14</u>

50. Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "132" of plaintiffs' first amended complaint above as if more fully set forth herein at length.

51. Defendants deny each and every allegation contained in paragraphs numbered "133", "134" and "135" of plaintiffs' first amended complaint as to these answering defendants.

<u>COUNT 15</u>

52. Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "136" of plaintiffs' first amended complaint above as if more fully set forth herein at

length.

53.  Defendants deny each and every allegation contained in paragraphs numbered "137", "138" and "139" of plaintiffs' first amended complaint.

<u>COUNT 16</u>

54.  Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "140" of plaintiffs' first amended complaint above as if more fully set forth herein at length.

55.  Defendants deny each and every allegation contained in paragraphs numbered "141", "142", "143" and "144" of plaintiffs' first amended complaint as to these answering defendants.

<u>COUNT 17</u>

56.  Defendants repeat, reiterate and reallege each and every response to paragraphs "1" through "145" of plaintiffs' first amended complaint above as if more fully set forth herein at length.

57.  Defendants deny each and every allegation contained in paragraphs numbered "147", "148" and "149" of plaintiffs' first amended complaint.

58.  Defendants deny each and every allegation contained in paragraph numbered "146" of plaintiff's first amended complaint and refer to the actual condition for the appearance therein.

<u>FIRST AFFIRMATIVE DEFENSE</u>

59.  Plaintiffs' first amended complaint, and all claims asserted therein, fails to state a claim upon which relief may be granted.

<u>SECOND AFFIRMATIVE DEFENSE</u>

60.  Plaintiffs' Notices of Termination and complaint are pretextual, issued in bad faith

and in violation of law, and are otherwise unenforceable and do not operate to terminate defendants' franchises.

### THIRD AFFIRMATIVE DEFENSE

61.  Plaintiffs' claims are barred by waiver and estoppel.

### FOURTH AFFIRMATIVE DEFENSE

62.  Plaintiffs' claims are barred as a result of their own fraudulent conduct.

### FIFTH AFFIRMATIVE DEFENSE

63.  Plaintiffs' claims for equitable relief are barred by their own unclean hands including, without limitation, their own pretextual breach of the franchise agreements and other acts of collusion, waiver and estoppel.

### SIXTH AFFIRMATIVE DEFENSE

64.  To the extent that plaintiffs suffered any harm, as alleged, that harm was caused by plaintiffs' own conduct and not the conduct of these defendants.

### SEVENTH AFFIRMATIVE DEFENSE

65.  Any alleged default was a curable default and plaintiffs failed to allow the defendants the opportunity to cure and interfered with same.

### EIGHTH AFFIRMATIVE DEFENSE

66.  Plaintiffs have violated State and Federal franchise laws and have otherwise lost/waived/compromised their ability to terminate the franchises.

### NINTH AFFIRMATIVE DEFENSE

67.  Plaintiffs have breached their contractual obligations contained in the franchise agreements and governing franchise law and such breach has caused defendants to sustain damages that exceed any claim that plaintiffs may have against defendants.

<u>TENTH AFFIRMATIVE DEFENSE</u>

68.  Plaintiffs are not entitled to injunctive relief for the reason that plaintiffs have committed acts which constitute unfair trade practices and unfair dealings with the intent to deprive defendants of its property without fair and just compensation, and have omitted to act in good faith in their dealings with defendants and the exercise of their franchise obligations to defendants under the franchise agreements.

<u>ELEVENTH AFFIRMATIVE DEFENSE</u>

69.  Plaintiffs' claims are barred in whole or in part because if defendants engaged in the conduct alleged (which is specifically denied), such conduct was fraudulently induced by the plaintiffs.

<u>AS AND FOR A FIRST COUNTERCLAIM</u>

<u>(Breach of Contract)</u>

70.  DB Donuts, Inc. is a New York corporation and is the owner and operator of a Dunkin' Donuts shop located at 132 Nassau Street, New York, New York, pursuant to a Franchise Agreement dated May 31, 2007 (the "Nassau Street Franchise Agreement").

71.  DB Donuts II, Inc. is a New York corporation and is the owner and operator of a Dunkin' Donuts shop located at 130 Church Street, New York, New York, pursuant to a Franchise Agreement dated May 31, 2007 (the "Church Street Franchise Agreement").

72.  DB Donuts IV, Inc. is a New York corporation and is the owner and operator of a Dunkin' Donuts shop located at 973 8th Avenue, New York, New York, pursuant to a Franchise Agreement dated October 23, 2007 (the "8th Avenue Franchise Agreement").

73.  DB Donuts VI, Inc. is a New York corporation and is the owner and operator of a Dunkin' Donuts shop located at 360 W. 31st Street, New York, New York, pursuant to a Franchise Agreement dated November 9, 2007 (the "W. 31st Street Shop").

74. Djenane Bartholomew is a natural person and is a citizen and resident of the State of New Jersey, and is an officer and/or shareholder of each of the corporate entities identified in paragraphs numbered "66" through "69" above.

75. Pursuant to the terms of the referenced Franchise Agreements, Dunkin' Donuts Franchised Restaurants, LLC/Dunkin' Donuts Franchising, LLC (hereafter referred to as "Dunkin') is required to possess actual proof that Franchisee has committed a felony, crime or offense prior to terminating the agreements without notice or opportunity to cure.

76. These answering defendants/counterclaimants have neither been convicted of nor pled guilty to any crime or offense.

77. Dunkin' clearly did not possess any actual proof that these answering defendants/counterclaimants have committed a felony, crime, or offense at the time the Notice of Termination was issued and this lawsuit was filed.

78. Given that these answering defendants/counterclaimants have not been convicted of or pled guilty to any crime or offense, and Dunkin' possessed no actual proof of wrongdoing at the time it issued the Termination Notice, even any alleged violation of law would be curable.

79. Dunkin's termination without proof that these answering  defendants/counterclaimants committed a crime, or failure to provide them with an opportunity to cure, was pretextual and in bad faith.   As such, Dunkin's actions constitute a breach of the Franchise Agreement.

80. As a direct and proximate result of Dunkin's breach of the Franchise Agreements, these answering defendants/counterclaimants suffered damages in an amount to be proven at trial.

WHEREFORE, it is respectfully demanded that judgment be entered against Dunkin' awarding defendants/counterclaimants:

a) An award of compensatory monetary damages equal to present and future losses in an amount to be proven at trial;

b) Enjoining the termination of defendants' franchises;

c) An award of reasonable attorneys' fees, interest and costs; and

d) Such other and further relief as this court deems just and proper.

AS AND FOR A SECOND COUNTERCLAIM

(Fraudulent Inducement and Misrepresentation)

81.  These answering defendants/counterclaimants repeat, reiterate, reallege and incorporate by reference all of the preceding paragraphs, as though fully set forth herein at length.

82.  Plaintiffs allege in their first amended complaint that defendants committed unauthorized acts in September of 2005, which acts plaintiffs allege occurred as part of a secured financial loan transaction with CIT Business Lending ("CIT").

83.  Plaintiffs have had a fifty year relationship with CIT and have entered into a strategic financing alliance whereby prospective and current franchise holders are steered by plaintiffs to secure financing with CIT.

84.  Plaintiff actually discloses in their UFOC advertising, lending rates of CIT and include sample loan documents and suggest that plaintiff guarantees loans extended by CIT. CIT is a significant lender of funds to plaintiffs' franchisees for development of plaintiffs' business.

85.  Via the strategic financing alliance, plaintiffs are able to exert pressure and partial control over CIT and CIT is able to exert pressure and partial control over plaintiffs.

86.  For example, if a borrower is unable to obtain timely franchise approval, CIT may and does provide financing and close lending transactions facilitated by plaintiffs' comfort letter

or verbal assurances, in the absence of timely franchise approval or executed franchise agreements.

87.  Plaintiffs, via their relationship with CIT, are able to facilitate or hinder a prospective or current franchisee's ability to secure financing.

88.  On April 3, 2007, defendants were provided a commitment letter by CIT representative Richard Talmon in the sum of $2,210,000.00 for defendants' purchase and refinance of franchises at 30 Rockefeller, Nassau Street and Church Street, New York, NY.

89.  On May 31, 2007, plaintiffs granted DB Donuts, Inc. the right to operate a franchise on Nassau Street, New York, NY,  which defendant purchased, constructed and operated, via a May 11, 2007 note for the sum of $545,000 funded by CIT.

90.  On May 31, 2007, plaintiffs granted DB Donuts II, Inc. the right to operate a franchise on Church Street, New York, NY, which defendant purchased, constructed and operated, via a May 11, 2007 note for the sum of $545,000 funded by CIT.

91.  On October 23, 2007, plaintiffs granted DB Donuts IV, Inc. the right to operate a franchise on Eighth Avenue, New York, NY, which defendant purchased, constructed and operated, via an October 30, 2007 note for the sum of $639,000.00 funded by CIT.

92.  On November 9, 2007, plaintiffs granted DB Donuts VI, Inc. the right to operate a franchise on 31st Street, New York, NY, which defendant purchased, constructed and operated, via a November 9, 2007 note for the sum of $460,000.00.

93.  On April 30, 2007, defendant Bartholomew Foods IV was provided a note for the sum of $1,117,252.99 for the franchise located at 30 Rockefeller Plaza, New York, NY.

94.  On January 9, 2008, defendant corporation DB Donuts V, Inc. was provided a note for the sum of $607,000.00 for defendant to purchase a franchise located at Guy Brewer Boulevard, Jamaica, NY, which plaintiffs insisted the defendant purchased in order to facilitate

14

the closing by Bartholomew Foods IV Corp. on the 30 Rockefeller Plaza franchise purchase from Urban City Dough Inc.

95.  On January 10, 2008, the date set to close, plaintiffs cancelled approval for the transfer of the franchise at 30 Rockefeller Plaza to Bartholomew Foods IV Corp.

96.  On or about January 15, 2008, plaintiffs caused CIT to default the January 9, 2008 note.

97.  Each and every loan provided by CIT and Talmon required cross-guarantees and cross-personal and corporate guarantors, wherein one default would cause the cross-default of all notes held by CIT.

98.  Each franchise agreement provided by plaintiffs contained cross-default provisions whereby defendant could be defaulted on all franchise agreements if one franchise agreement was terminated by plaintiff.

99.  Via the cross-guarantees of loans by CIT and the cross-default provisions in plaintiffs' franchise agreements, plaintiffs have created a scheme whereby a franchisee such as defendant could be stripped of all CIT loans and all franchises and forfeit all leasehold interests and other assets and costs incurred in store acquisition, development, construction and operation based upon a single unproven allegation, without being provided any cure.

100.  Upon information and belief, each and every allegation set forth by plaintiffs in their first amended complaint, paragraphs 58 to 65, which allegations are specifically denied by these answering defendant, were known by plaintiffs in or about September 2005 or at the very least, prior to the plaintiffs granting defendants franchises and prior to the funding of the transactions by CIT.

101.  Upon information and belief, each and every allegation set forth by plaintiffs in their first amended complaint, paragraphs 58 to 65, which allegations are specifically denied by

15

these answering defendants, were known by plaintiffs prior to plaintiffs authorizing defendants' purchase of the 30 Rockefeller Plaza franchise and prior to funding of same by CIT.

102.  Upon information and belief, each and every allegation set forth by plaintiffs in their first amended complaint, paragraphs 58 to 65, which allegations are specifically denied by these answering defendants, were known by plaintiffs prior to their granting defendants a store development agreement on June 15, 2007.

103.  Plaintiffs lured and induced defendants into signing the franchise agreements and financing the acquisition, construction and operation of the franchises knowing full well, pretextually, that plaintiffs intended on terminating the franchises, executing its cross-default provisions, triggering the CIT loan default and cross-default provisions, and otherwise causing defendants to incur severe economic hardship and damages, based upon its prior knowledge of the allegations set forth in plaintiffs' first amended complaint, paragraphs 58 to 65, which allegations are specifically denied by these answering defendants.

104.  Defendants were falsely led to believe they were embarking on a long term economic relationship operating in good faith.

105.  Defendants justifiably relied upon the plaintiffs' material misrepresentations and material omissions in execution of the franchise agreements and financing the acquisition, construction and operation of the franchises, all to their detriment.

106.  Plaintiffs' termination scheme was pretextual and designed to cause financial gain to plaintiffs and financial harm and oppression to defendants.

107.  The above referenced scheme would enable CIT a method to obtain commissions and other fees and charges, and enable plaintiffs to obtain acquisition fees, royalties and have stores constructed at franchisee's expense and liability, and enable plaintiff to recoup windfalls in reselling and refranchising terminated franchises.

108.  Plaintiffs' pretextual termination scheme contained misrepresentations of material fact and contained material omissions of fact, all of which were false when made and known to be false by plaintiffs when made, and made for the purpose of inducing the defendants to justifiably rely upon such material misrepresentations and omissions to cause plaintiff financial gain and to cause defendants financial loss and harm.

109.  Plaintiffs promised and warranted to defendants via their course of conduct, the franchise agreements, the uniform franchise offering circular, and all documents provided to defendants, that defendants would be afforded the opportunity to successfully operate the subject franchises, in good faith, such promises and warranties being knowingly false when made, with the sole purpose of inducing justifiable reliance by the defendants and resulting damage.  The plaintiffs' conduct constitutes fraudulent inducement and misrepresentation.

110.  Had defendant been made aware of the plaintiffs' pretextual scheme, they would not have entered into the franchise agreements, executed the primary notes and/or expended substantial sums.

111.  Plaintiffs' pretextual scheme was designed to strip the defendants of the franchise and lease contained at the 30 Rockefeller Plaza location, as said location had been "promised" to a new Dunkin' Donuts investor.

112.  As a direct and proximate result of plaintiffs' conduct, these answering defendants/counterclaimants have suffered damages in an amount to be proven at trial.

WHEREFORE, it is respectfully demanded that judgment be entered against plaintiffs awarding defendants/counterclaimants:

a)  An award of compensatory monetary damages equal to present and future losses in an amount to be proven at trial;

b)  An award of reasonable attorneys' fees, interest and costs;

17

c) Punitive damages; and

d) Such other and further relief as this court deems just and proper.

<u>AS AND FOR A THIRD COUNTERCLAIM</u>

<u>(Violation of the Implied Covenant of Good Faith and Fair Dealing)</u>

113.  These answering defendants/counterclaimants repeat, reiterate, reallege and incorporate by reference all of the preceding paragraphs, as though fully set forth herein at length.

114.  It is well settled law in New York that implied in every contract is the covenant of good faith and fair dealing.

115.  Plaintiffs have attempted to terminate these answering defendants/ counterclaimants' Franchise Agreements and, in effect, deprive them of their business and livelihood which they have successfully operated.

116.  Pursuant to the terms of the Franchise Agreements, plaintiffs are required to possess actual proof that Franchisee has committed a felony, crime or offense prior to terminating the agreements without notice or opportunity to cure.

117.  In the instant matter, these answering defendants/counterclaimants have neither been convicted of nor pled guilty to any crime or offense.

118.  Plaintiffs certainly did not possess any actual proof that the answering defendants/counterclaimants have committed a felony, crime or offense at the time the notice of termination was issued and this lawsuit was filed.

119.  Given that these answering defendants/counterclaimants have not been convicted of or pled guilty to any crime or offense, and Dunkin' possessed no proof of wrongdoing at the time it issued its Termination Notice, even any alleged violation of law would be a curable one.

120.  Plaintiffs' termination and failure to provide an opportunity to cure, was pretextual,

in bad faith and carried out as part of its broader scheme to disenfranchise the answering

defendants/counterclaimants from their franchised stores in order to realize the financial

windfall associated with refranchising.  These actions constitute a breach of the covenant of

good faith and fair dealing.

121.  As a direct and proximate result of plaintiffs' conduct, these answering defendants/

counterclaimants have suffered damages in an amount to be proven at trial.

WHEREFORE, it is respectfully demanded that judgment be entered against plaintiffs

awarding defendants/counterclaimants:

a) An award of compensatory monetary damages equal to present and future losses in

an amount to be proven at trial;

b) An award of reasonable attorneys' fees, interest and costs; and

c) Such other and further relief as this court deems just and proper.

<u>AS AND FOR A FOURTH COUNTERCLAIM</u>

<u>(Violation of NY General Business Law §349)</u>

122.  These answering defendants/counterclaimants repeat, reiterate, reallege and

incorporate by reference all of the preceding paragraphs, as though fully set forth herein at

length.

123.  Plaintiffs knowingly engaged in deceptive business practices in violation of New

York General Business Law §349.

124.  Plaintiffs' perpetration of the pretextual and malicious scheme, which is the subject

of these counterclaims, is a recurring practice, which is targeted at and has broad impact on

consumers, including franchisees within the Dunkin' system.  As such, Dunkin's scheme

constitutes the type of deceptive act and practice contemplated by New York General Business

Law §349.

19

125. Dunkin's wrongful termination of the franchisees in this matter are predicated on artificial and/or waived and/or self created violations which were products of the subject Dunkin scheme, and as such, constitute the deceptive acts and practices contemplated by New York General Business Law §349.

126. Dunkin's wrongful termination of the franchisees in this matter has resulted in actual harm and damages in an amount to be determined at trial.

WHEREFORE, it is respectfully demanded that judgment be entered against Dunkin' awarding defendants/counterclaimants:

a) An award of compensatory monetary damages equal to present and future losses in an amount to be proven at trial;

b) Treble damages;

c) Enjoining the unlawful termination of these answering defendants/counterclaimants;

d) An award of reasonable attorneys' fees, interest and costs; and

e) Such other and further relief as this court deems just and proper.

<u>AS AND FOR A FIFTH COUNTERCLAIM</u>

<u>(Tortuous Interference with Contract)</u>

127. These answering defendants/counterclaimants repeat, reiterate, reallege and incorporate by reference all of the preceding paragraphs, as though fully set forth herein at length.

128. As a result of plaintiffs' Notice of Termination and complaint, plaintiffs have self impaired the very collateral securing the plaintiffs' purchase of the subject franchises herein.

129. As a result of plaintiffs' Notice of Termination and complaint and self impairment of collateral, defendants' lender, CIT Small Business Lending Corporation ("CIT") has declared defendant Bartholomew and her related corporations in default under CIT's notes, security

20

agreement and guarantees, and has demanded repayment.

130.  Plaintiffs' actions constitute tortuous interference with contract wherein plaintiffs were fully aware of defendants' lending agreements, knew of the relationship between defendants and CIT, knew that the relationship between defendants and CIT was premised upon the unimpaired collateral via the security agreements, intentionally and improperly interfered and caused termination of the relationship and expectancy, and intended to induce CIT to declare defendants in breach and default, lacking good faith and caused defendants harm.

131.  As a direct and proximate result of plaintiffs' conduct, these answering defendants/ counterclaimants have suffered damages in an amount to be proven at trial.

WHEREFORE, it is respectfully demanded that judgment be entered against Dunkin' awarding defendants/counterclaimants:

a) An award of compensatory monetary damages equal to present and future losses in an amount to be proven at trial;

b) Enjoining the unlawful termination of these answering defendants/counterclaimants;

c)  Punitive damages;

d)  An award of reasonable attorneys' fees, interest and costs; and

e) Such other and further relief as this court deems just and proper.

AS AND FOR A SIXTH COUNTERCLAIM

(Declaratory Judgment: Cross Default Provision)

132.  These answering defendants/counterclaimants repeat, reiterate, reallege and incorporate by reference all of the preceding paragraphs, as though fully set forth herein at length.

133.  Pursuant to the purported terms of the Franchise Agreements, franchisees are in

21

default of the agreement if any other franchise agreement between the franchisee and Dunkin' or any affiliated entity is terminated by reason of the franchisee's default.

134.  Dunkin' has failed to inform the answering defendants/counterclaimants about not only the severity of the alleged breach, but also the nature of the alleged breach.  Nevertheless, Dunkin', pursuant to the cross-default provision, seeks to terminate all of the Franchise Agreements, which agreements were executed two years after the alleged terminating event.

135.  Termination of all the Franchise Agreements based on an alleged violation  in 2005, prior to defendants' award of any franchise, is grossly disproportionate to a reasonable estimate of damages incurred and thus is an unenforceable penalty.

136.  Where a liquidated damages clause establishes the same damages for breach of any provision within the contract, regardless of the severity of the breach, or difficulty of the calculation, it will be struck down as a penalty even for those breaches for which it would not be disproportionate.

137.  The answering defendants/counterclaimants seek here and are entitled to a judgment declaring that termination of all franchise agreements based on any alleged violation at one franchise unit constitutes an unenforceable liquidated damages provision.

138.  The answering defendants/counterclaimants seek here and are entitled to injunctive relief enjoining Dunkin' from terminating all of the answering defendants/counterclaimants' franchises for an alleged violation at one franchise unit.


## AS AND FOR A SEVENTH COUNTERCLAIM

### (Violation of Massachusetts General Laws Title 15 ch. 93A § 2 and § 11)

139.  These answering defendants/counterclaimants repeat, reiterate, reallege and

incorporate by reference all of the preceding paragraphs, as though fully set forth herein at length.

140.  Dunkin' has engaged in a pretextual and malicious scheme to disenfranchise the franchises from their franchised stores in order to realize the financial windfall associated with refranchising the repossessed stores.

141.  Dunkin' sought to execute the scheme by attempting to terminate the answering defendants/counterclaimants' franchise agreements based on vague and unsupported alleged breaches of the agreements based on conduct that allegedly occurred in 2005.

142.  Dunkin' has violated and continues to violate M.G.L. ch. 93A, § 2 and § 11 by engaging in unfair and deceptive acts and practices.

143.  As a result of Dunkin's continuing violations of M.G.L. ch 93A, § 2 and § 11, the defendants/counterclaimants have suffered and continue to suffer substantial damages.

WHEREFORE, it is respectfully demanded that judgment be entered against Dunkin' awarding defendants/counterclaimants:

a) Enjoining and restraining Dunkin' from terminating any of the counterclaimants' franchises;

b) For actual compensatory damages, including reasonable attorneys' fees, costs, disbursements and interest;

c)  Treble damages; and

d) For such other and further relief as this court deems just and proper.


AS AND FOR AN EIGHTH COUNTERCLAIM

(Fraudulent Inducement and Misrepresentation)

144.  These answering defendants/counterclaimants repeat, reiterate, reallege and

23

incorporate by reference all of the preceding paragraphs, as though fully set forth herein at length.

145.  Plaintiffs allege in their first amended complaint that defendants committed unauthorized acts in September of 2005, which acts plaintiffs allege occurred as part of a secured financial loan transaction with CIT Business Lending ("CIT").

146.  Plaintiffs have had a fifty year relationship with CIT and have entered into a strategic financing alliance whereby prospective and current franchise holders are steered by plaintiffs to secure financing with CIT.

147.  Plaintiff actually discloses in their UFOC advertising, lending rates of CIT include sample loan documents and suggest that plaintiff guarantees loans extended by CIT.  CIT is a significant lender of funds to plaintiffs' franchisees for development of plaintiffs' business.

148.  Via the strategic financing alliance, plaintiffs are able to exert pressure and partial control over CIT and CIT is able to exert pressure and partial control over plaintiffs.

149.  For example, if a borrower is unable to obtain timely franchise approval, CIT may and does provide financing and close lending transactions facilitated by plaintiffs' comfort letter or verbal assurances, in the absence of timely franchise approval or executed franchise agreement and has done so in connection with DB Donuts V, located at 50 Guy R. Brewer Boulevard, where plaintiff provided a comfort letter signed by Craig Mackenzie on December 22, 2007 to induce CIT to loan funds to the defendants.  Such was done in bad faith and with knowledge by plaintiffs that plaintiffs would soon be terminating defendants.

150.  Plaintiffs, via their relationship with CIT, are able to facilitate or hinder a prospective or current franchisee's ability to secure financing.

151.  On April 3, 2007, defendants were provided a commitment letter by CIT representative Richard Talmon in the sum of $2,210,000.00 for defendants' purchase and

24

refine of franchises at 30 Rockefeller, Nassau Street and Church Street, New York, NY.

152. On May 31, 2007, plaintiffs granted DB Donuts, Inc. the right to operate a franchise on Nassau Street, New York, NY, which defendant purchased, constructed and operated, via a May 11, 2007 note for the sum of $545,000 funded by CIT.

153. On May 31, 2007, plaintiffs granted DB Donuts II, Inc. the right to operate a franchise on Church Street, New York, NY, which defendant purchased, constructed and operated, via a May 11, 2007 note for the sum of $545,000 funded by CIT.

154. On October 23, 2007, plaintiffs granted DB Donuts IV, Inc. the right to operate a franchise on Eighth Avenue, New York, NY, which defendant purchased, constructed and operated, via an October 30, 2007 note for the sum of $639,000.00 funded by CIT.

155. On November 9, 2007, plaintiffs granted DB Donuts VI, Inc. the right to operate a franchise on 31st Street, New York, NY, which defendant purchased, constructed and operated, via a November 9, 2007 note for the sum of $460,000.00.

156. On April 30, 2007, defendant Bartholomew Foods IV was provided a note for the sum of $1,117,252.99 for the franchise located at 30 Rockefeller Plaza, New York, NY.

157. On January 9, 2008, defendant corporation DB Donuts V, Inc. was provided a note for the sum of $607,000.00 for defendant to purchase a franchise located at Guy Brewer Boulevard, Jamaica, NY, which plaintiffs insisted the defendant purchased in order to facilitate the closing by Bartholomew Foods IV Corp. on the 30 Rockefeller Plaza franchise purchase from Urban City Dough Inc.

158. On January 10, 2008, the date set to close, plaintiffs cancelled approval for the transfer of the franchise at 30 Rockefeller Plaza to Bartholomew Foods IV Corp.

159. On or about January 15, 2008, plaintiffs directed CIT to default the January 9, 2008 note.

160. Each and every loan provided by CIT and Talmon required cross-guarantees and cross-personal and corporate guarantors, wherein one default would cause the cross-default of all notes held by CIT.

161. Each franchise agreement provided by plaintiffs contained cross-default provisions whereby defendant could be defaulted on all franchise agreements if one franchise agreement was terminated by plaintiff.

162. Via the cross-guarantees of loans by CIT and the cross-default provisions in plaintiffs' franchise agreements, plaintiffs have created a scheme whereby a franchisee such as defendant could be stripped of all CIT loans and all franchises and forfeit all leasehold interests and other assets and costs incurred in store acquisition, development, construction and operation based upon a single unproven allegation, without being provided any cure.

163. Upon information and belief, each and every allegation set forth by plaintiffs in their first amended complaint, paragraphs 58 to 65, which allegations are specifically denied by these answering defendant, were known by plaintiffs in or about September 2005 or at the very least, prior to the plaintiffs granting defendants franchises and prior to the funding of the transactions by CIT.

164. Upon information and belief, each and every allegation set forth by plaintiffs in their first amended complaint, paragraphs 58 to 65, which allegations are specifically denied by these answering defendants, were known by plaintiffs prior to plaintiffs authorizing defendants' purchase of the 30 Rockefeller Plaza franchise and prior to funding of same by CIT.

165. Upon information and belief, each and every allegation set forth by plaintiffs in their first amended complaint, paragraphs 58 to 65, which allegations are specifically denied by these answering defendants, were known by plaintiffs prior to the plaintiffs' sale of corporately developed shop located at 360 West 31st Street, Manhattan, NY, on November 9, 2007 to allow

plaintiffs to be reimbursed by defendants for all costs and expenses incurred by plaintiffs in developing that shop.

166.  Defendants were induced by plaintiffs to purchase that shop with a verbal agreement by plaintiffs' representative that it would not exercise its right of first refusal on the purchase and sale agreement for the 30 Rockefeller Plaza shop with knowledge that plaintiffs had predetermined to terminate the defendants.

167.  Plaintiffs lured and induced defendants into signing the franchise agreements and financing the acquisition, construction and operation of the franchises knowing full well, pretextually, that plaintiffs intended on terminating the franchises, executing its cross-default provisions, triggering the CIT loan default and cross-default provisions, and otherwise causing defendants to incur severe economic hardship and damages, based upon its prior knowledge of the allegations set forth in plaintiffs' first amended complaint, paragraphs 58 to 65, which allegations are specifically denied by these answering defendants.

168.  Defendants were falsely led to believe they were embarking on a long term economic relationship operating in good faith.

169.  Defendants justifiably relied upon the plaintiffs' material misrepresentations and material omissions in execution of the franchise agreements and financing the acquisition, construction and operation of the franchises, all to their detriment.

170.  Plaintiffs' termination scheme was pretextual and designed to cause financial gain to plaintiffs and financial harm and oppression to defendants.

171.  The above referenced scheme would enable CIT a method to obtain commissions and other fees and charges, and enable plaintiffs to obtain acquisition fees, royalties and have stores constructed at franchisee's expense and liability, and enable plaintiff to recoup windfalls in reselling and refranchising terminated franchises.

172.  Plaintiffs' pretextual termination scheme contained misrepresentations of material fact and contained material omissions of fact, all of which were false when made and known to be false by plaintiffs when made, and made for the purpose of inducing the defendants to justifiably rely upon such material misrepresentations and omissions to cause plaintiff financial gain and to cause defendants financial loss and harm.

173.  Plaintiffs promised and warranted to defendants via their course of conduct, the franchise agreements, the uniform franchise offering circular, and all documents provided to defendants, that defendants would be afforded the opportunity to successfully operate the subject franchises, in good faith, such promises and warranties being knowingly false when made, with the sole purpose of inducing justifiable reliance by the defendants and resulting damage.  The plaintiffs' conduct constitutes fraudulent inducement and misrepresentation.

174.  Had defendant been made aware of the plaintiffs' pretextual scheme, they would not have entered into the franchise agreements, executed the primary notes and/or expended substantial sums.

175.  Plaintiffs' pretextual scheme was designed to strip the defendants of the franchise and lease contained at the 30 Rockefeller Plaza location, as said location had been "promised" to a new Dunkin' Donuts investor.

176.  As a direct and proximate result of plaintiffs' conduct, these answering defendants/counterclaimants have suffered damages in an amount to be proven at trial.

WHEREFORE, it is respectfully demanded that judgment be entered against plaintiffs awarding defendants/counterclaimants:

a)  An award of compensatory monetary damages equal to present and future losses in an amount to be proven at trial;

b)  An award of reasonable attorneys' fees, interest and costs;

28

c)  Punitive damages; and

d)  Such other and further relief as this court deems just and proper.

<u>AS AND FOR A NINTH COUNTERCLAIM</u>

_____    (Breach of Fiduciary Duty)

177.  These answering defendants/counterclaimants repeat, reiterate, reallege and incorporate by reference all of the preceding paragraphs, as though fully set forth herein at length.

178.  Plaintiffs assumed and owe defendants a fiduciary duty via their Franchise Agreement and Uniform Franchise Offering circular.

179.  Plaintiffs' perpetration of the pretextual and malicious scheme, which is the subject of these counterclaims, is a recurring practice, which is targeted at and has broad impact on consumers, including franchisees within the Dunkin' system.  As such, Dunkin's scheme constitutes deceptive acts and practices and is a breach of their fiduciary duty owed to defendants.

180.  Dunkin's wrongful termination of the franchisees in this matter are predicated on artificial and/or waived and/or self created violations which were products of the subject Dunkin scheme, further constitute breach of fiduciary duty.

181.  Dunkin's wrongful termination of the franchisees in this matter has resulted in actual harm and damages in an amount to be determined at trial.

WHEREFORE, it is respectfully demanded that judgment be entered against Dunkin' awarding defendants/counterclaimants:

a) An award of compensatory monetary damages equal to present and future losses in an amount to be proven at trial;

b) Enjoining the unlawful termination of these answering defendants/counterclaimants;

c) An award of reasonable attorneys' fees, interest and costs; and

d) Such other and further relief as this court deems just and proper.

AS AND FOR A TENTH COUNTERCLAIM

(Violation of Civil Rights)

182.  These answering defendants/counterclaimants repeat, reiterate, reallege and incorporate by reference all of the preceding paragraphs, as though fully set forth herein at length.

183.  Defendant/counterclaimant Djenane Bartholomew is an African-American female.

184.  Upon information and belief, Dunkin' has engaged in a predatory and discriminatory scheme to disenfranchise certain of its franchisees and, more specifically, defendant herein.

185.  Dunkin engages in this discriminatory conduct with the intent of usurping the equity, goodwill and significant financial value of the franchises through the course of conduct and a pretextual scheme previously set forth.

186.  Upon information and belief, plaintiffs, via their agents and employees, have set forth and stated that they did not want defendants to be the owner and franchisee of the 30 Rockefeller Plaza store because she is a black female.

187.  Upon information and belief, plaintiffs, via their agents and employees, have set forth that they wish to utilize the 30 Rockefeller Plaza location as a "flagship" store to assist in the exposure, image and financial success of the Dunkin' brand and to further facilitate the upcoming Initial Public Offering, something which the plaintiffs believe would be hindered by the defendant based upon her being a black female.

188.  Upon information and belief, plaintiffs' conduct is for discriminatory purposes.  As a result, plaintiffs orchestrated a scheme to default the defendants herein and resell the 30

Rockefeller Plaza store to another investor and to remove the black females, Djenane Bartholomew and co-defendant Nancy Davis.

189.  Upon information and belief, Dunkin' used fraudulent inducement to manufacture claims against the franchisee to effectuate its scheme of usurping the franchise investment. Dunkin' used these manufactured claims to place the franchisee in default, with the intent of terminating the franchisee under false pretenses.

190.  Upon information and belief, Dunkin' specifically engaged in this type of conduct with defendants/counterclaimants and has caused damage to defendants/counterclaimants financially and in her community.

191.  Sections 1981 and 1982 of the Civil Rights Act (42 U.S.C.) specifically protect against discrimination based upon race and sex.

192.  Upon information and belief, the fraudulent inducement scheme and franchise termination as set forth are based on  the defendant's race, ethnicity and/or sex, and constitutes illegal race and sex discrimination in violation of Title VII, the Equal Protection Clause, and 42 U.S.C. §§ 1981, 1982, 1983 and 1985(3).

193.  Upon information and belief, Dunkin's intentionally discriminatory actions violate §§ 1981, 1982, 1983 and 1985(3) of the Civil Rights Act (42 U.S.C.).

194.  Upon information and belief, defendants have been deprived of their right to contract without racial discrimination in violation of 42 U.S.C. §§ 1981, 1982 and 1983, and constitutes a conspiracy to deprive defendants of their civil rights under 42 U.S.C. § 1985(3).

195.  Upon information and belief, Dunkin' has discriminated against defendants and other African-American females such as this answering defendant/counterclaimant on the basis of race and sex.

196.  The defendant/counterclaimant is part of § 1981 protected class based on her

race and sex.

197.  Specifically, Dunkin's discriminatory and illegal conduct is violative of §§ 1981, 1982 and 1983 because defendant is being denied her contractual rights and has been the victim of fraudulent inducement because of defendant Bartholomew's status as an African-American female.

198.  Upon information and belief, the plaintiffs have terminated and continue to seek termination of the franchises of minority franchisees, citing unproven and plaintiff-created violations and then rely on cross-default provisions of the franchise agreements and their relationship with CIT to terminate all of a minority's franchise agreement and then resell the units to preferred non-minority franchisees.

WHEREFORE, it is respectfully demanded that judgment be entered against Dunkin' awarding defendants/counterclaimants:

a) An award of compensatory monetary damages equal to present and future losses in an amount to be proven at trial;

b)  Punitive damages;

c) Enjoining the unlawful termination of these answering defendants/counterclaimants;

d) An award of reasonable attorneys' fees, interest and costs; and

e) Such other and further relief as this court deems just and proper.

KUSHNICK & ASSOCIATES, P.C.

By:  _____/S/ Lawrence A. Kushnick_____
     Lawrence A. Kushnick, Esq. [LAK 2146]
     Attorneys for Defendants/Counterclaimants
     *DB Donuts, Inc., DB Donuts II, Inc., DB
     Donuts IV, Inc., DB Donuts VI, Inc. and
     Djenane Bartholomew*
     445 Broadhollow Road, Suite 124
     Melville, NY 11747
     (631) 752-7100

Dated: February  25, 2008

32

<u>JURY DEMAND</u>

Defendants/counterclaimants hereby demand a trial by jury, both as to the

Complaint and Counterclaim, as to any and all issues herein to which they may be

entitled to a trial by jury.

Dated: February 25, 2008

KUSHNICK & ASSOCIATES, P.C.

By: __/S/ _Lawrence A. Kushnick_____
Lawrence A. Kushnick, Esq. [LAK 2146]
Attorneys for Defendants/Counterclaimants
*DB Donuts, Inc., DB Donuts II, Inc., DB
Donuts IV, Inc., DB Donuts VI, Inc. and
Djenane Bartholomew*
445 Broadhollow Road, Suite 124
Melville, NY 11747
(631) 752-7100

<u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing Answer and Counterclaim and Jury Demand were filed electronically with the Clerk of the Court using the CM/ECF system on the 26th day of February, 2008, and that courtesy copies were sent via First Class U.S. Mail, to the below listed attorneys, in accordance with the requirements of the Federal Rules of Civil Procedure:

RONALD D. DEGEN, ESQ. / SCOTT GOLDFINGER, ESQ.
O'ROURKE & DEGEN, PLLC
**Attorneys for Plaintiffs**
225 Broadway, Suite 715
New York, NY 10007

ROBERT L. ZISK, ESQ. / DAVID E. WORTHEN, ESQ. / IRIS F. ROSARIO, ESQ.
GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.
**Attorneys for Plaintiffs**
2600 Virginia Avenue, N.W., Suite 1111
Washington, DC 20037

ROBERT B. DAVIS, ESQ.
**Attorney for co-defendants**
 Inner City Dough, Inc., South Bronx City
 Dough, Inc., Triple J3 Donuts, Inc., Urban
 City Dough, Inc. and Nancy Davis
450 Seventh Avenue, Suite 1304
New York, NY 10123

Dated: February 26, 2008

KUSHNICK & ASSOCIATES, P.C.

By:      /S/ *Lawrence A. Kushnick*
          Lawrence A. Kushnick, Esq. [LAK 2146]
          Attorneys for Defendants/Counterclaimants
           *DB Donuts, Inc., DB Donuts II, Inc., DB*
           *Donuts IV, Inc., DB Donuts VI, Inc. and*
           *Djenane Bartholomew*
          445 Broadhollow Road, Suite 124
          Melville, NY 11747
          (631) 752-7100

34

## VERIFICATION

STATE OF  New York_____}

ss.:

COUNTY OF  New York_____}

I, the undersigned, being duly sworn, depose and state:

I am the  President___  of DB DONUTS, INC., a New York corporation, a party to the within action; I have read the foregoing Answer and know the contents thereof; the same is true to my own knowledge, except as to those allegations therein stated to be upon information and belief, and as to those matters, I believe them to be true.  This verification is made by me because the above party is a corporation and I am an officer thereof.

The grounds of deponent's belief as to all matters not stated upon deponent's own knowledge are as follows: The business records pertaining to the matter herein maintained in your deponent's files in his/her office, which it is your deponent's business to maintain and which were made contemporaneously with the occurrences set forth in the business records.

DB DONUTS, INC.

By: ___/s/ Djenane Bartholomew___

Title: Pres.

Sworn to before me

this _25___ day of _February___, 2008.

_____/s/_____

Notary Public

35

<u>VERIFICATION</u>

STATE OF <u>New York</u>            }
                         ss.:
COUNTY OF <u>New York</u>          }

      I, the undersigned, being duly sworn, depose and state:

      I am the <u>President</u>  of  <u>DB DONUTS II, INC.</u>, a New York corporation, a party to the within action; I have read the foregoing Answer and know the contents thereof; the same is true to my own knowledge, except as to those allegations therein stated to be upon information and belief, and as to those matters, I believe them to be true.  This verification is made by me because the above party is a corporation and I am an officer thereof.

      The grounds of deponent's belief as to all matters not stated upon deponent's own knowledge are as follows: The business records pertaining to the matter herein maintained in your deponent's files in his/her office, which it is your deponent's business to maintain and which were made contemporaneously with the occurrences set forth in the business records.

                     DB DONUTS II, INC.

                     By:       <u>/s/ Djenane Bartholomew</u>

                               Title:<u> Pres.</u>

Sworn to before me

this  <u>25</u>   day of  <u>February</u>  , 2008.


<u>     /s/                    </u>
        Notary Public

<u>VERIFICATION</u>

STATE OF  <u>New York         </u>  }

                      ss.:

COUNTY OF  <u>New York     </u>  }

      I, the undersigned, being duly sworn, depose and state:

      I am the  <u>President   </u>  of <u>DB DONUTS IV, INC.</u>, a New York corporation, a party to the within action; I have read the foregoing Answer and know the contents thereof; the same is true to my own knowledge, except as to those allegations therein stated to be upon information and belief, and as to those matters, I believe them to be true.  This verification is made by me because the above party is a corporation and I am an officer thereof.

      The grounds of deponent's belief as to all matters not stated upon deponent's own knowledge are as follows: The business records pertaining to the matter herein maintained in your deponent's files in his/her office, which it is your deponent's business to maintain and which were made contemporaneously with the occurrences set forth in the business records.

                      DB DONUTS IV, INC.

                      By:      <u>/s/ Djenane Bartholomew  </u>

                                Title:<u> Pres.</u>

Sworn to before me

this  <u> 25  </u>  day of  <u> February   </u>, 2008.

<u>       /s/               </u>

       Notary Public

<u>VERIFICATION</u>

STATE OF <u>New York</u>          }

                     ss.:

COUNTY OF <u>New York</u>          }

I, the undersigned, being duly sworn, depose and state:

I am the <u>President</u> of <u>DB DONUTS VI, INC.</u>, a New York corporation, a party to the within action; I have read the foregoing Answer and know the contents thereof; the same is true to my own knowledge, except as to those allegations therein stated to be upon information and belief, and as to those matters, I believe them to be true. This verification is made by me because the above party is a corporation and I am an officer thereof.

The grounds of deponent's belief as to all matters not stated upon deponent's own knowledge are as follows: The business records pertaining to the matter herein maintained in your deponent's files in his/her office, which it is your deponent's business to maintain and which were made contemporaneously with the occurrences set forth in the business records.

                                  DB DONUTS VI, INC.

                                  By:     <u>/s/ Djenane Bartholomew</u>

                                             Title:<u> Pres.</u>

Sworn to before me

this <u> 25 </u> day of <u> February </u>, 2008.

<u>       /s/               </u>
       Notary Public

## **VERIFICATION**

STATE OF  New York_____}

                        ss.:

COUNTY OF New York_____}

      Djenane Bartholomew, being duly sworn, deposes and says: I am one of the

defendants in the within action; I have read the foregoing Answer and know the

contents thereof; the same is true to my own knowledge, except as to those matters

therein stated to be alleged on information and belief, and as to those matters I believe

it to be true.

                                 ___/s/ Djenane Bartholomew_____
                                    Djenane Bartholomew

Sworn to before me

this __  day of  _____  , 2008.

_____/s/_____
           Notary Public