UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
DUNKIN' DONUTS FRANCHISED RESTAURANTS
LLC, a Delaware Limited Liability Company,
DUNKIN' DONUTS FRANCHISING LLC,
a Delaware Limited Liability Company,
DD IP Holder LLC,
a Delaware Limited Liability Company,
BASKIN-ROBBINS FRANCHISED SHOPS LLC,        Case No. 08-CV-00217 (RWS)
a Delaware Limited Liability Company,
BASKIN-ROBBINS FRANCHISING LLC,
a Delaware Limited Liability Company,
BR IP Holder LLC,
a Delaware Limited Liability Company, and
DB REAL ESTATES ASSETS I LLC,
a Delaware Limited Liability Company,

                Plaintiffs,

     v.

INNER CITY DOUGH, INC.,
a New York Corporation,
SOUTH BRONX INNER CITY DOUGH INC.,
a New York corporation,
TRIPLE J 3 DONUTS, INC.,
a New York corporation,
URBAN CITY DOUGH, INC.,
a New York corporation,
NANCY DAVIS,
a resident of New Jersey,
DB DONUTS, INC.,
a New York corporation,
DB DONUTS II, INC.,
a New York corporation,
DB DONUTS IV, INC.,
a New York corporation,
DB DONUTS VI, INC.,
a New York corporation, and
DJENANE BARTHOLOMEW,
a resident of New Jersey.

              Defendants.

-------------------------------------------------------------------x

**MEMORANDUM OF LAW SUBMITTED ON BEHALF OF DB DONUTS, INC., DB
DONUTS II, INC., DB DONUTS IV, INC., DB DONUTS VI, INC. AND DJENANE
BARTHOLOMEW IN OPPOSITION TO THE PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................... 2

STANDARD OF LAW ON MOTION FOR PRELIMINARY
INJUNCTION ................................................................................................ 3

POINT I.

      THE ACTUAL HARM THAT WOULD BE SUFFERED BY THE
      BARTHOLOMEW ENTITIES DRASTICALLY OUTWEIGHS
      THE POTENTIAL BENEFIT THAT THE PLAINTIFFS MAY
      GAIN FROM A GRANTING OF THEIR MOTION FOR A
      PRELIMINARY INJUNCTION ......................................................... 5

POINT II.

      THE PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT
      THEY WILL SUFFER IRREPARABLE HARM IF THEIR
      MOTION IS NOT GRANTED ............................................................ 7

POINT III.

      THE PLAINTIFFS' WILL NOT LOSE CONTROL OVER THEIR
      TRADEMARKS IN THE ABSENCE OF A PRELIMINARY
      INJUNCTION ..................................................................................... 9

POINT IV.

      GRANTING THE PLAINTIFFS A PRELIMINARY INJUNCTION
      AT THIS STAGE OF LITIGATION WOULD BE TANTAMOUNT
      TO GRANTING THEM SUMMARY JUDGMENT BEFORE THE
      BARTHOLOMEW ENTITIES HAVE HAD AN OPPORTUNITY
      TO CONDUCT DISCOVERY AND INVESTIGATE THE
      PLAINTIFFS' CLAIMS ...................................................................... 12

POINT V.

      THE BARTHOLOMEW ENTITIES REQUIRE FURTHER
      DISCOVERY TO ESTABLISH THAT THE PLAINTIFFS' WILL
      NOT ULTIMATELY PREVAIL ON THE MERITS OF THEIR
      BREACH OF CONTRACT CLAIMS ................................................... 13

CONCLUSION ............................................................................................... 14

## PRELIMINARY STATEMENT

This memorandum of law is submitted in opposition to the plaintiffs' motion for a preliminary injunction to shut down four Dunkin' Donuts franchises owned and operated by defendants DB Donuts, Inc., DB Donuts II, Inc., DB Donuts IV, Inc., DB Donuts VI, Inc. and Djenane Bartholomew (hereafter the "Bartholomew Entities"). The plaintiffs argue that in the absence of a preliminary injunction, they will be irreparably harmed as without such an injunction, the Bartholomew Entities would continue to use certain trademarks owned by the plaintiffs' despite the fact that plaintiffs' claim that the Bartholomew Entities' license to use the marks has been terminated.

The plaintiffs will suffer no harm, let alone irreparable harm, if the preliminary injunction is not granted, because any loss of control over their marks would be the result of the plaintiffs' choice not to exercise continuing control, and any assertion to the contrary is misleading. In fact, if the defendants were afforded the opportunity to fully conduct discovery prior to the plaintiffs' motion, the defendants believe that the evidence would establish that despite this ongoing litigation, the plaintiffs' continue to maintain complete control over their marks, continue to closely monitor quality control at the subject franchises and continue to supervise the defendants service of quality products from suppliers approved by the plaintiffs.

Moreover, the Bartholomew Entities have filed counterclaims against the defendants and, if given the opportunity to fully develop the evidence, the Bartholomew Entities believe that they will show that the plaintiffs' did not act in good faith in issuing the four franchises at issue to the Bartholomew Entities and that the plaintiffs' in fact had ulterior pre-textual motives in terminating them.

Success on the plaintiffs' claims of trademark infringement/trade dress infringement/ unfair competition is irrelevant unless and until the plaintiffs success on their claim for breach of contract, else the court would be awarding post-ultimate relief by way of a preliminary injunction. A preliminary injunction, further, being an extraordinary equitable remedy, may not be granted to the plaintiffs, who come into court with unclean hands. The Bartholomew Entities have raised numerous affirmative defenses to the plaintiffs' claims in their answer but without further discovery are not able to supporting evidence to the Court at this time. Additionally, the public interest will be implicated only if the plaintiffs publicize the pending dispute; otherwise the public can be assured of receiving the very same products under the plaintiffs' names and marks as it has been receiving to date. Indeed, by plaintiffs' own admissions, the services provided by the Bartholomew Entities were exemplary.

## STANDARD OF LAW ON MOTION FOR PRELIMINARY INJUNCTION

A preliminary injunction is a drastic and extraordinary remedy that should only be granted in the Court's sound discretion after an analysis of the facts. Silverstein v. Penguin Putnam, Inc., 368 F.3d 77 (2nd Cir. 2004); Shred-It USA, Inc. v. Mobile Data Shred, Inc., 228 F.Supp.2d 455 (S.D.N.Y. 2002); Quinn v. Aetna Life & Cas. Co., 482 F. Supp. 22 (E.D.N.Y. 1979). In its analysis, this Court should weigh the potential benefits and harm to be incurred by the parties from the granting or denying of a preliminary injunction. Ticor Title Ins. Co. v. Cohen, 173 F.3d 63 (2nd Cir. 1999). Here, upon doing so it will become clear that the *unquestionable harm* that would be created by a preliminary injunction severely outweighs the *potential benefit* to the plaintiffs should the motion be granted.

To succeed on a motion for a preliminary injunction, the party seeking the injunction must show: 1) that it will suffer irreparable harm in the absence of injunctive relief; **and** either 2) a substantial likelihood of success on the merits; or 3) a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the movant's favor. Almonster v. New York City Dept. Of Educ., —F.3d—, 2008 WL 744243 (2nd Cir. 2008); Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144 (2nd Cir. 2007); D.D. ex rel. V.D. v. New York City Board of Educ., 465 F.3d 503 (2nd Cir. 2006); Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108 (2nd Cir. 2006).

The plaintiffs argue that they have already terminated the Bartholomew Entities' franchises and therefore the defendants are already using the plaintiffs' marks without a license. However, this action is still in its relative infancy and there has certainly been no judicial determination to date regarding the propriety of plaintiffs' purported termination of the Bartholomew Entities' franchises. In fact, in the termination letter sent to the Bartholomew Entities clearly states that "You are advised that if you contest the claimed defaults and contend that termination is not justified, Franchisor will not enforce this termination by itself. Instead, it will submit the matter to a court to determine which party is right ..." (See Exhibit 1R attached to plaintiffs' moving papers). Accordingly, unless and until this court rules in favor of the plaintiffs and ultimately finds that the defendants' franchises are no longer in effect, the defendants possess a valid and continuing license to use the marks at issue under the terms of their franchise agreements.

Under the circumstances, then, the plaintiffs seek a preliminary injunction to do the opposite of what a preliminary injunction is generally intended to do. The purpose of a preliminary injunction is "to preserve the status quo pending a determination on the merits. Checker Motor

Corp. v. Chrysler Corp., 405 F.2d 323 (2nd Cir. 1969), *cert. denied*, 394 U.S.999, 89 S.Ct. 1596

(1969).   See also Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 742 (2nd Cir. 1953).

Where, as here, the franchisor is seeking to *alter* the status quo, as opposed to maintain the status

quo, the movant must demonstrate a **clear or substantial** likelihood of success, rather than a mere

likelihood of success.   Dunkin' Donuts Incorporated v. National Donut Restaurants of New York,

Inc., 291 F.Supp.2d 149 (E.D.N.Y. 2003).

 A preliminary injunction may never be obtained as a matter of right.  Yakus v. United States,

321 U.S.414, 64 S.Ct. 660 (1944).   It is clearly addressed to the discretion of the district court.

Historically, this remedy has been viewed as drastic or extraordinary in nature and, absent a clear

showing that the movant has carried the burden of persuasion, the relief will be denied.  See Dopp

v. Franklin National Bank, 461 F.2d 873, 878 (2nd Cir. 1972).


## POINT I.

### THE ACTUAL HARM THAT WOULD BE SUFFERED BY THE BARTHOLOMEW ENTITIES DRASTICALLY OUTWEIGHS THE POTENTIAL BENEFIT THAT THE PLAINTIFFS MAY GAIN FROM A GRANTING OF THEIR MOTION FOR A PRELIMINARY INJUNCTION

 It is undisputed that should this Court grant the plaintiffs' motion, the four Dunkin' Donuts

franchises maintained by the Bartholomew Entities will be shut down.  In doing so, not only will

DB Donuts, Inc., DB Donuts II, Inc., DB Donuts IV, Inc. DB Donuts VI, Inc. and Djenane

Bartholomew lose their source of income, but approximately eighty (80) employees will also loose

their jobs.  On the other hand, the only benefit that the plaintiffs' would receive if these franchises

are forced to close their doors is that the alleged trademark violations would cease.  However, since

the plaintiffs' have, and will continue to, closely monitor and control those marks and the services

with which they are affiliated, no harm would come to the marks or the value thereof if the plaintiffs' instant motion were denied.

Indeed the only benefit, or lack thereof, to the plaintiffs should their motion be granted is that four shops will be forced to close their doors and plaintiffs themselves will stop collecting weekly royalties from the Bartholomew Entities. In addition to losing out on royalties, the four Dunkin' Donuts shops with their "distinctive trade dress, including pink and orange color scheme, signage, menu boards, product selection and names, interior design and doughnut cases"(Plaintiffs' Memorandum of Law at Page 4, ¶15) will remain dark throughout the day. Potential customers will walk by an empty darkened shop simply wondering what happened. It seems that such a result would only damage and weaken the marks that plaintiffs' have worked so hard and spent so much money to maintain and grow. Alternatively, should this court deny the plaintiffs' motion, the four Dunkin' Donuts shops maintained by the Bartholomew Entities will remain open and vibrant and providing their customers with the same outstanding products and services that they have come to expect from the Dunkin' line.

Clearly the plaintiffs' motion is nothing more than an attempt to pressure, and harm, the plaintiffs. There is no question that the balance of equities weighs heavily in favor of keeping the shops open, keeping their respective employees employed, and keeping loyal Dunkin' customers churning through the door rather than wondering why that darkened shop sits there month after month while this litigation goes forward.

**POINT II.**

**THE PLAINTIFFS' HAVE FAILED TO DEMONSTRATE THAT THEY WILL SUFFER IRREPARABLE HARM IF THEIR MOTION IS NOT GRANTED**

Under well settled law, a party moving for a preliminary injunction must demonstrate irreparable harm if the injunction were not to be granted. *See* Almonster, supra; Time Warner Cable, Inc., supra; D.D. ex rel. V.D., supra; Louis Vuitton Malletier, supra. The Second Circuit Court of Appeals has repeatedly held that a delay in seeking injunctive relief, particularly, a temporary restraining order, calls into question the presumption of irreparable harm that is normally appropriate when intellectual property is allegedly infringed upon. Tough Traveler, Ltd. v. Outbound Products, 60 F.3d 964 (2nd Cir. 1995). The Tough Traveler Court held that "though such delay may not warrant the denial of ultimate relief, it may, standing alone, ...preclude the granting of preliminary injunctive relief because the failure to act sooner undercuts the urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Id. at 968. *See also* Citibank, N.A. v. Citytrust, 756 F.2d 273 (2nd Cir. 1985) (delay in seeking enforcement of trademark rights tends to indicate at least a reduced need for the drastic remedy of a preliminary injunction); Greenpoint Financial Corp. v. Sperry & Hutchinson Co., Inc., 116 F.Supp.2d 405 (S.D.N.Y. 2000) (trademark owner's approximately 4 month delay in requesting injunctive relief for alleged infringement negated presumption of irreparable harm for purposes of obtaining a preliminary injunction); Russian Kurier, Inc. v. Russian American Kurier, Inc., 899 F.Supp. 1204 (S.D.N.Y. 1995) (presumption of irreparable harm is negated in trademark infringement action where plaintiff has not been diligent in seeking relief).

Here, the plaintiffs filed the initial complaint in this matter on January 10, 2008 and plaintiffs' Associate General Counsel, Jack Laudermilk, claims in his affidavit in support of the

plaintiffs' motion that the plaintiffs' discovered the allegedly fraudulent scheme in early January 2008. (See Laudermilk affidavit at ¶43). Yet, despite this alleged knowledge, the plaintiffs did not file for a preliminary injunction until April 1, 2008 - **nearly three months later**. This delay, in and of itself, is evidence of the lack of imminent harm that the plaintiffs' face in the absence of a preliminary injunction. Indeed the Bartholomew entities have continued to pay plaintiffs royalties and rent to operate their four Dunkin' Donuts franchises. Therefore, this delay, even standing alone, is sufficient to defeat the plaintiffs' motion for a preliminary injunction.

In order to be entitled to the presumption of harm that often comes in a trademark and trade dress infringement case, the plaintiffs must show that the infringer is using the mark in a manner that is creating a likelihood of consumer confusion. Weight Watchers Intern., Inc., v. Luigino's, Inc., 423 F.3d 137 (2nd Cir. 2005); Federal Express Corp. v. Federal Espresso, Inc., 201 F.3d 168 (2nd Cir. 2000). Notably, even if this court finds that the plaintiffs are entitled to a presumption of irreparable harm, that presumption is nonetheless rebuttable. Christopher Norman Chocolates, Ltd. v. Schokinag Chocolates North America, Inc., 270 F.Supp.2d 432 (S.D.N.Y. 2003). However, here the Court should find that there is no confusion and therefore should not presume that the plaintiffs have suffered harm. Quite simply, any customers of the four Dunkin' Donuts shops operated by the Bartholomew Entities will not be confused because they will, in fact, be receiving goods and services from Dunkin' Donuts. The quality standards will remain the same, the products will remain the same, the sources of those products will remain the same and the plaintiffs' will continue to oversee all of the operations at these four shops to assure that the products and services live up to the Dunkin' standard. The plaintiffs have not, nor could they, disputed any of this. Instead, the plaintiffs claim that because they allegedly terminated the agreements, the Bartholomew Entities are

now using the marks without a valid license.  However, there has not yet been a judicial termination with regards to the validity of the attempted termination of the Bartholomew Entities franchise agreements and, accordingly, the franchise agreements have yet to be properly terminated.

## POINT III.

### THE PLAINTIFFS' WILL NOT LOSE CONTROL OVER THEIR TRADEMARKS IN THE ABSENCE OF A PRELIMINARY INJUNCTION

The plaintiffs' assertion that they will lose control over their trademarks because of the purported terminations is misleading.  The Bartholomew Entities have contested the purported terminations and are continuing their business pending the ultimate determination of this court.  And in continuing their business, the Bartholomew Entities are providing to the consuming public the same products that they have been providing all along.  The four franchise units maintained by the Bartholomew Entities are purchasing their products for resale from the same providers from which they have been procuring the goods to date.  There has been, and will be, therefore, no variation in the quality of the goods sold under the marks of the plaintiffs.  The goods are and will continue to be authentic and genuine Dunkin' Donuts' products and the plaintiffs will suffer no damage to their reputations and will lose no customers.  The plaintiffs have offered no proof, despite a conclusory allegation to this effect, that the Bartholomew Entities are offering for sale inferior products under the plaintiffs' names and marks, or indeed products of any different quality than the Bartholomew Entities have been so selling all along.

The plaintiffs argue that a franchisor lacks control over its trademark when a franchise agreement is terminated yet the franchisee continues to use the franchisor's mark...a situation that the plaintiffs claim results in irreparable harm.  But the plaintiffs are creating this situation, or the

illusion thereof, themselves. The plaintiffs are intentionally ignoring the fact that they will have no control over the Bartholomew Entities' continued use of the plaintiffs' marks during the pendency of this action.

Accordingly, the plaintiffs have no reason to suspect or to assert that they will be unable to control the Bartholomew Entities' use of the trademarks at issue. Any such loss of control would be created by the plaintiffs themselves. In fact, the only damage that would occur with regards to the plaintiffs' marks would occur if this Court were to grant the preliminary injunction. In doing so, the four shops at issue would be shut down and four vacant abandoned buildings would sit in New York City while this action was pending. With no employees or sources of income the shops would fall into disrepair and prospective customers would see only a run down former Dunkin' Donuts location and wonder what happened.

Dunkin' Donuts currently has approximately nine cases pending in the Southern District of New York against franchisees and approximately ten cases pending the Eastern District of New York against franchisees and in only a few of those cases have the plaintiffs even moved for a preliminary injunction. Clearly if the continued use of the Dunkin' marks after a franchise has been purportedly terminated caused plaintiffs' per se irreparable harm, then plaintiffs would move for an injunction each and every time they terminate a franchise. The fact that they do not do so indicates that there is no harm to them simply by virtue of the facts that they are claiming to have terminated the franchises. The plaintiffs do no make any other complaints about the quality of the products sold at the shops owned by the Bartholomew Entities nor do they make any complaints about the sanitary conditions of the shops. In fact, the Bartholomew Entities believe that once discovery is complete, there will be substantial evidence that the shops maintained by the Bartholomew Entities were

-10-

models of efficiency and quality.

Moreover, the Bartholomew Entities believe that the evidence will show that to date, the plaintiffs have continued to maintain control over their shops.  We believe that the evidence will show: 1) that the exact same products are being sold in each of the shops run by the Bartholomew Entities are were sold prior to this action; 2) that the exact same quality control procedures and mechanisms are in place today that were in place prior to this action; 3) that plaintiffs' continue to maintain *daily* contact with the shops maintained by the Bartholomew Entities ; and 4) that the plaintiffs' retain ultimate control over their marks even during the pendency of this litigation.

While the plaintiffs correctly cite to El Greco Leather Prods., Co. v. Shoe World, Inc., 806 F.2d 392 (2nd Cir. 1986) for the principle that "one of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured under the holder's trademark", the plaintiffs fail to acknowledge that, to this very day, they continue to maintain control over their marks.  The plaintiffs' simply state that "[a] franchisor lacks control over its trademarks when a franchise agreement is terminated but the franchisee continues to utilize the franchisor's trademarks."  (Plaintiffs' Memorandum of Law at page 24).  However, the plaintiffs have not offered this court any authority that would indicate that such termination creates an absolute per se lack of control over the mark.  Indeed, the plaintiffs' failure to move for injunctive relief on each and every action they file to ratify termination of a franchisee is proof that purported termination is not, in and of itself, lack of control.  Moreover, where, as here, the mark holder continues to maintain *daily contact* with the licensee and continues to closely monitor and control use of the mark, there can be no showing of lack of control necessary to establish irreparable harm.

## POINT IV.

**GRANTING THE PLAINTIFFS A PRELIMINARY INJUNCTION AT THIS STAGE OF LITIGATION WOULD BE TANTAMOUNT TO GRANTING THEM SUMMARY JUDGMENT BEFORE THE BARTHOLOMEW ENTITIES HAVE HAD AN OPPORTUNITY TO CONDUCT DISCOVERY AND INVESTIGATE THE PLAINTIFFS' CLAIMS**

A grant of preliminary injunction that the plaintiffs request would be tantamount to a grant of summary judgment on the plaintiffs' claims of trademark infringement, unfair competition, trademark dilution, and trade dress infringement. Summary judgment would be, of course, wholly inappropriate at this stage of litigation because discovery is not yet complete. In fact, to date, the plaintiffs have yet to respond to the interrogatory demands served by the Bartholomew Entities and have yet to respond to the document demands served by the Bartholomew Entities. Moreover, there are currently three depositions scheduled that are not yet complete and of the three that are complete, not a single transcript has been received to date. Two of the witnesses yet to be deposed, Richard Talmon and Kevin Godfrey, submitted affidavits in support of plaintiffs' motion. The Bartholomew Entities are also currently investigating three additional potential witnesses in this matter.

In addition to these outstanding discovery issues with the plaintiffs, the Bartholomew Entities have also subpoenaed records from a non-party, CIT Group, Inc. and its affiliates ("CIT").

As this Court can clearly see from the plaintiffs' moving papers, the Bartholomew Entities' interactions with CIT are one of the key components of the plaintiffs' claims of fraud. Clearly with the tremendous amount of discovery yet to be completed in this action, summary judgment would not be appropriate - yet that would be the effect of granting plaintiffs' motion.

## POINT V.

### THE BARTHOLOMEW ENTITIES REQUIRE FURTHER DISCOVERY TO ESTABLISH THAT THE PLAINTIFFS' WILL NOT ULTIMATELY PREVAIL ON THE MERITS OF THEIR BREACH OF CONTRACT CLAIMS

At this early stage of litigation the Bartholomew Entities lack sufficient information to be able to sufficiently challenge the plaintiffs' ability to succeed on the merits of their breach of contract claims.   On April 11, 2008 the Bartholomew Entities did request an extension of time to file their opposition so that they could continue to gather evidence.  However, that request was denied by Judge Robert Sweet and the Bartholomew Entities have thus been forced to oppose this motion without a fully developed investigation.   The Bartholomew Entities asserted several affirmative defenses in their answer which would go to the very heart of whether the plaintiffs' can establish a substantial likelihood of success on the merits.  Specifically, the Bartholomew Entities have asserted affirmative defenses of: 1) pre-textual termination; 2) bad faith in entering into the franchise agreements; 3) waiver and estoppel; 4) plaintiffs' claims are barred by their own bad faith; 5) plaintiffs' claims are barred by their own unclean hands; 6) fraudulent inducement and numerous others.   The Bartholomew Entities continue to believe that if given the opportunity to conduct discovery, they will be able to more fully establish that the plaintiffs' termination of the subject franchise agreements was done in bad faith and was pre-textual.

Accordingly, the Bartholomew Entities respectfully request that the plaintiffs' motion be denied and they be permitted to complete discovery and gather evidence to support their defenses and counterclaims.  In the alternative, the Bartholomew Entities respectfully request that they be permitted to submit new and additional evidence to the Court up to and including the time of the April 23, 2008 evidentiary hearing as such evidence is gathered and discovered through ongoing

-13-

discovery.

## **CONCLUSION**

Because the balance of equities clearly weighs in favor of denying the plaintiffs' motion and because the plaintiffs' have wholly failed to establish that they will suffer irreparable harm, indeed common sense leads to the conclusion that harm will only occur if the preliminary injunction was issued, this Court should deny the plaintiffs' motion for a preliminary injunction and allow the defendants to continue collecting evidence to defend themselves at trial before a jury of their peers.

Dated: Melville, New York
      April 11, 2008

Respectfully submitted,

KUSHNICK & ASSOCIATES, P.C.

By: ____/s/ Lawrence A. Kushnick_____
      Lawrence A. Kushnick, Esq. (LAK 2146)
      Vincent T. Pallaci, Esq. (VP 0801)
*Attorneys for defendants DB Donuts, Inc.,*
*DB Donuts II, Inc., DB Donuts IV, Inc.,*
*DB Donuts VI, Inc. and Djenane Bartholomew*
445 Broad Hollow Road, Suite 124
Melville, New York 11747
(631) 752-7100