UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
DUNKIN' DONUTS FRANCHISED                                   :
RESTAURANTS LLC, *et al.*,                                  :
                                                            :
      Plaintiffs,             :
  v.                                              :  Case No. 08-CV-00217 (RWS)
                                                            :
INNER CITY DOUGH, INC., *et al.*,                           :
                                                            :
      Defendants.             :
                                                            :
------------------------------------------------------------x

**PLAINTIFFS' REPLY TO DEFENDANTS BARTHOLOMEW, *ET AL.*'S, OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**I. DEFENDANTS CONCEDE THAT DUNKIN' WILL SUCCEED ON THE MERITS OF ITS CLAIMS.**

Defendants concede that Dunkin' will succeed on the merits of its claims. In their Opposition, Defendants Djenane Bartholomew and her corporations ("Bartholomew") do not dispute that Dunkin' lawfully terminated their Franchise Agreements. By failing to file an Opposition, Defendants Nancy Davis and her corporations ("Davis") also concede the point.[1]

Specifically, Bartholomew does not deny that she obtained the franchise for the 30 Rockefeller Shop without first seeking the prior written consent of Dunkin' (Pls.' Memo. ¶¶ 40-43); that in June 2005 she submitted fraudulent documents and made false representations to CIT asserting that she was the authorized franchisee of the 30 Rockefeller Shop in securing approximately $1.2 million dollars from CIT (*Id.* ¶¶ 43-46); that in or about early 2007 she fraudulently represented *again* to CIT that she was the franchisee of the 30 Rockefeller Shop in securing refinancing for the 30 Rockefeller Shop and additional loans (*Id.* ¶¶ 47-51); and that

---

[1] By failing to file any opposition and because Dunkin' satisfied its burden, there is no question that a preliminary injunction should issue against Davis.

she falsely represented to CIT representatives that she was in good standing with Dunkin' with respect to the 30 Rockefeller Shop. (*Id.* ¶ 48.)

Additionally, Bartholomew does not deny that she and Davis tried to cover up their tracks in late 2007 in seeking the consent of Dunkin' to transfer – after the fact – the 30 Rockefeller Shop to Bartholomew. (*Id.* ¶ 52.) Bartholomew does not deny that the loan commitment letter from PNC Bank submitted to Dunkin' as part of the transfer process is false. (*Id.* ¶ 53-54.) Given that Defendants do not deny any of the above, or that such conduct warrants termination of their Franchise Agreements, Dunkin' is more than likely to succeed on the merits of its claims.

II.     **DUNKIN' IS SUFFERING IRREPARABLE HARM AS A RESULT OF DEFENDANTS' POST-TERMINATION USE OF ITS PROPRIETARY MARKS.**

   A.     **Defendants' Continued Use of Dunkin's Proprietary Marks Has Caused and Continues to Cause Irreparable Harm.**

While Bartholomew does not dispute that Dunkin' will likely succeed on its claims,[2] (*see* Opp'n.), she does contend that Dunkin' has not shown irreparable harm. Specifically, she asserts that because Dunkin' has not demonstrated that she is "using the mark[s] in a manner that is creating the likelihood of consumer confusion" or demonstrated that Dunkin' has lost control over its marks, Dunkin' is not entitled to a preliminary injunction.[3] (*Id.* at 8-9 (Points II and III).) Bartholomew's arguments are without merit.

Bartholomew fundamentally misconstrues the nature of irreparable harm. The issue is not whether she is operating the shops well but rather whether she has a right to operate the

---

[2] Bartholomew contends that Dunkin' must show clear and substantial likelihood of success on the merits. (Opp'n at 5.) Even under this heightened standard, Dunkin' has met its burden.

[3] Bartholomew also contends that Dunkin' currently has nine cases pending in the Southern District and ten pending in the Eastern District, and in only a few of those cases has Dunkin' moved for a preliminary injunction. (Opp'n at 10.) Whether to move for a preliminary injunction is a fact-based inquiry and depends on the circumstances of each case. Bartholomew's argument is completely irrelevant.

shops under Dunkin's marks at all. She ignores the cases cited in Dunkin's brief, as well as other applicable cases, wherein courts have routinely granted a preliminary injunction to a franchisor to enjoin a franchisee's post-termination use of its trademarks. It is well established that "[w]hen the terms of a franchise agreement are violated, the franchisor can terminate the franchise and enjoin any continued, unauthorized use of its trademarks by the former franchisee." *Midas Int'l Corp. v. T & M Unlimited, Inc.*, No. 00-CV-0899E(F), 2000 U.S. Dist. LEXIS 16978, at *13 (W.D.N.Y. Nov. 16, 2000) (citing *S &R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992)). *See also Dunkin' Donuts Inc. v. Northern Queens Bakery, Inc.*, 216 F. Supp. 2d 31 (E.D.N.Y. 2001). In those instances, "[c]ourts have repeatedly held . . . that damages to a business's goodwill as a result of unauthorized trademark usage are not readily quantifiable and, thus, constitute irreparable harm." *Northern Queens Bakery*, 216 F. Supp. 2d at 40 (citing *Dunkin' Donuts Inc. v. Albireh Donuts, Inc.*, 96 F. Supp. 2d 146, 149 (N.D.N.Y. 2000)).

This is so, because "[w]hen such a party, as defendants here, loses its authorization yet continues to use the mark, the potential for consumer confusion is greater than in the case of a random infringer." *Midas Int'l Corp.*, 2000 U.S. Dist. LEXIS at *10 (quoting *Church of Scientology Int'l v. The Elmira Mission*, 794 F.3d 38, 44 (1986)). "Consumers have already associated some significant source identification with the licensor. In this way the use of a mark by a former licensee confuses and defrauds the public." *Id.* Indeed, "[i]n 'trademark cases, a showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm.'" *Id.* (quoting *American Cyanamid v. Campagna per le Farmacie*, 847 F.2d 53, 55 (2d Cir. 1988)).

Bartholomew contends that Dunkin' is creating the irreparable harm by terminating her Franchise Agreements. (Opp'n at 9-10.) The irreparable harm flows not from Dunkin's

3

termination of the Agreements, but rather from Bartholomew's post-termination use of the marks. Instead of ceasing to use the marks and surrendering possession of her shops, as she is contractually required to do, she has made the decision to remain in the shops while continuing to use Dunkin's marks without a license. As a result, Dunkin' has lost control over its marks and is suffering irreparable harm.

> B. **Bartholomew's Assertion of Harm is Completely Self-Inflicted and is Outweighed by the Harm to Dunkin' By Her Unlicensed Use of Its Marks.**

Bartholomew contends that the Court should not grant the injunction because she would be forced to close her franchises.[4] (Opp'n at 10.) Any harm to Defendants is completely self-inflicted and thus cannot be deemed irreparable as a matter of law. *See also Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) (self-inflicted harm cannot be deemed "irreparable"). "Defendants simply have no equitable standing to complain of injury should their infringements be preliminarily enjoined." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992).

Additionally, Bartholomew contends that her employees would lose their jobs if an injunction issues. (Opp'n at 10). Courts have rejected that argument as well:

> With regard to [defendant's] argument that an injunction would work a detriment on the employees who would be immediately laid off, the court, while regretting this result, does not feel that it is, as a legal matter, sufficient to halt the issuance of this injunction . . . . Even assuming that the draconian measure of massive layoffs would be immediately necessary, there is no evidence in the record to show that these employees could not find employment either with other windshield repair shops or in other fields. Importantly, the court would like to note that it finds it somewhat

---

[4] Bartholomew also contends that the shops will go "dark", i.e., stop operating. (Opp'n at 6.) This argument, however, is irrelevant to Bartholomew's continued, unauthorized use of Dunkin's trademarks. Moreover, it is incorrect. Dunkin' has the right to assume the leases for her franchised businesses under a Sublease Agreement and Lease Rider Agreements to Bartholomew's Leases. (Sublease and Riders, Ex. 1.L. and 1.M. to Mot.) Therefore, the shops will remain open under new operators.

> unseemly that an employer would apparently breach an agreement (there is no dispute that defendant refused to pay the 2% advertising fee as dictated by the franchisee agreements) resulting in the loss of franchise rights, and then claim that the harm to employees resulting from the enforcement of the agreements should deny plaintiff injunctive relief.

*Novus Franchising, Inc. v. Taylor*, 795 F. Supp. 122, 132 (M.D. Pa. 1992) (granting franchisor's preliminary injunction enforcing termination of franchise agreement). *See also Litho Prestige, Div. of Unimedia Group, Inc. v. News America Publishing Inc.*, 652 F. Supp. 804, 808-09 (S.D.N.Y. 1986) (rejecting argument that loss of employees constituted irreparable harm).

### C. There was No Delay in Bringing the Motion.

Bartholomew contends that Dunkin' was allegedly aware of the fraudulent scheme in January 2008 when it filed its Complaint and that, as a result, Dunkin' unreasonably delayed in filing its Motion, thus negating any finding of irreparable harm. (Opp'n at 7.) The brief period between Dunkin's filing of its Amended Complaint and the filing of the Motion hardly constitutes unreasonable delay and Bartholomew inaccurately represents the facts in this regard.

Courts have consistently held while unexplained delay in seeking a preliminary injunction may defeat the presumption of irreparable injury, delay attributable to good faith investigation or a failure to realize the severity of the infringement does not. *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 968 (2d Cir. 1995). *See also Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 39-40 (2d Cir. 1995) (delay of four months from the time she first heard of defendant's possibly infringing activity and three weeks after learning definitively of an objectionable act by defendant was not unreasonable delay); *King v. Innovation Books*, 976 F.2d 824, 831 (2d Cir. 1992) (author's eight-month delay did not rebut presumption of irreparable harm because he spent that time trying to obtain a copy of the infringing screenplay and movie); *Clifford Ross Co. v. Nelvana, Ltd.*, 710 F. Supp. 517, 521 (S.D.N.Y. 1989), *aff'd*

*without opinion*, 883 F.2d 1022 (2d Cir. 1989) (seven month delay did not rebut presumption of irreparable harm because plaintiff was not aware of the true extent of the infringement and the intervening period involved constructive effort to resolve the dispute without litigation).

In asserting that Dunkin' has sat on its rights, Bartholomew fails to mention that when Dunkin' filed suit in January 2008, it filed suit against Davis only and for nonpayment of fees owed. (Compl. ¶¶ 48-90, Docket No. 1.) Bartholomew was not a named defendant. On February 6, 2008, Dunkin' filed its First Amended Complaint adding Bartholomew and her corporations as defendants and alleging the fraudulent and illegal conduct that is the basis of the Motion against her. (1st Am. Compl., Docket No. 13.) Between February 6 and April 1, when it filed its Motion, Dunkin' was collecting certifications and other evidence from several third parties, including CIT and PNC Bank, in support of its Motion. As the Court knows, obtaining evidence from third parties can be a notoriously slow affair. Considering that the Motion was filed as soon as feasibly possible and after a good faith investigation, there was no delay.

Further, the cases that Bartholomew cites in support are inapposite because the party seeking the injunction waited four months or more and had no explanation for such a delay. (Opp'n at 7.) Clearly, that is not the case here.

### III. BARTHOLOMEW'S FRANCHISES WERE TERMINATED EFFECTIVE IMMEDIATELY IN ACCORDANCE WITH THE NOTICE OF TERMINATION.

Bartholomew contends that she continues to hold a valid license to operate the Dunkin' franchises "until this court rules in favor of the plaintiffs . . ." (Opp'n at 4.) In asserting this argument, Bartholomew ignores her Notice of Default and Termination, which explicitly refutes this argument. (Ex. 1.Q. and 1.R. to Mot.)

Bartholomew's Notice of Termination is clear that her Franchise Agreements were terminated effective immediately. (*Id.* at 3, Ex. 1.R. to Mot.) It further provides:

> Franchisor demands that immediately upon the effective date of this Notice you take such actions as necessary to comply with the post-termination obligations set forth in the Franchise Agreements, including, but not limited to, ceasing to use any methods associated with Franchisor, ceasing to use any or all of Franchisor's Proprietary Marks, returning all manuals to Franchisor, and complying with the post-termination obligations set forth in the Franchise Agreements.

(*Id.* at 3-4.)

The Notice also advises that if Bartholomew contested the defaults, Dunkin' would not seek self-help, but rather, it would submit the matter "to a court to determine which party is right." (*Id.* at 4.) In doing so, however, Dunkin' made it very clear that it would not be waiving any of its claims or acquiescing in the continued use of Dunkin's "trade names, trademarks, or trade dress after the effective date of this Notice." (*Id.* at 4.)

IV. **NO DISCOVERY IS NECESSARY TO ASCERTAIN WHETHER DEFENDANTS VIOLATED APPLICABLE LAWS AND ENGAGED IN FRAUDULENT CONDUCT.**

   A. **No Additional Discovery is Necessary on Defendants' Illegal and Fraudulent Conduct.**

Although the Court implicitly denied Bartholomew's request to conduct additional discovery prior to the April 23 hearing, Bartholomew contends that she needs additional time to conduct discovery to rebut Dunkin's allegations that she engaged in illegal and fraudulent conduct. (Opp'n at 12-13.) Defendants do not dispute any of the facts set forth in Dunkin's Motion that Defendants conspired to transfer the 30 Rockefeller Shop to Bartholomew without first seeking Dunkin's prior written consent. The facts are also undisputed that Bartholomew fraudulently represented to CIT that she was the franchisee of the 30 Rockefeller Shop. All the information about this illegal and fraudulent conduct is in Defendants' possession. Indeed, Dunkin's evidence consists of Defendants' Franchise Agreements, Bartholomew's bank documents and applications, and other documents (such as a fraudulent franchise agreement and

assignment of sublease agreement) prepared by Defendants. (*See, e.g.,* Mot. and Memo. in Supp. of Prelim. Inj.) None of these documents are "new" to Defendants or need to be "discovered." Moreover, Defendants have had ample opportunity to depose all of the individuals who provided certifications in support of Dunkin's Motion. No further discovery is necessary for the Court to rule on Dunkin's Motion.

> B. No Discovery is Necessary on Defendants' Claims that Dunkin' Terminated Her Franchise Agreements Based on Ulterior, Pretextual Motives.

Bartholomew asserts that she needs additional time to conduct discovery in support of her Counterclaims that Dunkin' allegedly had pretextual reasons for terminating her.[5] (Opp'n at 2, 13.) While Dunkin' steadfastly rejects any notion that it acted in bad faith, the simple fact is that Bartholomew's claims are irrelevant to Dunkin's Motion. "Disputes over the proprietary of the termination of a franchise are not material to ruling on a preliminary injunction." *Midas Int'l Corp.*, 2000 U.S. Dist. LEXIS at *14 (citing *Jiffy Lube Int'l. Inc.*, 968 F.2d at 375). "A 'franchisor's right to terminate a franchisee exists independently of any claims the franchisee might have against the franchisor.'" *Id.*

It is well established that an ulterior motive for terminating a franchisee is irrelevant in analyzing whether termination is warranted. In *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1309 (11th Cir. 1998), the franchisee argued that McDonald's termination of his franchise agreement was merely "an excuse" for McDonald's real motive, which allegedly was to relocate

---

[5] Bartholomew also contends that Dunkin' has unclean hands and therefore an injunction is inappropriate. (Opp'n at 3, 13.) She admits, however, that she has no evidence to support this claim. (*Id.*) Given this admission, her unclean hands defense should be given no weight. In any event, it is axiomatic that a party invoking an equitable maxim such as unclean hands must itself possess clean hands, which is clearly not the case here. *See Dunkin' Donuts Inc. v. Panagakos*, 5 F.Supp. 2d 57, 63 (D. Mass. 1998) (holding that a franchisee was barred from raising equitable defenses to termination because of his own unclean hands); *Bird v. Centennial Ins. Co.*, 11 F.3d 228, 234 (1st Cir. 1993) (holding that party raising equitable doctrine must have clean hands).

8

the store to another area. The Eleventh Circuit rejected this argument, holding that the franchisee's "failure to comply with McDonald's QSC and food safety standards constituted a material breach of the franchise agreement sufficient to justify termination, and thus, it does not matter whether McDonald's also possessed an ulterior, or improper motive for terminating the franchise agreement." *Id.*

Bartholomew is not the first Dunkin' franchisee to raise this "defense" and have it rejected by the courts. *See Dunkin' Donuts Inc. v. Martinez*, No. 01-3589, 2003 U.S. Dist. LEXIS 2694, at *34 (S.D. Fla. Feb. 21, 2003) (court rejected the franchisees' assertion that Dunkin' was out "to get rid of" them because they allegedly would not go along with Dunkin's plans for change); *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp.2d 202, 212 (D.N.J. 2001) ("Dunkin's motives in conducting its inspections have no bearing on whether Defendants' breached their Franchise Agreement by failing to properly maintain the three shops."); *Dunkin' Donuts Inc. v. Donuts, Inc.*, Case No. 99-CV-1141, 2000 U.S. Dist. LEXIS 17927, at *26 (N.D. Ill. Dec. 6, 2000) (Dunkin' franchisee's pretextual defense rejected when grounds existed for termination). All of these cases reflect the well-established rule that a "party has an absolute, unqualified right to terminate a contract on notice pursuant to an unconditional termination clause without court inquiry into whether the termination was activated by an ulterior motive." *Big Apple Car, Inc. v. City of New York*, 611 N.Y.S.2d 533, 534 (N.Y. App. Div. 1994).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their Motion for a Preliminary Injunction be granted.

        Respectfully submitted,


/s/ David E. Worthen
Robert L. Zisk (RZ 1275)
David E. Worthen (DW 8519)
Iris Figueroa Rosario (IR 7902)
GRAY, PLANT, MOOTY, MOOTY
 & BENNETT, P.A.
2600 Virginia Avenue, N.W., Suite 1111
Washington, DC 20037
Telephone:    (202) 295-2200
Facsimile:    (202) 295-2250

Ronald Degen (RD 7808)
Scott Goldfinger (SG 9219)
O'ROURKE & DEGEN, PLLC
225 Broadway, Suite 715
New York, NY 10007
Telephone:    (212) 227-4530
Facsimile:    (212) 385-9813

Dated: April 18, 2008          *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of April, 2008, a copy of the foregoing **PLAINTIFFS' REPLY TO DEFENDANTS BARTHOLOMEW, ET AL.'S, OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** was electronically filed with the Clerk of Court using the CM/ECF system, which will then send notification of such filing (NEF) to the following:

> Lawrence A. Kushnick, Esq.
> 445 Broad Hollow Road, Suite 124
> Melville, New York 11747
> Telephone: (631) 752-7100
>
> *Counsel for Defendants DB Donuts, Inc.,
> DB Donuts II, Inc., DB Donuts IV, Inc.,
> DB Donuts VI, Inc., and Djenane Bartholomew*

And I hereby certify that I will serve the document by Federal Express to the following non-filing user:

> Nancy Davis
> 16 Great Hall Road
> Mahwah, New Jersey 07430
>
> and
>
> Nancy Davis
> 21 Main Street, Suite 201
> Hackensack, New Jersey 07601

/s/ David W. Worthen
_____
David E. Worthen, Esq.