UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

DUNKIN' DONUTS FRANCHISED
RESTAURANTS LLC, et al.,

        Plaintiffs,

v.

INNER CITY DOUGH, INC., et al.,

        Defendants.

------------------------------------------------------x

Case No. 08-CV-00217 (RWS)





~~PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF A PRELIMINARY INJUNCTION AGAINST DEFENDANTS NANCY DAVIS, SOUTH BRONX INNER CITY DOUGH, INC., AND TRIPLE J3 DONUTS, INC.~~

Ronald D. Degen (RD 7808)
Scott G. Goldfinger (SG 9219)
O'ROURKE & DEGEN
225 Broadway, Suite 715
New York, New York 10007
Telephone: (212) 227-4530
Facsimile: (212) 385-9813

Robert L. Zisk (RZ 1275)
David E. Worthen (DW 8519)
Iris Figueroa Rosario (IR 7902)
GRAY, PLANT, MOOTY, MOOTY
   & BENNETT, P.A.
2600 Virginia Avenue, N.W., Suite 1111
Washington, DC 20037
Telephone: (202) 295-2200
Facsimile: (202) 295-2250

*Attorneys for Plaintiffs*

Dated: May 15, 2008



Defendant Nancy Davis and her corporations, Defendants Inner City Dough, Inc., South Bronx Inner City Dough, Inc., Triple J 3 Donuts, Inc. and Urban City Dough, Inc. did not submit an opposition to Dunkin's Motion for a Preliminary and did not appear at the May 7, 2008, hearing. Having granted default against these Defendants, the Court asked Plaintiffs ("Dunkin'") to submit Proposed Findings of Fact and Conclusions of Law in support of their preliminary injunction against these Defendants. Because Defendants Inner City Dough and Urban City Dough filed for bankruptcy shortly after the May 7 hearing and the litigation is stayed as to those two Defendants, these Proposed Findings do not mention them and the injunction is granted as to Defendants Nancy Davis, South Bronx Inner City Dough, and Triple J 3 Donuts only.



## PROPOSED FINDINGS OF FACT

### Parties

1. Plaintiffs Dunkin' Donuts Franchised Restaurants LLC, Dunkin' Donuts Franchising LLC, Baskin-Robbins Franchised Shops LLC, and Baskin-Robbins Franchising LLC are the franchisors of the Dunkin' Donuts and Baskin-Robbins systems. (Memo. for Prelim. Inj. ¶ 1.)

2. Defendant South Bronx Inner City Dough, Inc. was the owner and operator of Dunkin' Donuts shops located at: (1) 1206 St. Nicholas Avenue, New York, New York (the "St. Nicholas Avenue Shop"), pursuant to a Franchise Agreement dated July 11, 2005, and (2) 3414 Jerome Avenue, Bronx, New York (the "Jerome Avenue Shop"), pursuant to a Franchise Agreement dated March 4, 2005. (Id. ¶ 3.)

3. Defendant Triple J 3 Donuts, Inc. was the owner and operator of a Dunkin' Donuts and Baskin-Robbins shop located at 3455-57 Broadway, New York, New York (the "Broadway Shop"), pursuant to a Franchise Agreement dated July 27, 2004. (Id. ¶ 4.)

1

4. Defendant Nancy Davis ("Davis") is an officer and/or shareholder of each of the corporate entities identified in paragraphs 2 and 3 above, and personally guaranteed the obligations of the foregoing entities pursuant to executed personal guarantees. (*Id.* ¶ 6.) Unless otherwise specified, Defendants South Bronx Inner City Dough, Triple J 3 Donuts, and Nancy Davis are collectively referred to hereinafter as "Defendants."

**Defendants' Obligations Under the Franchise Agreements**

5. Under the Franchise Agreements, Defendants agreed to use Dunkin's and Baskin's proprietary marks, including their trademarks, logos, emblems, trade dress and other indicia of origin, "only in the manner and to the extent specifically licensed" by the Agreements. (Memo. for Prelim. Inj., Exs. 1B-D, Franchise Agreements ¶¶ 7.0 and 7.1.)

6. Defendants agreed they would not do or perform, directly or indirectly, any act injurious or prejudicial to the goodwill associated with Dunkin's and Baskin's proprietary marks and Plaintiffs' Systems. (*Id.* Exs. 1B-D, Franchise Agreements ¶ 8.0.1.)

7. Defendants agreed that they would not, without Dunkin's prior written consent, sell, assign, transfer, or otherwise encumber to any person, persons, partnership, association, or corporation, any interest in their Franchise Agreements, or the franchises granted by the Agreements, or any interest in any corporation, partnership, or LLC that owns any interest in the franchises. (*Id.* Exs. 1B-D, Franchise Agreements ¶ 10.1.)

8. Defendants agreed that "[a]ny purported assignment or transfer not having the prior written consent of FRANCHISOR shall be null and void and shall constitute default hereunder." (*Id.*)

9. Under Paragraph 9.1.4 of the Franchise Agreements, no cure period is available if Defendants are in default under any paragraph designated in 9.0.1 through 9.0.4 or if they

otherwise commit an act of fraud with respect to their obligations under the Agreements. (*Id.* Exs. 1B-D, Franchise Agreements ¶ 9.1.4.)

10. Under the Franchise Agreements, Defendants agreed: (a) to pay Dunkin' a franchise fee of 5.9 percent of the gross sales of the business; (b) to pay Dunkin' an advertising fee of 5.0 percent of the gross sales of the business to the Franchise Owners Advertising and Sales Promotion Fund; (c) to accurately report on an approved form each week gross sales for the preceding calendar week, at which time all fees required to be paid were to be remitted; and (d) to pay Dunkin' interest on unpaid monies due under Section 4 of the Franchise Agreements. (*Id.* Exs. 1B-D, Franchise Agreements, Contract Data Schedule Items "E" and "F," ¶¶ 4.3, 4.4, 5.2.1, 9.3.)

11. Under paragraph 9.1.1 of the Franchise Agreements, in the event Defendants fail to pay Dunkin' any money due, they are entitled to seven (7) days to cure their default. (*Id.* Exs. 1B-D, Franchise Agreements ¶ 9.1.1.)

12. The Franchise Agreements each contain a "cross-default" provision, which states that the termination of one Franchise Agreement is grounds for the termination of all of the other Franchise Agreements of an affiliated entity. (*Id.* Exs. 1B-D, Franchise Agreements ¶ 9.0.4.)

13. Defendants agreed that any unauthorized use of Dunkin's proprietary marks after the effective date of the termination of the Franchise Agreements would result in irreparable harm to Dunkin' Donuts and would constitute willful trademark infringement. (*Id.* Exs. 1B-D, Franchise Agreements ¶ 9.4.3.)

### The Promissory Note

14. On or about May 31, 2007, Defendants South Bronx Inner City Dough, Triple J 3 Donuts, and Nancy Davis executed a promissory note (the "Note") with Plaintiffs. (Memo. for

3

Prelim. Inj., Ex. 2, Zullig Cert. ¶ 9.) Under the Note, Inner City Dough, South Bronx Inner City Dough, Triple J 3 Donuts, and Davis agreed to pay Dunkin' $95,753.93 with interest thereon at the rate of 10% per annum as of April 15, 2007, in a single payment of $98,604.08 on August 1, 2007, or at the closing of the sale of the Jerome Avenue Shop, whichever first occurred. (Id.)

15. In the event of a default for failure to pay monies owed under the Note, Inner City Dough, South Bronx Inner City Dough, Triple J 3 Donuts were entitled to written notice and ten (10) days in which to cure the default. (Memo. for Prelim. Inj., Ex. 1J, Note, ¶ 3(a).)

16. Pursuant to Paragraph 9.0.5 of the Franchise Agreements, it is a default to fail to carry out in all respects Defendants' obligations under any promissory note. (Memo. for Prelim. Inj., Exs. 1B-D, Franchise Agreements ¶ 9.0.5.)

**Defendants' Defaults Under the Franchise Agreements**

A. **Unauthorized Transfer and Fraudulent Scheme.**

17. In 2005, Defendant Djenane Bartholomew unsuccessfully attempted to become a Dunkin' franchisee. (Memo. for Prelim. Inj., Ex. 1, Laudermilk Cert. ¶ 41.)

18. Nevertheless, on or about September 12, 2005, Defendants Urban City Dough and Nancy Davis transferred their Rockefeller Plaza Franchise Agreement and franchise to Defendant Djenane Bartholomew and Bartholomew Foods IV Corp. (Memo. for Prelim. Inj., Ex. 3, Bailey Cert. ¶ 6.) This was done without Dunkin' Donuts' prior written consent or knowledge, in breach of the Franchise Agreement. (Memo. for Prelim. Inj., Ex. 1, Laudermilk Cert. ¶ 44.)

19. Specifically, Defendants Urban City Dough and Nancy Davis entered into an Asset Purchase Agreement dated September 12, 2005, with Bartholomew Foods IV and Djenane Bartholomew in which Defendants Urban City Dough and Davis transferred the Rockefeller

4

Plaza Franchise Agreement and franchise to Bartholomew Foods IV and Djenane Bartholomew. (Memo. for Prelim. Inj., Ex. 3, Bailey Cert. ¶ 6.)

20. The parties also entered into an Assignment and Assumption of Sublease Agreement dated September 12, 2005, in which Defendants Urban City Dough and Nancy Davis transferred and assigned their rights and obligations under the Sublease with the landlord, RCPI Landmark Properties, L.L.C., to Bartholomew Foods IV. (*Id.* ¶ 6.) Again, this was without Dunkin's knowledge or approval.

21. The Asset Purchase Agreement and Assignment and Assumption of Sublease Agreement were submitted to CIT Corp. in or about June 18, 2005, in support of Defendants Djenane Bartholomew and Bartholomew Foods IV's application in which Bartholomew Foods IV represented that it was the franchisee for the Rockefeller Plaza Shop. (Memo. for Prelim. Inj., Ex. 3, Bailey Cert. ¶¶ 6-8.)

22. In late 2007, in an effort to cover their tracks, Defendants Nancy Davis and Djenane Bartholomew tried to transfer the Rockefeller Plaza franchise with Plaintiffs' consent. (Memo. for Prelim. Inj., Ex. 1, Laudermilk Cert. ¶ 42.) Specifically, on October 18, 2007, Defendants Davis and Bartholomew submitted a Purchase and Sale Agreement to Dunkin' to transfer the Rockefeller Plaza franchise from Defendants Urban City Dough and Nancy Davis to Defendants Bartholomew and D B Donuts III, Inc., which was subsequently replaced by Bartholomew Foods IV. (*Id.*) Shortly before the scheduled closing, Plaintiffs discovered Defendants' fraudulent scheme and cancelled the closing. (Memo. for Prelim. Inj., Ex. 1, Laudermilk Cert. ¶ 43.)

23. Based on the breaches described herein, on January 23, 2008, Plaintiffs served Defendants with a Supplemental Notice of Default and Termination. (*Id.* ¶ 44.)

24. The Notice terminated Defendants' Franchise Agreements, and demanded that Defendants immediately cease using Plaintiffs' trade names and proprietary marks. The Notice demanded that Defendants comply with the post-termination obligations in the Franchise Agreements. (Id.)

**B.    Nonpayment Default and Termination.**

25. Under the Franchise Agreements, Defendants South Bronx Inner City Dough, Triple J 3 Donuts, and Nancy Davis agreed to pay Plaintiffs franchise fees, advertising fees, and other charges. Similarly, under the Note, Defendants South Bronx Inner City Dough, Triple J 3 Donuts, and Nancy Davis agreed to pay Plaintiffs $98,604.08 by no later than August 1, 2007. Defendants, however, failed to pay franchise and advertising fees to Plaintiffs as required by the applicable Franchise Agreements and failed to pay monies owed under the Note. (Memo. for Prelim. Inj., Ex. 2, Zullig Cert. ¶¶ 8-10.)

26. As of October 2, 2007, Defendants South Bronx Inner City Dough and Triple J 3 Donuts failed to pay the required franchise fees, advertising fees, and other charges, and collectively owed $43,535.33. (Id., Zullig Cert. ¶ 8.) On October 3, 2007, Defendants were sent Notices giving them fifteen days to cure these defaults, as required by the Franchise Agreements and Note. (Memo. for Prelim. Inj., Ex. 1, Laudermilk Cert. ¶ 45.) The defaults were never cured. (Memo. for Prelim. Inj., Ex. 2, Zullig Cert. ¶ 8.)

27. As of January 2, 2008, Defendants South Bronx Inner City Dough and Triple J 3 Donuts owed Plaintiffs $92,222.62. (Id., Zullig Cert. ¶ 8.) On January 2, 2008, pursuant to the Franchise Agreements, Plaintiffs sent Defendants South Bronx Inner City Dough, Triple J 3 Donuts, and Nancy Davis Notices of Termination. The Notices of Termination demanded that

Defendants cease using Plaintiffs' proprietary marks and comply with the post-termination obligations of their Franchise Agreements. (Id. Ex. 1, Laudermilk Cert. ¶ 46.)

### Defendants' Lack of a Factual Defense

42. Defendants provided no evidence to rebut the above-noted evidence that they breached the Franchise Agreement in transferring the shop without the prior written approval of Dunkin'; that they failed to pay franchise fees, advertising fees, and other charges; and that they failed to pay pursuant to the Promissory Note. They failed to file an opposition to Dunkin's Motion for Preliminary Injunction and they failed to appear at the May 7, 2008 hearing.

### PROPOSED CONCLUSIONS OF LAW

1. To be entitled to a preliminary injunction, a plaintiff must demonstrate

    (1) whether the plaintiff will suffer irreparable injury if the injunction is not granted; and either

    (2) there is a substantial likelihood that the plaintiff will succeed on the merits; or

    (3) sufficiently serious questions going to the merits exist to make them a fair grounds for litigation and the balance of hardships weighs decidedly toward the party requesting the injunction.

See Int'l Dairy Foods Ass'n v. Amestoy, 92 F.3d 67, 70 (2d Cir. 1996).

I. **DUNKIN' IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS.**

   A. **Defendants Have Breached Their Franchise Agreements By Transferring the 30 Rockefeller Shop Without the Prior Written Consent of Dunkin'.**

   2. The Court holds that Defendants breached their Franchise Agreements by transferring the 30 Rockefeller Plaza franchise to Defendant Djenane Bartholomew and Bartholomew Foods IV Corp. without Dunkin's knowledge and consent.

   3. The Franchise Agreements are clear that Defendants are required to obtain Dunkin's prior written approval before transferring any interest in their Franchise Agreements.

7

(Memo. for Prelim. Inj., Exs. 1B-D, Franchise Agreements ¶ 10.1.) In signing the Franchise Agreements, Defendants agreed that "[a]ny purported assignment or transfer not having the prior written consent of FRANCHISOR shall be null and void and shall constitute default hereunder." (*Id.*)

4. It is well-established that unauthorized transfers of interests by franchisees are grounds for terminating their franchise agreements. In *Simmons v. Gen. Motors Corp.*, 180 N.J. Super. 522, 540-41, 435 A.2d 1167, 1177 (N.J. Super. Ct. App. Div.), *cert. denied*, 88 N.J. 498, 443 A.2d 712 (N.J. 1981), the court held that the franchisee's transfer of the agreement without General Motors' prior written approval violated the agreement and the New Jersey Franchise Practices Act.[1] The court stated, "Even if we were to view the transaction with an eye toward protecting the franchisee's investment in the franchise, the right to approve the new owner must be considered a material, substantial term of the franchise agreement in this case." *Id.* at 540. The court recognized the importance of a franchisor's right to select its own franchisees:

> Selecting the owner-operator of an automobile dealership can be extremely important from the viewpoint of a manufacturer. .... An unacceptable franchisee can damage the public image as well as the pocketbook of a manufacturer. Thus, we conclude that the transfer to a purchaser who was justifiably found unacceptable to the franchisor, as in this case, without prior notice to GM constituted a 'substantial breach' of Simmons' obligations under its franchise agreement.

*Id.* at 540-41.

5. Other courts have held that a franchisee's transfer of its franchise without the

---

[1] Section 56:10-6 of the Act (N.J. Stat. Ann. § 56:10-6) provides: "It shall be a violation of this act for any franchisee to transfer, assign or sell a franchise or interest therein to another person unless the franchisee shall first notify the franchisor of such intention by written notice setting forth in the notice of intent the prospective transferee's name, address, statement of financial qualification and business experience during the previous 5 years." Thus, an Act that is designed to *protect* franchisees considers the failure to obtain the franchisor's prior consent to a transfer of interest to be a material violation of the law.

franchisor's consent is grounds for termination. In *G.J. Creel and Sons, Inc. v. Adams*, Bus. Franchise Guide (CCH) ¶ 9,786 (4th Cir. Feb. 28, 1991) (unpublished decision), the Fourth Circuit affirmed summary judgment for the franchisor based on the franchisee's transfer of the franchise without the franchisor's consent, in violation of the franchise agreement and the Petroleum Marketing Practices Act. *See also General Motors Corp. v. The Mac Co.*, 247 F. Supp. 723, 727-28 (D. Colo. 1965) (granting summary judgment to GM because of defendants' unauthorized transfer of the dealership).

6. Under the cross-default provision, the termination of one Franchise Agreement constitutes good cause for the termination of all of the other Franchise Agreements, and each of them individually. (Memo. for Prelim. Inj., Exs. 1.B-D, Franchise Agreements ¶ 9.0.4) Here, Defendants Nancy Davis and Urban City Dough, Inc. transferred the Rockefeller Plaza Shop without the prior written consent of Dunkin'. Because that conduct warrants termination of the 30 Rockefeller Plaza Franchise Agreement, under the cross-default provision, it also constitutes grounds to terminate the St. Nicholas Avenue, Jerome Avenue, and Broadway Franchise Agreements. *See Gainesville P-H Properties, Inc. v. Days Inns of Am. Franchising, Inc.*, 77 B.R. 285, 293 (M.D. Fla. 1987). Therefore, Defendants South Bronx Inner City Dough's and Triple J 3 Donuts' Franchise Agreements were validly terminated, and Plaintiffs are likely to succeed on Count I of their Complaint for unauthorized transfer.

**B.    Defendants Breached The Franchise Agreements By Failing to Timely Pay Franchise and Advertising Fees.**

7. The Franchise Agreements require that Defendants South Bronx Inner City Dough and Triple J 3 Donuts pay franchise and advertising fees. (Memo. for Prelim. Inj., Exs. 1B-D, Franchise Agreements, Contract Data Schedule Item "E" & "F" ¶¶ 4.3, 4.4, 5.2.1, 9.3.) Under the Franchise Agreements, Dunkin' must provide Defendants a seven day cure of the

9

default of nonpayment. (*Id.* Exs. 1B-D, Franchise Agreements, ¶ 9.1.1.) Failure to timely cure this default warrants immediate termination of the Franchise Agreements. (*Id.* Exs. 1B-D, Franchise Agreements, ¶ 9.4.) Similarly, under the Note, Defendants South Bronx Inner City Dough, Triple J 3 Donuts, and Nancy Davis agreed to pay Plaintiffs $98,604.08 by no later than August 1, 2007. (*Id.* Exs. 1.J., Promissory Note ¶ 2.) The failure to pay the Promissory Note is also grounds for termination of Defendants' Franchise Agreements. (*Id.* Exs. 1.J., Promissory Note ¶ 3.)

8.  In this case, Defendants failed to pay franchise and advertising fees to Plaintiffs as required by the applicable Franchise Agreements and failed to pay monies owed under the Note. (Memo. for Prelim. Inj., Ex. 2, Zullig Cert. ¶¶ 8-10.) Plaintiffs served Defendants Notices to Cure on or about October 2, 2007, demanding that they pay the fees and costs owed under the Franchise Agreements and the monies owed under the Note within fifteen days. (Memo. for Prelim. Inj., Ex. 1, Laudermilk Cert. ¶ 45.) Defendants failed to cure the nonpayment default. Plaintiffs served Defendants with Notices of Termination on or about January 2, 2008, and commenced this action shortly thereafter. (Memo. for Prelim. Inj., Ex. 2, Zullig Cert. ¶ 8.)

9.  The nonpayment of fees is grounds for termination under the Franchise Agreements and applicable case law. *See ARP Films, Inc. v. Marvel Entm't Group, Inc.*, 952 F.2d 643, 649 (2d Cir. 1991) (failure to make payments as required by contract was material and grounds to terminate the contract); *Hinkleman v. Shell Oil Co.*, 962 F.2d 372, 376 (4th Cir. 1992) (franchisor had cause to terminate franchisee for nonpayment of fees, despite allegation by franchisee that rent was excessive), *cert. denied*, 506 U.S. 1041 (1992); *McDonald's Corp. v. Robert A. Makin, Inc.*, 653 F. Supp. 401, 403-04 (W.D.N.Y. 1986); *Liu v. Dunkin' Donuts, Inc.* No. 99-3344, No. 00-3666, 2000 U.S. Dist. LEXIS 18388, at *11-13 (E.D. Pa. Dec. 21, 2000).

10

Thus, Defendants' Franchise Agreements were validly terminated, and Plaintiffs are likely to succeed on Count 3 of their Complaint for nonpayment.

### C. Defendants' Post-Termination Use of the Plaintiffs' Trademarks Constitutes Trademark Infringement.

10. Because Dunkin' is likely to succeed on the merits of its breach of contract claims seeking to enforce the termination of the Franchise Agreements, it is also likely to succeed on its trademark infringement claims. It is well established that Defendants' status as "holdover" franchisees who have been terminated but continue to operate their shops using the franchisor's marks and logos is *dispositive* of the infringement issue:

> Once a license contract is terminated, there is no doubt that the ex-licensee has no authorization or consent to continue use of the mark. After the license has ended, the ex-licensee must stop use of the mark. Continued use by an ex-licensee of the licensor's mark constitutes a fraud on the public, since they are led to think that the ex-licensee is still connected with the licensor. As the Eleventh Circuit observed: "Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks."
>
> ... Understandably, many ex-franchisees and ex-licensees are reluctant to give up use of the mark. Nevertheless, they clearly can be enjoined from any such further use.

4 *McCarthy on Trademarks and Unfair Competition* § 25.31 (4th ed. 1999) (footnote omitted) (quoting *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983)). "[W]here the unauthorized user of the trademark continues to use the identical, previously licensed trademark, after revocation of the license, likelihood of confusion is established." *Southland Corp. v. Froelich*, 41 F. Supp. 2d 227, 243 (E.D.N.Y. 1999).

### II. DUNKIN' HAS SUFFERED AND CONTINUES TO SUFFER IRREPARABLE INJURY TO ITS REPUTATION AND GOODWILL.

11. Where "a plaintiff in a trademark infringement case has demonstrated a likelihood of success on the merits 'irreparable injury . . . almost inevitably follows' and, indeed, is

11

presumed." *Helene Curtis v. Nat'l Wholesale Liquidators, Inc.*, 890 F. Supp. 152, 160 (E.D.N.Y. 1995). It is "well settled that the existence of a likelihood of confusion constitutes irreparable injury, as a matter of law, sufficient to satisfy the requirements of Federal Rule of Civil Procedure 65." *See Laboratorios Roldan C. Por. A. v. Tex. Int'l, Inc.*, 902 F. Supp. 1555, 1571 (S.D. Fla. 1995) (quoting *Bell South Advertising & Publishing Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 784 (M.D. Fla. 1991)). "Courts have repeatedly held . . . that damages to a business's goodwill as a result of unauthorized trademark usage are not readily quantifiable and, thus, constitute irreparable harm." *Northern Queens Bakery*, 216 F. Supp. 2d at 40 (citing *Dunkin' Donuts Inc. v. Albireh Donuts, Inc.*, 96 F. Supp. 2d 146, 149 (N.D.N.Y. 2000)). Dunkin' is likely to succeed on the merits, so there is no issue that it is irreparably injured by Defendants' unlicensed use of its marks.

### III.  THE BALANCE OF HARM WEIGHS DECISIVELY IN DUNKIN'S FAVOR.

12. "One who adopts the mark of another for similar goods acts as its own peril," because he has no claim to the profits or advantages thereby derived. *American Home Prods. Corp. v. Johnson Chem. Co., Inc.*, 589 F.2d 103, 107 (2d Cir. 1978). Any harm to Defendants is insignificant when balanced against the irreparable injury to the goodwill that Dunkin' has created by the expenditure of millions of dollars advertising and promoting its marks. *Tanel Corp. v. Reebok Int'l, Ltd.*, 774 F. Supp. 49, 51 (D. Mass. 1990) (plaintiff's expenditures of advertising dollars over a four year period outweighed any harm to defendants). Thus, the balance of harms weighs decisively in favor of Dunkin'.

13. Further, "the public interest is especially served by issuing a preliminary injunction against a former licensee as the licensee's status increases the probability of consumer confusion." *Church of Scientology Int'l v. The Elmira Mission of the Church of Scientology*, 794

F.2d 38, 44 (2d Cir. 1986). Here, the public interest would be served by issuing an injunction.

## IV. REMEDIES

14. The Court has established that Dunkin' has validly terminated the Franchise Agreements. Defendants are ordered to immediately cease operating under the Dunkin' Donuts and Baskin-Robbins trademarks, and are required to comply with their post-termination obligations, including ceasing to use all indicia of Dunkin's trademarks, trade name, and trade dress. *Dunkin' Donuts Inc. v. Martinez*, 2003 U.S. Dist. LEXIS 2694 at *35-37 (S.D. Fla. Feb. 21, 2003), *affirmed*, *Dunkin' Donuts Inc. v. Philomar, Inc.*, 88 Fed. Appx. 390 (11th Cir. 2003).

Respectfully submitted,

Robert L. Zisk (RZ 1275)
David E. Worthen (DW 8519)
Iris Figueroa Rosario (IR 7902)
GRAY, PLANT, MOOTY, MOOTY
& BENNETT, P.A.
2600 Virginia Avenue, N.W., Suite 1111
Washington, DC 20037
Telephone:    (202) 295-2200
Facsimile:    (202) 295-2250

Ronald Degen (RD 7808)
Scott Goldfinger (SG 9219)
O'ROURKE & DEGEN, PLLC
225 Broadway, Suite 715
New York, NY 10007
Telephone:    (212) 227-4530
Facsimile:    (212) 385-9813

Dated: May 15, 2008

*Attorneys for Plaintiffs*

So Ordered:

Dated: May 16, 2008

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2008, a copy of the foregoing PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF A PRELIMINARY INJUNCTION AGAINST DEFENDANTS NANCY DAVIS, SOUTH BRONX INNER CITY DOUGH, INC., AND TRIPLE J 3 DONUTS, INC. was sent via facsimile and First Class Mail to the following:

> Lawrence A. Kushnick, Esq.
> 445 Broad Hollow Road, Suite 124
> Melville, New York 11747
> Telephone: (631) 752-7100
>
> *Counsel for Defendants DB Donuts, Inc.,*
> *DB Donuts II, Inc., DB Donuts IV, Inc.,*
> *DB Donuts VI, Inc., and Djenane Bartholomew*

And I hereby certify that I will serve the document by First Class Mail to the following non-filing user:

> Nancy Davis
> 16 Great Hall Road
> Mahwah, New Jersey 07430
>
> and
>
> Nancy Davis
> 21 Main Street, Suite 201
> Hackensack, New Jersey 07601

David E. Worthen, Esq.

14